**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **ANGELA L. RUCKMAN**<br>837 South Main Street<br>Mansfield, OH 44907<br><br>                    Plaintiff,<br><br>        v.<br><br>**PHH MORTGAGE CORPORATION**<br>**d/b/a PHH MORTGAGE SERVICING**,<br>c/o Corporation Service Company<br>50 W. Broad St., Ste. 1330<br>Columbus, OH 43215<br><br>and<br><br>**CLUNK, HOOSE CO., L.P.A.**<br>c/o KF Statutory Service Corp.<br>1111Superior Ave. East, Suite 2500<br>Cleveland, OH 44114<br><br>                    Defendants. | Civil Case No.<br><br><br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Angela L. Ruckman, through counsel, states as follows for her *Complaint for Damages* (the "Complaint") against Defendants PHH Mortgage Corporation d/b/a PHH Mortgage Servicing and Clunk, Hoose Co., L.P.A.:

### INTRODUCTION

1.      Plaintiff reached an agreement with the servicer and owner of her mortgage loan to modify the terms of the same and cure the default thereunder. Plaintiff fully performed on her obligations thereunder, but the owner of her mortgage loan refused to honor the agreement and moved forward with foreclosure proceedings through the loan's servicer and their foreclosure and collections counsel. Plaintiff consequently had to hire counsel to defend against the

foreclosure proceedings which should have been resolved through the agreement and fears that she will unjustly lose her home which has caused her tremendous stress and anxiety.

## PARTIES, JURISDICTION, AND VENUE

2.       Plaintiff Angela L. Ruckman ("Plaintiff" or "Ruckman") is the owner of the real property and improvements located thereupon located at and commonly known as 837 South Main Street, Mansfield, OH 44907 (the "Home").

3.       Ruckman currently occupies and maintains the Home as her primary, principal residence and has maintained the Home as such for all times relevant to the causes of action pleaded in this Complaint.

4.       On August 24, 2005, Ruckman. executed a promissory note in the amount of $83,400 (the "Note") and a mortgage on the Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan"). *See*, a copy of the Loan, attached as **Exhibit 1**.

5.       Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing ("Defendant" or "PHH") is a foreign corporation registered to do business in the State of Ohio, with its corporate headquarters located at 4000 Chemical Road, Suite 200, Plymouth Meeting, PA 19462.

6.       PHH is the current servicer of the Loan and has serviced the Loan at all times relevant to the causes of action pleaded in this Complaint.

7.       PHH services the Loan on behalf of the purported assignee of the Loan, non-Party HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-5 ("HSBC") and has acted with its authority or otherwise on its behalf in relation to the Loan at all times relevant to the causes of action pleaded in this Complaint.

8.      Defendant Clunk, Hoose Co., L.P.A. ("Defendant" or "Clunk") is a law firm located in Stow, OH, which was retained by HSBC to initiate foreclosure proceedings against Ruckman to attempt to collect a debt allegedly owed on the Loan in the Court of Common Pleas for Richland County, Ohio, Case No. 2020 CV 0169 (the "Foreclosure").

9.      PHH is not a party to the Foreclosure.

10.     Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA) and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692k(d), *et seq.*

11.     This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

12.     Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

## SUMMARY OF CAUSES OF ACTION

13.     Ruckman files this action in substantial part to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

14.     In January 2013, the CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

15.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

16.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

17.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

18.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

19.     PHH is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

20.     PHH is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

21.     Ruckman asserts a claim for relief against PHH for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as "servicing" by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute "servicing," as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

22.     Ruckman has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

23.     Ruckman is a "consumer", as that term is defined by 15 U.S.C. § 1692a(3), and a person affected by a violation of the FDCPA, and other violations, with standing to bring this claim under 15 U.S.C. § 1692.

24.     Clunk is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as Clunk began collecting on the Loan when the Loan was in default. Clunk regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, such as HSBC.

25.     The Loan is a "debt" as that term is defined by the FDCPA as the underlying debt sought to be collected by Clunk was a residential mortgage the primary purpose of which was for personal, family, or household use.

26.     Ruckman asserts a claim for relief against Clunk for violations of the specific rules under the FDCPA, as set forth, *infra*.

