# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA L. RUCKMAN, | : | Case No.: 5:21-cv-00923-BMB |
| Plaintiff, | : | Judge Bridget Meehan Brennan |
| v. | : | |
| PHH MORTGAGE CORPORATION d/b/a | : | |
| PHH MORTGAGE SERVICING, *et al.*, | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

## DEFENDANT PHH MORTGAGE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Now comes Defendant PHH Mortgage Corporation ("PHH"), and pursuant to Federal Rule of Civil Procedure 56, hereby respectfully moves this Court to grant summary judgment in its favor as to all of Plaintiff's claims. As set forth in the accompanying Memorandum of Law in Support of Motion for Summary Judgment, there are no disputed issues of material fact, such that Defendant is entitled to summary judgment on all of Plaintiff's claims.

Respectfully submitted,

*/s/ Sarah A. Wilson*
Sarah A. Wilson
John R. Wirthlin
Blank Rome, LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
Telephone: (513) 362-8748
Facsimile: (513) 362-8787
Email:  Sarah.Wilson@blankrome.com
         John.Wirthlin@blankrome.com
*Counsel for Defendant PHH Mortgage Corporation*

1

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant PHH Mortgage Corporation ("PHH"), by and through its undersigned counsel, hereby submits this Memorandum of Law in Support of Defendant's Motion for Summary Judgment, and states as follows:

**I.     INTRODUCTION**

Plaintiff's Complaint raises statutory violations of Real Estate Settlement Procedures Act ("RESPA") and the Residential Mortgage Lending Act ("RMLA") against PHH based on a loan modification pursuant to which the Plaintiff is currently performing. Before the Plaintiff entered into the permanent loan modification, she failed to timely send in the modification paperwork and the modification was therefore denied as it was deemed rejected by her. However, PHH gave her a second chance to enter into the modification by making two payments in March 2021, which she refused to do thereby allowing PHH to proceed with the foreclosure. Therefore, the statutory claims fail as a matter of law. Based upon the undisputed factual record, Defendant is entitled to judgment as a matter of law on all claims against it.

**II.    UNDISPUTED MATERIAL FACTS**

**A.   Loan Background and Foreclosure**

On August 24, 2005, Plaintiff Angela Ruckman ("Plaintiff") executed a promissory Note in the amount of $83,000.00 (the "Note") and a Mortgage securing to Note (collectively, the "Loan") for the property located at 837 South Main St., Mansfield, OH 44907. (Doc. 1 ¶¶2-4). Defendant PHH is the current servicer of the Loan. (Doc. 1 ¶6; Affidavit of Howard Handville ("Handville Aff.") filed separately herein ¶6). Plaintiff experienced a financial hardship and became delinquent on her Loan, which led to a foreclosure action being filed on March 5, 2020 in the Richland County Court of Common Pleas (the "Foreclosure Action"). (Doc. 1 ¶¶31-32). In July 2020, Plaintiff completed a loss mitigation application. (Doc. 1, ¶33). PHH acknowledged

the complete application on August 5, 2020. (Doc. 1 ¶35; Handville Aff. ¶9). PHH then offered Plaintiff a trial modification plan on August 12, 2020. (Doc. 1 ¶36; Handville Aff. ¶10). Plaintiff made all three trial payments under the trial modification plan. (Doc. 1 ¶37).

### B. Permanent Modification Offer and Rejection by Plaintiff

On November 6, 2020, PHH offered Plaintiff a permanent modification of the Loan ("Permanent Loan Modification Offer") which included a Loan Modification Agreement. (Doc. 1 ¶36 , Doc. 1-2 PageID #57; Handville Aff. ¶11; Deposition of Howard Handville dated January 28, 2022 ("Handville Depo.") filed separately, p. 16). To accept the Permanent Loan Modification Offer, Plaintiff was to provide payment and the executed Loan Modification Agreement to PHH no later than November 24, 2020. (Handville Aff. ¶12; Handville Depo, p.17). Plaintiff requested and was granted an extension of time until December 31, 2020 to provide the executed Loan Modification Agreement. (Doc. 1 ¶40; Affidavit of Diane Bennett ("Bennett Aff.") ¶6; Handville Depo. p.18; *Also See* Deposition of Angela Ruckman taken January 4, 2022 ("Ruckman Depo") filed separately in this matter at page 17).