27.     Ruckman further asserts a state law statutory claim for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

28.     Ruckman is a "buyer" as defined by R.C.1322.01(H), as she is an individual whose loan is serviced by a mortgage servicer, PHH.

29.     PHH is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

30.     PHH is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

## STATEMENT OF FACTS

31.     Ruckman, suffering from a financial setback, became delinquent on her obligations under the Loan.

32.     HSBC, represented by Clunk, filed the complaint to initiate the Foreclosure on March 5, 2020.

33.     In July 2020, Ruckman submitted a loss mitigation application to PHH through Clunk (the "Application"). *See*, a copy of an *Affidavit of Angela Ruckman* filed in the Foreclosure along with the pertinent exhibits cited *infra*, attached as **Exhibit 2** at ¶ 4.

34.     Prior to the Application, Ruckman had not previously submitted a complete loss mitigation application to PHH. *See*, Exhibit 2.

35.     PHH sent correspondence dated August 4, 2020 acknowledging that the Application was complete as of July 31, 2020. *See*, Exhibit 2 at ¶ 5.

36.     Upon a review of the Application, PHH offered a trial loan modification to Ruckman requiring her to timely remit three (3) trial plan payments of $469.15 in and for the months of September, October, and November 2020 (the "Trial Plan"). *See*, Exhibit 2 at ¶¶ 6-7.

37.     Ruckman timely remitted all payments due under the Trial Plan. *See*, *id*. at ¶ 7.

38.     PHH sent correspondence dated November 6, 2020 approving Ruckman for and containing a permanent modification agreement for the Loan (the "Modification"). *See*, Exhibit 2 at ¶¶ 7-8; Exhibit 2 at Ex. A.

39.     The Modification provided, *inter alia*, that the Loan would be modified effective as of November 1, 2020 and that Ruckman was to remit monthly payments thereunder in the amount of $469.12. *See*, Exhibit 2 at ¶ 8; Exhibit 2 at Ex. A

40.     Ruckman requested and received an extension of time to execute and return the Modification due to a delay in the delivery of the same and PHH advised that if Ruckman timely remitted the payment due December 1, 2020, she could return the executed Modification at any point prior to January 1, 2021. *See*, Exhibit 2 at ¶¶ 9-11.

41.     On November 30, 2020, Ruckman timely remitted a payment in the amount of $470.00 in satisfaction of the payment due under the Modification for December 1, 2020 via money order in compliance with PHH's express written instructions for the same. *See*, Exhibit 2 at ¶¶ 12-13; Exhibit 2 at Ex. B and C.

42.     Ruckman properly executed the Modification and timely mailed the same to PHH in December 2020. *See*, Exhibit 2 at ¶¶ 12-14.

43.     Ruckman continued to remit timely payments to PHH in satisfaction of her obligations under the Modification and in accordance with PHH's express written instructions for the same, specifically:

   a.  A payment in the amount of $470.00 on January 4, 2021 in satisfaction of the payment due on and for January 1, 2020;

   b.  A payment in the amount of $470.00 on February 11, 2021 in satisfaction of the payment due on and for February 1, 2020; and

   c.  A payment in the amount of $470.00 on February 22, 2021 in satisfaction of the payment due on and for March 1, 2020.

*See*, Exhibit 2 at ¶¶ 15-16, 19-20; Exhibit 2 at Ex. D, E, F.

44.     On January 29, 2021, at a hearing with Magistrate Andrea Clark in the Foreclosure, HSBC and Clunk acknowledged receipt of the executed Modification and the payments for the months of December 2020 and January 2021. *See*, Exhibit 2 at ¶ 17.

45.     PHH refused to accept or otherwise rejected Ruckman's February 11, 2021 payment and Ruckman received notice dated February 25, 2021 informing her of the same. *See*, Exhibit 2 at ¶ 22.

46.     On March 3, 2021, Clunk, through Diane Bennett ("Bennett"), Clunk's Loss Mitigation Department Coordinator, emailed Ruckman to indicate that the last payment PHH received was for the January payment and that Ruckman needed to make the February 2021 and March 2021 payments immediately. *See*, Exhibit 2 at ¶ 21; Exhibit 2 at Ex. G.