As no executed Loan Modification Agreement had been received as of January 1, 2021, a Decision on the Request for Mortgage Assistance (the "Denial Letter") was prepared by PHH dated January 14, 2021 informing Plaintiff she was no longer eligible for the modification. (Handville Aff. ¶14 and Ex. D thereto; Handville Depo, pp. 27, 28). The Denial Letter explained that Plaintiff failed to return the final modification agreement within the required timeframe. Id. The Denial Letter was mailed to Plaintiff on January 15, 2021. (Handville Aff. ¶15 and Ex. E thereto). The Mortgage at ¶15 contains the "mailbox rule", pursuant to which Plaintiff agreed that any correspondence sent to her by PHH was effective upon the mailing of the notice. (See Doc. 1-1 Page ID#39)

After the Denial Letter had been sent, PHH received the Loan Modification Agreement on January 19, 2022. (Handville Aff. ¶16; Handville Depo. p.35).  Plaintiff executed the Loan Modification in front of a notary public on January 12, 2021, well after the December 31, 2020 deadline to return it to PHH. (Handville Aff ¶16 and Ex. F thereto).  This is the only executed Loan Modification Agreement that any party can produce. (*See* Ruckman Depo. pp.19-22.)[1]

C. **Post Denial Modification Efforts**

On March 3, 2021, Diane Bennett, the Loss Mitigation Department Coordinator for Co-Defendant Clunk Hoose (foreclosure counsel for PHH), who had been in communication with Plaintiff throughout the modification process, asked if Plaintiff was still interested in the modification as PHH management was still reviewing whether the modification denial could be reversed. (Bennett Aff. ¶7; Ruckman Depo. p. 36). On March 8, 2021, Diane Bennett informed Plaintiff that, if she wanted to have the denial reversed, she would need to make a payment of $873.93 representing her February and March 2021 payments under the modification. (Bennett Aff. ¶9 and Ex. 2 thereto; Ruckman Depo. p.37).  Again, on March 19, 2021, Diane Bennett confirmed with Plaintiff that $873.93 needed to be received by PHH no later than March 25, 2021 for the modification denial to be reversed. (Bennett Aff., Ex. B). Finally, on March 23, 2021, Diane Bennett did a breakdown of the payments received by PHH from Plaintiff and again stated that $873.93 was needed to reverse the denial of the modification. (Bennett Aff. ¶10 and Ex B thereto; Ruckman Depo. p.36 and Exhibit 11 thereto; Handville Depo. pp. 64-67). Plaintiff acknowledged that she was told by PHH to pay the $873.93 to have the denial reversed but refused to pay the

---

[1] Plaintiff testified in deposition that she allegedly had the Loan Modification notarized by a local bank in December 2020, but she could not name the notary, did not keep a copy of the alleged notarized Loan Modification and kept no tracking information concerning her sending the Loan Modification to PHH. (Ruckman Depo. p. 19-22).

4

$873.93 to have the denial reversed. (Ruckman Depo. p. 37). As the payment was not made to allow the modification denial to be reversed, a Motion for Summary Judgment was filed by PHH in the Foreclosure Action on March 30, 2021. (Doc. 1 ¶61).

### D. Current Status of Loan

PHH continued to work with Plaintiff to get her into the Loan Modification Agreement despite her prior rejection of it. In August 2021, Plaintiff made all of the payments due under the Loan Modification Agreement and it was then implemented by PHH. (Handville Aff. ¶17; Handville Depo. p. 91). The Foreclosure Action was then dismissed on August 30, 2021. (Handville Aff. at ¶18). The Loan Modification Agreement has been in effect since August of 2021 and the Plaintiff is current on her payments. (Handville Aff. ¶17 and Ex. G thereto).