47.     On March 3, 2021, Clunk, through Bennett, emailed the client to confirm that PHH would "reverse the denial" of the Modification and accept the past due amounts if Ruckman remitted the same. *See*, Exhibit 2 at ¶ 24; Exhibit 2 at Ex. G.

48.     At no point in time did Ruckman receive a written denial from PHH concerning the Application or the Modification. *See*, Exhibit 2 at ¶ 18.

49.     Ruckman sent receipts of her February 11, 2021 and February 21, 2021 payments in response to Bennett. *See*, Exhibit 2 at ¶ 25; Exhibit 2 at Ex. G.

50.     Despite having already acknowledged receipt of the December 2020 and January 2021 payments as of *January 29, 2021*, Bennett emailed Ruckman to state that the $470.00 payment remitted *February 22, 2021* was applied to the payment due for January 1, 2021—in direct conflict to prior acknowledgments in the Foreclosure—and that she "didn't see any extra receipts in your file indicating that a Jan pmt was made other that the receipts above that you purchased on 2/22 almost one month behind". *See*, Exhibit 2 at ¶ 26; Exhibit 2 at Ex. G.

51.     Ruckman emailed Bennett on March 10, 2021 to see if there has been any update as to the tracking of the payments remitted to PHH and Bennett responded that the "receipts were received and sent to PHH for review". *See*, Exhibit 2 at ¶¶ 28-29; Exhibit 2 at Ex. K.

52.     On March 19, 2021, Bennett emailed Ruckman claiming that PHH "cannot confirm receipt of payments" and that the "receipts you provided do not show that payment was sent to and received by PHH" from Ruckman for February 2021 and March 2021 despite the receipts showing proof of remittance in accordance with PHH's express written instructions for the same and despite such payments being remitted in the same manner as the payments Ruckman remitted on November 30, 2020 and January 4, 2021. *See*, Exhibit 2 at ¶¶ 30-31, 34; Exhibit 2 at Ex. K.

53.     On or about March 21, 2021, Ruckman resubmitted the previously rejected payment from February 11, 2021, and emailed Bennett on March 22, 2021 to advise of the same. *See*, Exhibit 2 at ¶ 34; Exhibit 2 at Ex. M.

54.     Through the March 22, 2021 email, Ruckman also advised that there had been no notice issued that any other payments, including the February 22, 2021 payment, had been refused, rejected, or otherwise declined. *See*, Exhibit 2 at ¶ 34; Exhibit 2 at Ex. M.

55.     Bennett replied with an email stating she would forward Ruckman's receipt of the resubmission of the February 11, 2021 payment to PHH, but she also stated that she expected the Modification to be denied because "[a]fter all, signed documents and payments were all due in November 2020"—an inaccurate statement. *See*, Exhibit 2 at ¶ 35; Exhibit 2 at Ex. L.

56.     Ruckman responded in turn to address Bennett's misrepresentations regarding her payments under the Modification, stating:

> Per krogers, phh needs to use the reference numbers on the receipts
> to  track  payments  received.  Maybe  it  was  posted  to  another

account? **You claim 2 payments were missing, but the only denied payment was the February payment paid on 2/11. That was resubmitted yesterday. No other payments have been returned which means all other payments were received and accepted by PHH. I have made every payment. All paperwork was signed. Krogers can not track a payment that was sent after it was received. The other alleged missing payment has not been applied to my or was applied to another account. I have my receipts showing I paid. I dont know what more I can do.**

*See*, Exhibit 2 at ¶ 36 (emphasis added); Exhibit 2 at Ex. L (emphasis added).

57.    Ruckman, in furtherance of her satisfaction of her obligations under the Modification, submitted a payment on March 20, 2021 in the amount of $470.00 in satisfaction of the payment due April 1, 2021 and in accordance with PHH's express written instructions for the same. *See*, Exhibit 2 at ¶ 39; Exhibit 2 at Ex. O.

58.    Ruckman remitted all payments due under the Modification from December 2020 through April 2021 in a timely manner and each in accordance with PHH's express written instructions for the same. *See*, Exhibit 2 at ¶ 40.