### III. PROCEDURAL HISTORY

On May 4, 2021, Plaintiff filed her Complaint against PHH and Co-Defendant Clunk Hoose alleging three causes of action: (1) violations by PHH of the Real Estate Settlement Procedures Act ("RESPA"), Regulation X, 12 CFR §1024.41(g) ; (2) violations by Clunk Hoose of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"); and (3) violations by PHH of Ohio Revised Code Section 1322.01, et seq., the Residential Mortgage Lending Act ("RMLA") .

On June 23, 2021, PHH filed its Answer to Plaintiff's Complaint. Discovery was closed as of January 31, 2022. This matter is ripe for summary judgment.

### IV. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment may satisfy this burden by demonstrating

5

that there is an absence of evidence to support the non-moving party's case. *Wright v. Murray Guard, Inc.*, 455 F.3d 701, 706 (6th Cir. 2006).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir 1991). As this Court has recently held, "the burden is on the non-moving party to 'present affirmative evidence to defeat a properly supported motion for summary judgment . . .' and to designate specific facts in dispute." *Bender v. Logan*, No. 1:12-cv-956, 2014 U.S. Dist. LEXIS 76071 at *22 (S.D. Ohio June 3, 2014) (Beckwith, J.) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) and citing *Anderson*, 477 U.S. at 250). The non-moving party's evidence must concern a material fact and be more than *de minimus*. *Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996). The mere possibility of a factual dispute is not sufficient to withstand a properly supported summary judgment motion. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the opposing party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. Stated differently, the Court's obligation here is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**V.     ARGUMENT**

There are no disputed material facts relating to Plaintiff's claims. For the reasons set forth in detail below, Defendant PHH is entitled to summary judgment in their favor on all claims.

6

   a. **Summary Judgment Should Be Granted Because There Has Been No Violation of RESPA 12 C.F.R.41 (g) or 12 U.S.C. 2605 (k).**

Count I alleges that PHH violated 12 C.F.R.1024.41(g) and 12 U.S.C. 2605 (k) because it proceeded with filing a Motion for Summary Judgment in the Foreclosure Action after PHH sent the modification offer to Plaintiff. Doc. 1 ¶70-81. This claim has no merit as it was Plaintiff's actions, not PHH's, that caused the modification to be denied and allowed PHH to proceed with the foreclosure.

12 C.F.R. § 1024.41(g) does not allow a servicer to proceed with obtaining a foreclosure judgment according to the following: "[I]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale." However, the regulation continues with three exceptions to the rule:

> **(1)** The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; **or**
>
> **(2)** The borrower rejects all loss mitigation options offered by the servicer; **or**
>
> **(3)** The borrower fails to perform under an agreement on a loss mitigation option.

Id. (emphasis added).

While the "or" in the statute indicates only one of the three exceptions needs to occur for the servicer to move forward to obtain a foreclosure judgment, in this case PHH can establish all three exceptions. First, after Plaintiff failed to timely send in the execute Loan Modification Agreement to PHH by the agreed deadline of December 31, 2020, PHH sent Plaintiff the required

7

denial letter to Plaintiff on January 15, 2021. (See Handville Aff. ¶15, Ex.E ).[2] Next, Plaintiff rejected the loss mitigation option offered to her by PHH by not timely returning the Loan Modification Agreement. And finally, even after PHH offered Plaintiff a second chance to enter into the Loan Modification Agreement, Plaintiff failed to perform in response to PHH's offer to reverse the denial of the Loan Modification Agreement by failing to make the required payments in March, 2021.

How a servicer is to determine whether a borrower has rejected a loss mitigation offer is regulated by 12 C.F.R. § 1024.41(e).  It reads in relevant part:

> (1) [I]f a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option.
>
> (2)(i) [A] servicer may deem a borrower that has not accepted an offer of a loss mitigation option within the deadline established pursuant to paragraph (e)(1) of this section to have rejected the offer of a loss mitigation option.

Id.