59.    PHH has not sent and Ruckman has not received any notice from PHH, Clunk, or HSBC to cease making monthly payments to PHH as previously instructed or otherwise changing such payment instructions. *See*, Exhibit 2 at ¶ 41.

60.    PHH has not sent and Ruckman has not received any written notice that the Application or Modification was denied or stating the reason for any such denial or stating Ruckman's right to appeal any such denial. *See*, Exhibit 2 at ¶ 44.

61.    On March 30, 2021, Plaintiff filed a motion for summary judgment against Ruckman in the Foreclosure.

62.    Ruckman, in turn, reasonably determined that she had no other option than to hire counsel to represent her in defense of the Foreclosure.

63.     Ruckman retained and incurred costs and fees to retain DannLaw to represent her in the Foreclosure and which filed motions to enlarge the time to respond to HSBC's motion for summary judgment and to seek enforcement of the Modification.

## IMPACT AND DAMAGES

64.     Had PHH and Clunk (collectively, "Defendants") acted appropriately, the Loan would have been modified as agreed per the Modification thereby curing the alleged default on the Loan and leading to a dismissal of the Foreclosure which would have precluded any need for Ruckman to hire counsel to represent her in defense of the Foreclosure.

65.     Due to Defendants' actions, Ruckman has unnecessarily been deprived of the agreed upon Modification that would save her Home from foreclosure judgment and sale.

66.     Defendants' improper actions have further caused Ruckman to suffer from other damages including:

    a.  The loss of funds, the loss of use funds, and the time loss of funds in the amount of $3,757.45—three (3) payments of $469.15 due under the TPP and five (5) payments of $470.00 remitted in excess of Ruckman's monthly obligation of $469.12 under the Modification—without receiving the benefit of the Modification which would have been implemented and boarded but for Defendants' improper actions;

    b.  Loss of time and money for continued defense of the Foreclosure which would not still be pending but for Defendants' actions in mishandling the loss mitigation processes concerning the Loan in violation of RESPA and Regulation X and mortgage servicing guidelines and otherwise

misrepresenting the status of the Loan and the amounts due thereunder in violation of the FDCPA;

c.  Legal fees, costs, and expenses incurred in defense of the Foreclosure since Defendants' wrongful conduct including the preparation of and filing of motions in defense of the motion for summary judgment and in attempts to have the Court enforce the Modification;

d.  Improper fees and charges imposed on the Loan due to the unnecessarily continued Foreclosure for which Ruckman will likely become personally obligated should she eventually obtain a loan modification or which otherwise negatively impact any equity in the Home to which she is entitled;

e.  Continued harm to Ruckman's credit and a delay in the rehabilitation of her credit and as the implementation of the Modification would have afforded her the opportunity to begin the process of rehabilitating her credit standing; and,

f.  Severe emotional distress driven by Defendants' actions and by the tangible fear that Defendants' refusal to properly handle the loss mitigation process related to the Loan will result in the imminent loss of her Home to foreclosure sale, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress above and beyond the emotional distress caused by the Foreclosure from which she was suffering prior to the conduct alleged in this complaint.

**PATTERN AND PRACTICE OF PHH'S VIOLATIONS OF RESPA AND REGULATION X**

67. PHH's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of PHH's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

68. As of the filing of this Complaint, consumers, nationally, have lodged:

    a. Seven Hundred Seventy-Six (776) consumer complaints against PHH specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages;

    b. Seven Hundred Forty-Four (744) consumer complaints against PHH specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages; and,

    c. Three Hundred Four (304) consumer complaints against PHH specifically concerning the issue identified on the CFPB's consumer complaint database as "trouble during payment process" related to mortgages.

Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (accessible at http://www.consumerfinance.gov/data-research/consumer-complaints/).

69. Plaintiff has reviewed the CFPB's consumer complaint database and has identified other similar RESPA violations by PHH as alleged by other consumers. Plaintiff has reviewed fifteen (15) consumer complaints attached hereto and identified as **<u>Composite Exhibit 3</u>**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct showing that Rushmore has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE: AGAINST PHH
## VIOLATIONS OF 12 C.F.R. § 1024.41(g) AND 12 U.S.C. § 2605(k)

70.     Ruckman restates and incorporates all of her statements and allegations contained in paragraphs 1 through 69 in their entirety, as if fully rewritten herein.