In this case, PHH sent correspondence dated November 6, 2020 approving Plaintiff for the permanent loan modification. (Doc. 1 ¶76; Ex. 2 to Doc. 1). The final modification offer states that "**time is of the essence** to accept this modification as this offer will expire if we do not receive a response by 11/24/2020." *Id.* The offer then states that the modification must be signed and

---

[2] Further, Plaintiff does not have any appellate rights in this case in regard to the denial of her Loan Modification as her failure to timely return the Loan Modification was in fact a denial of the Loan Modification to which appellate rights under 12 CFR 1024.41 (h) do not apply.  *Rupli v. Ocwen Loan Servicing, LLC*, Civil Action No. DKC 16-0181, 2016 U.S. Dist. LEXIS 102262, at *18 (D. Md. Aug. 4, 2016)( "[A] servicer shall permit a borrower to appeal the servicer's *determination to deny* a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower. The TPP proposal, which she sought to appeal through her September 11 letter, was not a denial of her loan modification application. Plaintiff fails to cite any authority requiring a servicer to permit an appeal of an offer rejected by the borrower.") (emphasis in original).  The right to appeal was included in the trial modification offer which was extended to Plaintiff on August 12, 2020. (Handville Aff. ¶10 and Exhibit B thereto).

returned to PHH by 11/24/2020. *Id.* The parties do not dispute that Plaintiff was then provided an extension of time until December 31, 2020 to sign and return the modification. (Doc. 1 ¶40; Bennett Aff.¶6; Ruckman Depo. p.16 ). The only modification any party can produce shows that Plaintiff did not execute the modification in front of a notary public until January 12, 2021. (Handville Aff. _; Ruckman Depo. p. 21). This was almost two weeks after the extended deadline. *See Schoen v. Bank of Am., N.A.*, No. 2:17-cv-648, 2019 U.S. Dist. LEXIS 23460, at *27-28 (S.D. Ohio Feb. 13, 2019) ("The plain language of the provision gives a servicer the right to treat a borrower as if she rejected an offer for a loss mitigation option if the borrower does not accept it by the validly set deadline. Accordingly, it provides an **option to the servicer but requires nothing of the servicer**. Because it requires nothing, there can be no violation.") Therefore under §1024.41 (g)(2), PHH can deem that Plaintiff rejected the loss mitigation option and proceed with the foreclosure under §1024.41(g)(2).

Thus, Plaintiff's rejection of the Loan Modification Agreement by not executing it and timely returning it to PHH by December 31, 2020, allowed PHH to move forward with obtaining a foreclosure judgment. Accordingly, any subsequent offers PHH made to Plaintiff after she rejected the Loan Modification Agreement to reverse the denial of it were at PHH's discretion and were not subject to the requirements of 12 C.F.R.1024.41(g). *See Son v. Wells Fargo Bank, N.A.*, No. 1:18-CV-488-RP, 2019 U.S. Dist. LEXIS 11174, 2019 WL 317251, at *3 (W.D. Tex. Jan. 24, 2019) ("Son's own allegations admit that she defaulted on her first loss mitigation option. . . . That admission alone suffices to nullify Wells Fargo's obligation to comply with Section 1024.41(g).").

Further, even though it was under no obligation to do so, PHH provided Plaintiff with the option to again enter into the Loan Modification after Plaintiff rejected it by failing to return it by the deadline. As indicated above, PHH through its foreclosure counsel told Plaintiff **three times**

9

in March of 2021 (on March 8, 19 and 23) that she needed to make two payments totaling $873.93 by March 25, 2021, to have the denial reversed. (Bennett Aff. ¶7,9-10; Handville Depo. pp. 64-67). Significantly, PHH at all times told Plaintiff that she needed to make these payments to a have **the denial of the Loan Modification reversed**, meaning that at all relevant times PHH considered the Loan Modification to be denied.

Even if this Court were to find that PHH somehow was obligated to implement the Loan Modification, which PHH denies, PHH could still have proceeded with the foreclosure under §1024.41(g)(3) as Plaintiff failed to perform under the loss mitigation agreement that PHH would reverse the denial if two payments in the amount of $873.93 were made by March 25th. Plaintiff stated in her deposition that Diane Bennett told her that if she made a payment of $873.93 PHH management would reverse the denial, but she refused to do so.