71.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

72.     If a borrower submits a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then a servicer is prohibited from moving for judgment unless:

> (1)    The servicer has sent written notice pursuant to paragraph (c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied;
>
> (2)    The borrower rejects all loss mitigation options offered by the servicer; or,
>
> (3)    The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).

73.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(g) provides:

> The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.

Supplement I to Part 1024.

74.     Ruckman submitted the Application in July 2020 and PHH acknowledged it was complete as of July 31, 2020. *See*, Exhibit 2 at ¶¶ 4-5.

75.     Upon a review of the Application, PHH offered the Trial Plan to Ruckman and Ruckman remitted all payment due thereunder. *See*, Exhibit 2 at ¶¶ 6-7.

76.     PHH sent correspondence dated November 6, 2020 approving Ruckman for and containing the Modification. *See*, Exhibit 2 at ¶¶ 7-8; Exhibit 2 at Ex. A.

77.     PHH has not sent and Ruckman has not received any written notice that the Application or Modification was denied or stating the reason for any such denial or stating Ruckman's right to appeal any such denial. *See*, Exhibit 2 at ¶ 44.

78.     Ruckman has not rejected the Modification.

79.     Ruckman dutifully performed and fully satisfied her obligations under the Modification. *See*, Exhibit 2 at ¶¶ 9-17, 40; Exhibit 2 at Ex. D, E, F, M, and O.

80.     Despite Ruckman's performance and PHH failure to send a written denial in accordance with the requirements of 12 C.F.R. § 1024.41(c)(1)(ii), Plaintiff filed a motion for summary judgment against Ruckman in the Foreclosure on March 30, 2021.

81.     PHH actions in moving for summary judgment on March 30, 2021 were in violation of 12 C.F.R. § 1024.41(g) and 12 U.S.C. § 2605(k)(1)(E) and, as a result, Ruckman has suffered actual damages as detailed, *supra*, including but not limited to fees incurred in defense of the motion for summary judgment and in moving to enforce the Modification in the Foreclosure.

82.     PHH's actions are part of a pattern and practice of behavior in conscious disregard for Ruckman's rights.

83.     PHH's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

84.     As a result of PHH's actions, PHH is liable to Ruckman for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

85.     Additionally, Ruckman requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

<strong>COUNT TWO: AGAINST CLUNK<br>VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, <em>et seq.</em></strong>

86.     Ruckman restates and incorporates all of her statements and allegations contained in paragraphs 1 through 69 in their entirety, as if fully rewritten herein.

87.     Ruckman is a "consumer" as she is a natural person and resident of Richland County, Ohio, obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

88.     The Loan is a "debt" because it is an obligation or alleged obligation of Ruckman to pay money arising out of a transaction primarily for personal, family, or household purposes as Ruckman purchased the Home for her primary, principal residence and the Loan provided financing for the same. 15 U.S.C. § 1692a(5).

89.     Clunk is a "debt collector" because it regularly collects or attempts to collect on the Loan and other mortgage loans. 15 U.S.C. § 1692a(6).

90.     Clunk's actions in moving for summary judgment in the Foreclosure despite having actual knowledge that such actions constitute violations of 12 C.F.R. § 1024.41(g) and in making misstatements regarding the status of Ruckman's payments under the Modification, constitute the use of false representations or deceptive means to collect or attempt to collect on the Loan. 15 U.S.C. § 1692e(10).

91.     Clunk's actions in filing the motion for summary judgment in the Foreclosure despite having actual knowledge that such actions constitute violations of 12 C.F.R. §

1024.41(g), constitute the use of unfair or unconscionable means to collect or attempt to collect on the Loan. 15 U.S.C. § 1692f.