> Q And then -- so that was March 8th. And then on March 23rd, she breaks down the payments that were
> received and she again states that you need to send $873.93, correct?
> A Yep.
> Q And on the last page, this was actually a few days before that, she again says $873.93, and the funds need to be received by the 25th of March.
> A Mm-hmm.
> MR. DANN: Is that a yes?
> THE WITNESS: Yes.
> BY MS. WILSON:
> **Q Okay. Did you send in 873.93?**
> **A No.**

(Ruckman Depo. p. 37, emphasis added).

By Ms. Ruckman's own admission, she did not provide the payment necessary to reverse the denial of the modification, thereby relieving PHH of the requirement to not pursue a foreclosure judgment under §1024.41(g). *See Son v. Wells Fargo Bank, N.A.*, No. 1:18-CV-488-RP, 2019 U.S. Dist. LEXIS 11174, 2019 WL 317251, at *3 (W.D. Tex. Jan. 24, 2019). PHH did not then violate §1024.41(g) by moving for a foreclosure judgment on March 31, 2021. *See Malcolm v. Seterus,*

10

*Inc.,* No. 5:18-CV-01937, 2020 U.S. Dist. LEXIS 50397, at *13 (N.D. Ohio Mar. 24, 2020)(citing *Dionne v. Fannie Mae*, 2016 DNH 209) ("Section 1024.41(g)(3) allows a servicer to foreclose if, after receipt of a complete loss mitigation application, the servicer offers the borrower a loss mitigation option, the borrower agrees to the option, and the borrower *subsequently* fails to perform. That section cannot plausibly be read to eliminate the protections of § 1024.41(g) if a borrower had previously received and failed to perform under a loss mitigation application."). PHH did not violate RESPA by proceeding with the Foreclosure Action three months after Plaintiff failed to return the executed Loan Modification Agreement.

For all these reasons, summary judgment should be entered in Defendant PHH's favor as to Plaintiff's RESPA claim.

### b. Summary Judgment Should Be Granted Because There was no Violation of RMLA

#### 1. Supplemental Jurisdiction Should Be Denied on the RMLA Claim

Because PHH is entitled to dismissal of the federal RESPA claim, as discussed above, this Court should use its discretion to deny supplemental jurisdiction over the remaining state-law claim under the RMLA. "Comity to state courts is considered a substantial interest; therefore, this Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011).

#### 2. There Has Been No Violation of RMLA

Even assuming this Court chooses to exercise supplemental jurisdiction of Plaintiff's RMLA claim, it should still dismiss the allegations for failure to state a RMLA claim. R.C. 1322.40

of the RMLA, formerly numbered as 1322.07 before 2018,[3] prohibits "false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact," and "conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(B) and (C). The proscribed conduct was always in the context of the origination of a mortgage loan, as that was the sole area of concern for the RMLA before the 2019 amendment to add mortgage servicers. *See* prior version of §1322.40. The companion regulation to this section, Ohio Adm. Code 1301:8-7-16, describes eleven separate categories of "improper, fraudulent, or dishonest dealings," all of which deal with the mortgage origination process, not mortgage servicing. This is because the regulation was created in 2016, before the RMLA was expanded in 2019 to cover mortgage loan servicers. Specifically, the H.B. 199 which amended the RMLA, mentions in the long title of the bill that its purpose was to "amend….. to require **registration** of mortgage loan servicers." (Emphasis added). Plaintiff's Complaint admits that PHH is properly registered under R.C. 1322. (Doc. 1 ¶99).