92.     Clunk's actions in moving for summary judgment in the Foreclosure despite having actual knowledge that such actions constitute violations of 12 C.F.R. § 1024.41(g) and in making misstatements and misrepresentations regarding the status of Ruckman's payments under the Modification, constitute the use of conduct, the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt of unfair or unconscionable means to collect or attempt to collect on the Loan. 15 U.S.C. § 1692d.

93.     Due to Clunk's actions, Ruckman has suffered actual damages as detailed, *supra*, including but not limited to fees incurred in defense of the motion for summary judgment and in moving to enforce the Modification in the Foreclosure.

94.     As a result of Clunk's actions, Clunk is liable to Ruckman for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

95.     Additionally, Ruckman requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3)

### COUNT THREE: AGAINST PHH
### VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.*

96.     Ruckman restates and incorporates all of her statements and allegations contained in paragraphs 1 through 69 in their entirety, as if fully rewritten herein.

97.     "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

98.     PHH, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

99.     PHH is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.804016.000,      RM.804016.016-BR,      RM.804016.018-BR,      RM.804016.021-BR, RM.804016.024-BR, and RM.804016.025-BR. R.C. 1322.01(GG).

100.    Ruckman is a buyer as defined by the RMLA, as the Loan is serviced by PHH, a mortgage servicer. R.C. 1322.01(H).

101.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.* cannot:

> (B) Make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations; [or]
> (C) Engage in conduct that constitutes improper, fraudulent, or dishonest dealings[.]

R.C. 1322.40.

102.    PHH, in omitting or misrepresenting facts throughout the loss mitigation process, failing to accept and apply Ruckman's payments in furtherance of the Modification, in misrepresenting the payment status under the Modification, and in moving for foreclosure judgment despite Ruckman's performance under the Modification, engaged in a continued course of misrepresentations by making false or misleading statements of a material fact. R.C. 1322.40(B).

103.    PHH's conduct in improperly handling the loss mitigation process for the Loan and for omitting or misrepresenting facts throughout the same, failing to provide proper

responses to the NOE, and failing to timely correct the errors asserted through the NOE constitutes violations of R.C. 1322.40(C).

104.    PHH's conduct caused Ruckman to suffer actual damages, as further described, *supra*.

105.    As a result of PHH's conduct, PHH is liable to Ruckman for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

106.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

> (3) Act with reasonable skill, care, and diligence; [and]
> (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

107.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

108.    PHH's conduct in omitting or misrepresenting facts throughout the loss mitigation process, failing to accept and apply Ruckman's payments in furtherance of the Modification, in misrepresenting the payment status under the Modification, and in moving for foreclosure judgment despite Ruckman's performance under the Modification, constitutes violations of R.C. 1322.45(A)(3)-(4).

109.    As a result of PHH's conduct, PHH is liable to Ruckman for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Angela L. Ruckman prays that this Court grant judgment against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing and award her the following:

A.      Actual damages from Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing in an amount to be determined at trial for the allegations contained in Counts One and Three.

B.      An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing for each violation of RESPA contained in Count One;

C.      For punitive damages against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing as to Count Two;

D.      For attorney's fees and costs as to Counts One and Three;

E.      For such other relief which this Court may deem appropriate.

**WHEREFORE**, Plaintiff Angela L. Ruckman prays that this Court grant judgment against Defendant Clunk, Hoose Co., L.P.A. and award her the following:

A.      Actual damages from Defendant Clunk, Hoose Co., L.P.A. g in an amount to be determined at trial for the allegations contained in Count Two.

B.      An award of statutory damages of One Thousand Dollars ($2,000.00) from Defendant Clunk, Hoose Co., L.P.A. for each violation of the FDCPA contained in Count Two;

C.      For attorney's fees and costs as to Count Two;

D.      For such other relief which this Court may deem appropriate.

Respectfully submitted,

*Ruckman v. PHH Mortgage Corp. etc.* et al.
Complaint for Damages: Page 20

*/s/ Marc E. Dann, Esq.*

Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Angela L. Ruckman*

## **JURY DEMAND**

Plaintiff Angela L. Ruckman hereby requests a trial by jury on all issues, with the

maximum number of jurors permitted by law.

/s/Marc E. Dann, Esq.
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Dann Law
*Counsel for Plaintiff Angela L. Ruckman*