Because the addition of mortgage servicers is so new, no Ohio court has yet interpreted the RMLA to encompass improper, fraudulent, or dishonest dealings in connection with mortgage servicing. The only guidance comes from pre-2019 interpretations of the RMLA, which held that, "R.C. 1322.07(C) [renumbered to R.C. 1322.40 in 2018] prohibits 'improper' conduct by a mortgage broker, although the word improper is not defined by the statute. Accordingly, 'undefined terms are to be accorded their common, everyday meaning.'" *FV 1, Inc v. Goodspeed*, 2012-Ohio-3001, 974 N.E.2d 664, ¶ 56 (7th Dist.), citing *MP Star Financial, Inc. v. Cleveland State Univ.*, 107 Ohio St.3d 176, 2005 Ohio 6183, 837 N.E.2d 758, ¶8.

---

[3] House Bill 199 of the 132nd Ohio General Assembly.

Plaintiff has not sued PHH for lies, deceits, and scandals stemming from the origination of the Loan; but rather seeks relief from PHH's conduct during the modification process which is regulated by RESPA. Doc. 1 ¶101-103. As explained above, PHH followed the federal regulation regarding the loan modification process, so Plaintiff's allegations simply do not fit into the everyday meaning of improper, fraudulent, or dishonest dealings. A cause of action under the RMLA should be made of more egregious acts done at origination, such as illegal kickbacks,[4], fraudulent appraisals,[5] and lying about the terms of a loan.[6] It should not apply to the loss mitigation process already regulated under Federal law.

Therefore, this Court should exercise sound discretion to find that Plaintiff has failed to state an actionable claim under the RMLA predicated upon PHH's conduct, which was proper, during the loan modification process. Plaintiff's third cause of action fails as a matter of law and should be dismissed.

### c. Plaintiff Has Sustained No Damage Under RESPA or the RMLA.

Finally, even if Plaintiff could establish a RESPA or RMLA violation, which she cannot, the record evidence fails to substantiate any damages suffered as a result of the purported RESPA or RMLA violations. To qualify as RESPA damages, the damages alleged must be suffered "*as a result of the failure*" to satisfy a RESPA duty. 12 U.S.C. §2605(f)(1)(A) (emphasis added).

Plaintiff has not come forward with credible evidence that she sustained any damage resulting from the acts of PHH with regard to moving forward with the foreclosure after she voluntarily rejected

---

[4] *Myer v. Preferred Credit*, 117 Ohio Misc.2d 8, 2001-Ohio-4190, 766 N.E.2d 612 (C.P.)

[5] *Roark v. Rydell*, 174 Ohio App.3d 186, 2007-Ohio-6873, 881 N.E.2d 333 (1st Dist.)

[6] *Mayher v. Ma (In re Ma),* 375 B.R. 387 (Bankr.N.D.Ohio 2007)

13

the modification offer. The foreclosure was already active prior to the alleged RESPA or RMLA violations due to the Plaintiff's failure to make the payments due under her Loan.

Plaintiff has a long history of mental illness, which is obviously unrelated to this matter. *See* Ruckman Depo. pp. 50-53. More importantly, Plaintiff has not come forward with any expert medical testimony relating any emotional or mental illness or injury to any of the actions of PHH in this matter.

Furthermore, PHH implemented the modification in August of 2021 after Plaintiff made all payments due under the modification, and the foreclosure was then dismissed on August 30, 2021.

## VI.   CONCLUSION

For all the reasons set forth above, Plaintiff's claims fail as a matter of law, as evidenced by the undisputed record evidence. Thus, this Court should grant summary judgment in Defendant PHH's favor as to Plaintiff's claims.

    Respectfully submitted,

    */s/ Sarah A. Wilson*
    Sarah A. Wilson
    John R. Wirthlin
    Blank Rome, LLP
    1700 PNC Center
    201 East Fifth Street
    Cincinnati, OH 45202
    Telephone: (513) 362-8748
    Facsimile: (513) 362-8787
    Email:  Sarah.Wilson@blankrome.com
           John.Wirthlin@blankrome.com
    *Counsel for Defendant PHH Mortgage Corporation*


## **CERTIFICATE OF SERVICE**

I certify that an exact copy of the foregoing document was electronically filed and served via the ECF system on February 25, 2022.

                                                 */s/ Sarah A. Wilson*  
                                                 Sarah A. Wilson