## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA L. RUCKMAN, | : | Case No.: 5:21-cv-00923-JRA |
| Plaintiff, | : | Judge Bridget Meehan Brennan |
| v. | : | |
| PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICING, *et al.*, | : | **AFFIDAVIT OF HOWARD R. HANDVILLE IN SUPPORT OF DEFENDANT'S MOTION FOR** |
| Defendants. | : | **SUMMARY JUDGMENT** |

STATE OF FLORIDA    )

                        ) SS:

COUNTY OF BROWARD  )

Howard R. Handville, being first duly sworn on oath, states as follows:

1.      I am a Senior Loan Analyst of Ocwen Financial Corporation, whose wholly owned subsidiary is PHH Mortgage Corporation ("PHH"), and as such, I am authorized to execute this Affidavit for PHH. The statements made in this Affidavit are based on my personal knowledge.

2.      I am over the age of 18 and competent to testify as to the matters contained herein.

3.      In the regular performance of my job functions at PHH, I am familiar with the business records maintained by PHH for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies (the "Servicing Records"). PHH's Servicing Records typically include electronic data compilations and imaged documents pertaining to the loans that it services.

4.      Based on my training and my general knowledge of the processes by which PHH's Servicing Records are created and maintained, PHH's Servicing Records that relate to the loan account of Plaintiff Angela Ruckman were made at or near the time of the relevant activity or transaction, by or from information provided by persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of the business activities

regularly conducted by PHH. It is the regular practice of PHH's mortgage servicing business to create and update its Servicing Records.

5.　　I have access to the Servicing Records maintained with respect to the loan of Angela Ruckman ("Ms. Ruckman"). The statements made in this Affidavit are based on my personal knowledge, which is obtained through review of PHH business records made in the ordinary course of business.

6.　　I have reviewed the Servicing Records for the Borrower's loan, which reflect that PHH currently services Ms. Ruckman's mortgage loan as represented by the Note and Mortgage (the "Loan") and in that capacity, is responsible for the day-to-day management of the account and for maintaining the servicing records related to that Loan.

7.　　The Loan became delinquent on April 1, 2019.

8.　　A foreclosure action was filed on behalf of the investor through counsel in the Richland County Court of Common Pleas on March 5, 2020.

9.　　In July 2020, Ms. Ruckman submitted a loss mitigation application to PHH, which was acknowledged as complete on August 5, 2020. A true and accurate copy of the acknowledgment letter is attached hereto as Exhibit A.

10.　　Ms. Ruckman was approved for a trial modification offer, and that offer was extended to her on August 12, 2020. A copy of the Trial Period Plan offer is attached hereto as Exhibit B.

11.　　On November 6, 2020, PHH offered Ms. Ruckman a permanent Loan Modification of the Loan ("Permanent Loan Modification Offer") which included a Loan Modification Agreement. Attached hereto and incorporated by reference as Exhibit C is a true and accurate copy of the Permanent Loan Modification Offer.

12.　　To accept the Permanent Loan Modification Offer, Ms. Ruckman was to provide payment and the executed Loan Modification Agreement to PHH no later than November 24, 2020. *Id.*

13.　　PHH granted Ms. Ruckman an extension until December 31, 2020 to provide the executed Loan Modification Agreement to PHH.

14.　　As PHH did not receive the executed Loan Modification Agreement by December 31, 2020, a Decision on the Request for Mortgage Assistance (the "Denial Letter") was prepared

by PHH dated January 14, 2021, informing Ms. Ruckman she was no longer eligible for the modification. A true and accurate copy of the Denial Letter is attached hereto as Exhibit D.

15.     PHH records show the Denial Letter was sent to Ms. Ruckman via U.S. Regular Mail on January 15, 2021. A copy of the screenshot showing the mailing is attached here to as Exhibit E.

16.     On January 19, 2021, PHH received the Loan Modification Agreement that Ms. Ruckman executed in front of a notary public on January 12, 2021. A true and accurate copy of this document is attached hereto as Exhibit F.

17.     All payments due under the Loan Modification Agreement were received by PHH on August 5, 2021. PHH then reversed the denial of the Loan Modification Agreement, and the Loan Modification Agreement was implemented on August 23, 2021. A true and accurate copy of the fully executed Loan Modification Agreement is attached hereto as Exhibit G.

18.     The foreclosure action against Ms. Ruckman was dismissed on August 30, 2021.


FURTHER AFFIANT SAYETH NOT.

**Name: Howard R. Handville**

**Title: Authorized Signer**

PHH Mortgage Corporation


STATE OF FLORIDA          )
                          )
COUNTY OF BROWARD   )

SUBSCRIBED and SWORN to before me on this 23rd day of February 2022, by Howard R. Handville, ☐ known to me or (☑ or satisfactorily proven to me through production of a valid Florida Driver License as identification) to be the person who appeared before me.

_____
(Notary Signature)

Illance Dufresne
(Printed name)

Seal:

Illance Dufresne
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG906498
Expires 9/19/2022

## **CERTIFICATE OF SERVICE**

I certify that an exact copy of the foregoing document was sent via electronic mail on February 25, 2022 to all counsel for record.

/s/ Sarah A. Wilson
Sarah A. Wilson

# EXHIBIT A

4-814-BGS91-0000049-001-01-000-000-000-000




ANGELA RUCKMAN
837 S MAIN ST
MANSFIELD OH 44907-2036

CONFIDENTIAL

REPRESENTATION OF PRINTED DOCUMENT

# NewRez

PHH000158

08/05/2020                                    Account Number:        5853

ANGELA RUCKMAN
837 S MAIN ST
MANSFIELD, OH 44907



---

## Account Information

**Account Number:        5853**

**Property Address:**
837 S MAIN ST
MANSFIELD, OH 44907

We are here to help!

**Account Relationship Manager:**
Felipe Ruiz
RMA@mortgagefamily.com
Online: www.mortgagequestions.com

---

## THE REQUEST FOR MORTGAGE ASSISTANCE WAS RECEIVED
### PLEASE READ CAREFULLY FOR NEXT STEPS

Dear ANGELA RUCKMAN,

Thanks for submitting the request for mortgage assistance. We have reviewed the application and documents submitted. The application is currently **complete** as of 07/31/2020 and we do not require any additional documents at this time to evaluate the request for help. In the event additional documentation is needed based on additional review of the file, we will be in contact.

**Next Steps:**

- We will review the account for all possible mortgage assistance options. Under applicable law we are required to complete our review within 30 calendar days from the date we determined the package was complete: however, our average decision timeline is typically less than the required timeframe. If further documentation is required, we will send a notice requesting the information and provide a reasonable timeframe for submission. This may result in a longer evaluation process; however, foreclosure protection will be extended, provided the requested documentation is received within the timeframe outlined in the applicable notice.

- Next, we will send a notice with the results of our review, which will include any options that might be available.

    - If the account <u>does</u> qualify for a mortgage assistance option: We will send an offer. It is important **the instructions are followed** in the offer letter pertaining to any deadlines in order to accept and move forward with the loan modification or other alternative solution.

    - If the account <u>does not</u> qualify for a mortgage assistance option: We will look for every possible option and if we are unable to approve the application for assistance, we will send a non-approval notice explaining the details and next steps. Depending on the reason for non-approval, the account could be eligible for an appeal. Please review the notice for additional information including any deadlines to submit an appeal.

There are certain foreclosure protections to which this account is entitled since we have received the complete application. Any applicable foreclosure actions are on hold.

---

NMLS # 2726                                    OCWN_COMPLETE_PKG

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

CONFIDENTIAL

4-814-BGS91-0000049-001-02-000-000-000-000

# NewRez

PHH000159

Please be aware that, although foreclosure actions have begun, no foreclosure sale will occur while we evaluate the complete package and if the account is approved for an assistance option, the accountholder(s) must comply with all requirements of the approved option.

Felipe Ruiz has been assigned as the account Relationship Manager and will be the designated representative for resolution of inquiries and submission of documents.



**For any questions**, the account Relationship Manager, Felipe Ruiz, can be reached Monday through Friday 8:00am to 9:00pm ET toll-free at 800-750-2518. If Felipe Ruiz is not available, another dedicated member of our Home Retention Team will be available to answer any questions. Our Customer Care Center is also available, toll-free at 800-449-8767, Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm ET to answer any questions. Information concerning this mortgage account may also be found online at www.mortgagequestions.com.

Sincerely,

*Loan Servicing*

4-814-BGS91-0000049-001-03-000-000-000-000

NMLS # 2726

OCWN_COMPLETE_PKG

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

**CONFIDENTIAL**



PHH000160

## ADDITIONAL ASSISTANCE IS AVAILABLE

If financial hardship is being experienced, housing counseling may be a way to help manage finances. We recommend contacting a HUD-approved agency for assistance in keeping the home. This assistance is available at no charge.



| HUD Approved Housing Counseling | (800) 569-4287 | www.HUD.gov |
| Homeowner's HOPE Hotline Number | (888) 995-4673 | www.hopenow.com |
| Fannie Mae Assistance Program | (800) 232-6643 | www.knowyouroptions.com |
| Consumer Financial Protection Bureau (CFPB) | (855) 411-2372 | www.consumerfinance.gov/mortgagehelp/ |
| Freddie Mac Assistance Program | | http://myhome.freddiemac.com/ |

To submit a qualified written request, a notice of error or a request for information, the following address must be used:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

4-814-BGS91-0000049-001-04-000-000-000-000

5853                                                          *OCWN_COMPLETE_PKG*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT                                 NMLS #2726
                                                                        CONFIDENTIAL

REPRESENTATION OF PRINTED DOCUMENT



PHH000161

# ADDITIONAL LEGAL DISCLOSURES

**Notice Regarding Bankruptcy:** Please be advised that if the account is part of an active Bankruptcy case or if the account has received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt.  If the bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If the account has received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from the accountholder(s) personally. Finally, if the account is in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, the accountholder(s) should continue to make payments in accordance with the plan.

**Notice Regarding Credit Discrimination:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

**Notice Regarding Tax Consequences of Mortgage Assistance Options:** Acceptance of a loan modification, short sale, deed-in-lieu of foreclosure or any other mortgage assistance option(s) may result in federal, state, or local tax consequences to the account holder and/or affect eligibility for any public assistance benefits.  We cannot advise on these impacts and encourage contacting a tax professional to discuss any questions that might arise.

**Notice Regarding Additional Liens:** If the account has any other mortgage loan(s) that is/are secured by the same property, we encourage contacting the servicer(s) of those loan(s) to discuss available mortgage assistance options.

**Notice Regarding Appraisals:** We may obtain an appraisal or other written valuation in order to determine the property's value. We will promptly provide a copy of any such valuation, even if the account is not approved for any mortgage assistance options.

**Notice Regarding Third Party Approvals:** We may require additional approvals to determine if the account is eligible for a mortgage assistance option(s). This may include, but is not limited to, approval from an investor or mortgage insurer.

**Please Be Aware Documents May Expire During the Review:** If financial documents are over 90 days old, we may contact the account holder(s) to request updated documentation. The most current documents available should be provided to our office.

**Notice: Not all Accounts Will Qualify for a Loan Modification or Other Mortgage Assistance Option:** We have not yet determined if the account is eligible for a loan modification or any other mortgage assistance option. All required documents must be submitted in order for us to be able to proceed with our evaluation of the account's eligibility. We are not obligated to offer assistance based solely on the representations and information included in the request for assistance. We reserve the right to verify the information submitted, and to request additional information and/or documents to evaluate account eligibility. In our evaluation process, we will follow all the modification and other mortgage assistance program guidelines to the extent permitted under our contractual obligations with the investors who own the account. Not all instances where a completed mortgage assistance request has been submitted will qualify for a loan modification or any other mortgage assistance option(s).

If the account does qualify for a loan modification or any other mortgage assistance option(s), we will send an offer letter with additional details of the option(s) for which the account qualifies. In order to accept a mortgage assistance option,

NMLS # 2726                                                                                                          OCWN_COMPLETE_PKG

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

CONFIDENTIAL

# EXHIBIT B

REPRESENTATION OF PRINTED DOCUMENT

# NewRez

PHH000168

08/12/2020



**Respond to this offer no later than:**

# 09/01/2020

ANGELA RUCKMAN
837 S MAIN ST
MANSFIELD, OH 44907

## THE ACCOUNT HAS BEEN APPROVED FOR A MORTGAGE ASSISTANCE OFFER
### PLEASE READ CAREFULLY

Dear ANGELA RUCKMAN,

**Congratulations!** The account is approved to enter into a Trial Period Plan under an PHH Mortgage Services Modification Plan. Please read this letter so that the next steps necessary for completion of the modification are understood completely. In order to be considered for a modification, the proposed trial period payments must be completed.

Below, please find important information about the mortgage assistance offer, with additional details on the following pages. However, time is of the essence to accept this offer. A response must be received by 09/01/2020 in order to start this trial modification. This offer will expire, so we must receive a response by the date listed on this letter.

## Account Information

**Account Number:** 5853

**Property Address:**
837 S MAIN ST
MANSFIELD, OH 44907

We are here to help!

Account Relationship Manager:
Felipe Ruiz
RMA@mortgagefamily.com
Online:
www.mortgagequestions.com

**What needs to be done:**

- To accept an assistance option, the following must be completed:

    o For convenience we have enclosed a Mortgage Assistance Acceptance Form which needs to be completed and RETURNED as outlined on the form by 09/01/2020.

    o In addition, the First Trial Period Plan payment of $469.15 needs to be made by 09/01/2020.

| Trial Period Payment Number | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $469.15 | 09/01/2020 |
| 2 | $469.15 | 10/01/2020 |
| 3 | $469.15 | 11/01/2020 |

**What needs to be known:**

- The account is approved for an PHH Mortgage Services Streamline Modification with monthly payments in the amount of $469.15.

5853

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

**CONFIDENTIAL**

PHH000169

# NewRez

- In order to have the account modified permanently, the following requirements must be met:
  - o Successful completion of the Trial Period Plan. The Trial Period Plan offer details are enclosed. Please read all materials carefully.
  - o Property title must be clear of liens, judgments and other encumbrances.
  - o Upon successful completion of the Trial Period Plan, we will send a Permanent Modification Agreement, which will require all parties who appear on the original Note or who appear on the title to sign. It may be necessary to sign the Agreement in the presence of a notary public.
- We've also included details about other options we considered and the account's eligibility for those options. Please see the enclosed sections for more information:
  - o **Other Available Options**: Explains the details to transition out of the home through a Short Sale or Deed in Lieu of Foreclosure.
- If it is believed our decision was incorrect, a request for an appeal can be made in writing within 14 days from the date of this letter. Additional details on how to submit an appeal are included with this letter.

**The following additional documents are enclosed for information:**

- PHH Mortgage Services Streamline Modification Trial Period Plan Notice
- PHH Mortgage Services Streamline Modification Frequently Asked Questions
- Mortgage Program Review
- Opportunity for Appeal

- Other Available Options
- Additional Assistance Available
- Legal Disclosures
- Payment Remittance Information

**Please Note --** If we are contacted and the offer is accepted, but there is subsequent failure to make the first Trial Period Plan payment by the first payment due date, and we do not receive the payment by the last day of the month in which it is due, this offer will be revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

We are here to help! Felipe Ruiz has been assigned as the account relationship manager and will be the designated representative for resolution, inquiries and submission of documents.

If there are any questions, please call the Relationship Manager Felipe Ruiz toll-free at 800-750-2518. We are available Monday through Friday 8:00am to 9:00pm ET.

Sincerely,

Loan Servicing

5853

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 3726

CONFIDENTIAL

PHH000170

# NewRez

08/12/2020

Account Number: ███5853

## PHH Mortgage Services Streamline Modification TRIAL PERIOD PLAN NOTICE



As previously explained, we are offering the account an opportunity to enter into a Trial Period Plan. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important all information is read in its entirety so that the actions needed to be taken to successfully complete the Trial Period Plan to permanently modify the account are fully understood.

**Make Trial Period Payments**

To successfully complete the Trial Period Plan, all the Trial Period Plan payments below must be made.

| Trial Period Payment Number | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $469.15 | 09/01/2020 |
| 2 | $469.15 | 10/01/2020 |
| 3 | $469.15 | 11/01/2020 |

When making the Trial Period Plan payments, the following must be complied with:

o   If the account was previously required to remit payments by certified funds, this requirement extends through the Trial Period Plan. Certified funds are defined as: money orders, cashier's checks, or personal checks certified by a local bank.
o   The amount of the "Trial Period" payment must be sent as provided for under the Trial Period Plan, instead of, not in addition to, the normal monthly mortgage payment.

Trial Period Plan Payments should be sent using one of the approved payment methods detailed on the *Payment Remittance Information* page inserted later in this package.

**Time is of the Essence**

If there is a failure to make the First Trial Period Plan payment by 09/01/2020, and we do not receive the payment by the last day of the month in which it is due, this offer may be revoked and we may refer the account to foreclosure; or if the account has been referred to foreclosure, foreclosure proceedings may continue and a foreclosure sale may occur.

If there are questions about the Trial Period Plan or permanent modification requirements, please call the account Relationship Manager, Felipe Ruiz, toll-free at **800-750-2518.** We are available Monday through Friday 8:00am to 9:00pm ET.

**Additional Trial Period Plan Information:**

•   It is important that the *Streamline Modification Frequently Asked Questions* and *Additional Legal Disclosures* information attached is reviewed thoroughly.

███5853                                                                                                    *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

CONFIDENTIAL



PHH000171

- This Trial Period Plan offer is contingent on the accountholder(s) having provided accurate and complete information. We reserve the right to revoke this offer or terminate the plan following acceptance if we learn of information that would make the account ineligible for the Trial Period Plan.

- Once each of the payments above have been successfully made by their due dates, two signed copies of the Modification Agreement have been submitted, and we have signed the Modification Agreement, the mortgage will be permanently modified in accordance with the terms of the Modification Agreement.

- Please be aware that the final modification may include, but is not limited to, mortgage terms such as principal forgiveness, a balloon payment and changes to the interest rate and maturity date. Additional details will be outlined in the final Modification Agreement.

**We must receive each payment, in the month in which it is due. If a payment is missed or there is a failure to fulfill any other terms of the Trial Period Plan, this offer will end and the account will not be modified:**

- If the account is eligible and qualifies for assistance from a state Housing Finance Agency (HFA) using federal Hardest Hit Funds to pay down a portion of the unpaid principal balance of the account (HFA Funds), we must receive such HFA Funds from the HFA prior to modifying the account. If we do not receive such HFA Funds, the account may not be eligible for a modification. However, if the account qualifies for a modification without the HFA funds, we may offer a modification of the account.

- If it is felt the Trial Period Plan payments shown above are not affordable and there is a desire to remain in the home—or if there has been a decision to leave the home—please contact us at 800-449-8767 to discuss alternatives to foreclosure.

- Please note that, except for the monthly account payment amount during the Trial Period Plan, the terms of the existing mortgage documents and all account requirements remain in effect and unchanged during the Trial Period Plan.

**We will not refer the account to foreclosure or proceed to foreclosure sale during the Trial Period Plan, provided there is compliance with the terms of the Trial Period Plan:**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if there is failure to comply with the terms of the plan or the account no longer qualifies for a Permanent Mortgage Modification.

- It is agreed we will hold the Trial Period Plan payments in an account until sufficient funds are in the account to pay the oldest delinquent monthly payment. It is also agreed we will not owe interest on the amounts held in the account. If any money is left in this account at the end of the Trial Period Plan and the account qualifies for a Permanent Mortgage Modification, those funds will be deducted from amounts that would otherwise be added to the modified principal balance.

- Our acceptance and posting of payment during the Trial Period Plan will not be deemed a waiver of the acceleration of the account and related activities, including the right to resume or continue foreclosure actions if there is failure to comply with the terms of the plan, and shall not constitute a cure of mortgage default unless such payments are sufficient to completely cure the default.

█████5853                                                                                           *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT                                                          NMLS #: 2726

CONFIDENTIAL

PHH000172

**If the monthly payment did not include escrows for taxes and insurance, it may now be required:**

- It is agreed any prior waiver that allowed payment directly for taxes and insurance is revoked. It is agreed we may establish an escrow account and payment of escrows into that account will be required, unless prohibited by applicable law.

**The current mortgage documents remain in effect; however, the Trial Period Plan payment may be made instead of the payment required under the mortgage documents:**

- It is agreed all terms and provisions of the current mortgage documents remain in full force and those terms shall remain in compliance. Nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations, if any exist, contained in the mortgage documents.

**Meaning of acceptance of this trial offer:**

- It is agreed the Trial Period Plan is not a modification of the account and the account will not be modified unless or until all of the conditions required for modification are fully met. It is understood and agreed PHH Mortgage Services will not be obligated or bound to modify the account if there is failure to meet any of the requirements under this Trial Period Plan.

**Additional documentation may be required:**

- The account may be required to submit additional documentation in order for us to process the modification request. If further documentation is needed, we will send a separate letter requesting the outstanding required documentation.

5853

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

CONFIDENTIAL

# FREQUENTLY ASKED QUESTIONS

**Q. What else should be known about this offer?**

- If the new Trial Period Plan payments are timely, and the account continues to remain eligible for the permanent modification, **we will not conduct a foreclosure sale.**

- The account will not be charged any fees for this Trial Period Plan or a permanent modification.

- The new monthly payment may include an escrow for property taxes, hazard insurance and other escrowed expenses, unless its inclusion is prohibited by applicable law. If the cost of homeowner's insurance, property tax assessment or other escrowed expenses increases, monthly payments will increase as well.

**Q. Why is there a Trial Period Plan?**

- The Trial Period Plan offers immediate payment relief and gives time to make sure the new monthly mortgage payment can be managed. The Trial Period Plan is temporary and the existing mortgage lien remains in effect and unchanged during the Trial Period Plan.

**Q. When will it be known if the account can be modified permanently and how will the modified account balance be determined?**

- If the account continues to remain eligible for the permanent modification, once all Trial Period Plan payments are made on time and a copy of the signed modification agreement is returned to us, we will sign the copy and send it back so a fully executed modification agreement detailing the terms of the modified mortgage can be retained. Any difference between the amount of the Trial Period Plan payments and the regular mortgage payments will be added to the balance of the account, along with any other past due amounts, as permitted by the account documents. While this will increase the total amount owed on the account, it should not significantly change the amount of the modified mortgage payment.

**Q. Will the interest rate and principal and interest payment be fixed after the account is permanently modified?**

- Once the account is modified, the interest rate will be fixed for the life of the mortgage.

6-814-BGW90-0000138-001-07-000-000-000-000

5853

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

CONFIDENTIAL



PHH000174

# NewRez

Loan Number: ████5853

## MORTGAGE ASSISTANCE ACCEPTANCE FORM

**REMEMBER TIME IS OF THE ESSENCE. PLEASE DO NOT DELAY!**

Based on the option(s) presented in this notice,  selection may be made as to the desired option.  Check the desired option below, then sign and return this Mortgage Assistance Acceptance Form.

Only **one** option may be chosen:

☐  **Accept the Streamline Modification Trial Period Plan offer.**
☐  **Decline the Streamline Modification Trial Period Plan offer. Instead, accept the offer below:**
    ☐  Conditional Short Sale
    ☐  Conditional Deed-in-Lieu of Foreclosure
☐  **Reject all options in this notice.**

_____                 _____
Date                                                           ANGELA RUCKMAN

Sign and Return by Fax, Email or Mail:

| Fax or Email - for *fastest* processing | Or | **Regular Mail** |
|---|---|---|
| Fax:    856-917-2848<br>Email:  MOD@mortgagefamily.com | | PHH Mortgage Services<br>Attn: Home Retention Department<br>1661 Worthington Road, Suite 100B<br>West Palm Beach, FL 33409 |

████5853                                                                                   *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT                                       NMLS # 3726

CONFIDENTIAL

6-814-BGW90-000138-001-08-000-000-000-000

PHH000175

# NewRez

## <u>MODIFICATION PROGRAM REVIEW</u>

After careful review of the information provided, we have reviewed the loan for available mortgage assistance options as indicated below:

| Program | Determination | Reason for Non-Approval |
|---|---|---|
| Helping Homeowners Modification | Non-Approved | The account is greater than 90 days delinquent. |
| Streamline Modification | Approved | |

We have established evaluation criteria that set an order ranking for evaluation of mortgage assistance options (commonly known as an "eligibility waterfall"). Based upon this ranking system, the account has qualified for a Trial Period Plan which necessarily means that we are unable to offer all modification options ranked below it.

Even though you may have submitted income documentation, this loan modification program did not require an income calculation as part of the review and approval process.

6-814-BGW90-0000138-001-09-000-000-000-000

NMLS # 2726          OCWN_PLS_SLN_TRL
This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

**CONFIDENTIAL**

PHH000176

# NewRez

## OPPORTUNITY FOR APPEAL

**What should be done if there is disagreement with the reason for non-approval and a wish to appeal?**

If there is disagreement with the reason(s) for non-approval of any loan modification option, the accountholder is afforded the right to appeal. To appeal, the accountholder is provided 14 days from the date of this notice to send a written explanation and supporting documentation to substantiate findings. Please send a copy of this letter, along with any supporting documents, to:

PHH Mortgage Services
Escalations Department
P.O. Box 5432
Mount Laurel, NJ 08054
Email: EscalatedCases@mortgagefamily.com

No foreclosure sale will be conducted, and the home will not be lost during this 14-day period. However, please note that if a notice of a foreclosure sale date of the home is received, or if notice of a foreclosure sale date of the home was published prior to the submission to us of a completed loan modification application, then such foreclosure sale may not be suspended for this 14-day period if, despite our reasonable attempts to delay the sale, the court with jurisdiction over the foreclosure proceedings, or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the sale fails or refuses to halt the sale.

If an appeal of our decision is chosen, the mortgage assistance option(s) offered in this notice will remain available pending the outcome of the appeal. If we determine on appeal that the account is eligible for a modification trial period plan, we will send an offer for the trial period plan. In that case, 14 calendar days will be given from the date of the appeal decision to let us know of the intent to accept the trial period plan offer.

If there is a delay in accepting the mortgage assistance option(s) offered in this notice until after receiving our appeal decision, the account will become more delinquent. Any unpaid interest and other unpaid amounts, such as escrows for taxes and insurance, will continue to accrue on the account during the appeal. In that event, the payment amounts and due dates of the initial mortgage assistance option(s) may be adjusted. Our appeal decision is final and not subject to further appeals.

6-8-I4-BGW90-000138-001-I-0-000-000-000-000

5853                                                                                    *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT                                                                    NMLS #2726

CONFIDENTIAL

PHH000177

# NewRez

## OTHER AVAILABLE OPTIONS



| | **Short Sale** | **Deed-in-Lieu of Foreclosure (DIL)** |
|---|---|---|
| **The account is conditionally approved for these Mortgage Assistance Options** Acceptance of any of these options will not allow the home to be kept, but will allow foreclosure avoidance. These offers are conditional and could be subject to an appraisal or title search. We are not able to guarantee final approval until we receive all the documents required for our final evaluation of the account's eligibility. | | |
| **Option Details** | Listing and selling the property at market value will release the account from mortgage debt serviced by PHH Mortgage Services on this property, even if the sale price is lower than the mortgage debt. | Transferring ownership of the property by signing over the deed/title to us will release the account from the mortgage debt. |
| **Benefits** | ▪ Avoid the stress and potential costs of foreclosure. ▪ Sell the property with less negative impact to credit than foreclosure or bankruptcy. ▪ The account may be eligible for relocation assistance if qualified. | ▪ A Deed-in-Lieu is a quicker way to get out of the property without the hassle, time and energy associated with listing and selling the house. ▪ The account could end up with no mortgage debt and less negative impact to credit than foreclosure or bankruptcy. ▪ The account may be eligible to receive up to $10,000 in relocation assistance. |
| **Additional Documents Required** **Send by Fax to: 856-917-2848** **Or by email:** **Short Sale SS@mortgagefamily.com** **Deed in Lieu DIL@mortgagefamily.com** | **We must receive the documents listed below to us by  08/26/2020  :** ▪ Executed Listing Agreement. ▪ Executed purchase contract, including all addendums. ▪ The buyer's proof of funds or financing pre-approval letter. ▪ Preliminary Closing Disclosure/Settlement Statement. | **In order to complete the Deed-in-Lieu transaction the following documents must be sent:** • If the accountholder(s) are married, please provide one of the documents listed below: ○ Signed letter stating all accountholder and spouses' complete names, or ○ Copy of the marriage license. • If the accountholder(s) are no longer married, please provide the following: ○ A copy of the divorce decree, • If accountholder(s) is widowed, please provide one of the documents listed below: |

6-814-BGW90-000138-001-11-000-000-000-000

███5853

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS #2726
CONFIDENTIAL

# NewRez

| | | o Copy of the probate court documents,<br>o Death certificate, or<br>o Obituary/newspaper article reporting the death. |
|---|---|---|
| **Additional Documents/Inform ation We Will Request from Third Parties Prior to Final Approval** | Please note that final approval is conditioned upon receipt of the following documents/information from third-party providers:<br><br>▪ Valuation - an independent valuation of the property that verifies the current estimated market value.<br>▪ Closing costs - verification that closing costs associated with the transaction are reasonable and customary.<br>▪ If applicable, approval from the investor or mortgage insurer of the account to proceed with the transaction. | Please note that final approval is conditioned upon receipt of the following documents/information from third-party providers:<br><br>▪ Valuation - an independent valuation of the property that verifies the current estimated market value.<br>▪ Clear Title - a title search or history demonstrating clear title and in marketable condition.<br>▪ If applicable, approval from the investor or mortgage insurer of the account to proceed with the transaction. |
| **Our Next Steps After We Receive All Required Documents** | After we receive all required documents we will:<br>▪ Complete a review of the account terms, investor requirements, and mortgage insurance requirements, if applicable.<br>▪ Work to complete an independent valuation review. A valuation agent will be in contact or work with the account's designated agent for access to the property so that the valuation agent can set up an appointment.<br><br>If an offer is present and after all documents/information have been received, we will issue a decision within 30 calendar days.<br><br>If we send a final approval, the account will be afforded 14 calendar days from the date of receipt to provide signed written acceptance of the short sale approval.<br><br><br>Failure to perform all actions required to accept the Short Sale offer will be considered as a rejection. | After we receive all required documents we will:<br>▪ Complete a review of the account terms, investor requirements, and mortgage insurance requirements, if applicable.<br>▪ Work to complete an independent valuation review. A valuation agent will be in contact or work with the account's designated agent for access to the property so that the valuation agent can set up an appointment.<br><br>If we sent a final approval, the account will be afforded 14 calendar days from the date of receipt to provide signed written acceptance of the offer.<br><br>Once we've received written acceptance, our vendor will draft the deed document and schedule a notary at a convenient time and place for the execution of the DIL of foreclosure documents. |

6-814-BGW90-000138-001-12-000-000-000-000

■5853

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

REPRESENTATION OF PRINTED DOCUMENT

PHH000179

## ADDITIONAL ASSISTANCE IS AVAILABLE

If financial hardship is being experienced, housing counseling may be a way to help manage finances. We recommend contacting a HUD-approved agency for assistance in keeping the home. This assistance is available at no charge.

| | | |
|---|---|---|
| HUD Approved Housing Counseling | (800) 569-4287 | www.HUD.gov |
| Homeowner's HOPE Hotline Number | (888) 995-4673 | www.hopenow.com |
| Fannie Mae Assistance Program | (800) 232-6643 | www.knowyouroptions.com |
| Consumer Financial Protection Bureau (CFPB) | (855) 411-2372 | www.consumerfinance.gov/mortgagehelp/ |
| Freddie Mac Assistance Program | | http://myhome.freddiemac.com/ |

To submit a qualified written request, a notice of error or a request for information, the following address must be used:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

6-814-BGW90-0000138-001-13-000-000-000-000

5853                                                                 *OCWN_PLS_SLN_TRL*



This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS #2726



CONFIDENTIAL

PHH000180

**NewRez**



### Additional Legal Disclosures

**Notice Regarding Bankruptcy:** Please be advised that if the account is part of an active Bankruptcy case or if the account has received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt. If the bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If the account has received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from the accountholder(s) personally. Finally, if the account is in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, the accountholder(s) should continue to make payments in accordance with the plan.

**Notice regarding Credit Discrimination:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

**Notice regarding Tax Consequences of Mortgage Assistance Options:** Acceptance of a Loan Modification, Short Sale, or Deed-in-Lieu of Foreclosure may result in federal, state, or local tax consequences to accountholders and/or affect eligibility for any public assistance benefits. We cannot advise on these impacts and encourage contact with a tax professional to discuss any questions.

6-814-BGW90-000138-001-14-000-000-000-000

5853

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 3726

**CONFIDENTIAL**

PHH000181

# NewRez

## PAYMENT REMITTANCE INFORMATION

**PLEASE DON'T FORGET:**
1. All checks should be payable to PHH Mortgage Services.
2. Always include the account number with the payment.

| Overnight Mail |
| --- |
| **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services<br>1 Mortgage Way SV22<br>Mt Laurel, NJ 08054<br><br> **Reference:** PHH Mortgage Account # 7092845853 |

| Regular Mail |
| --- |
| **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services<br>1 Mortgage Way SV22<br>Mt Laurel, NJ 08054<br><br> **Reference:** PHH Mortgage Account # 7092845853 |

| Money Gram |
| --- |
| **Receiver Code:** 7440<br>**Payable to:** PHH Mortgage<br>**City:** Mt Laurel<br>**State:** New Jersey<br>**Reference:** PHH Mortgage Account # 7092845853<br>**Agent Locator:** (800) 926-9400 |

| Western Union |
| --- |
| **By WUQC: Western Union Quick Collect**<br>**Code City:** PHHUS<br>**State:** NJ<br>**Reference:** PHH Mortgage Account # 7092845853 |

6-814-BGW90-000138-001-15-000-000-000-000

5853

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

**CONFIDENTIAL**

# EXHIBIT C

PHH000188

# ✦ NewRez

11/06/2020



| Respond to this offer no later than: |
|:---:|
| **11/24/2020** |

ANGELA RUCKMAN
837 S MAIN ST
MANSFIELD, OH 44907

## APPROVAL FOR PERMANENT MODIFICATION
### PLEASE READ CAREFULLY

Dear ANGELA RUCKMAN:

**Congratulations!** The above referenced account is approved for a modification. This letter will explain the next steps necessary to accept the modification offer.

Below is important information about our decision regarding mortgage assistance, with additional details on the following pages. However, do not forget **time is of the essence** to accept this modification as this offer will expire if we do not receive a response by 11/24/2020 .

**What needs to be done:**
1. To accept the modification, the following must be done:
   a. The Modification Agreement must be signed and
   b. All pages of the signed copies should be returned to us in the enclosed, prepaid envelope by 11/24/2020

**What will we do:**
1. The account is approved for a Mortgage Modification with monthly payments in the amount of $469.12**.** The offer details are enclosed. All materials should be carefully read.
2. If the Modification Agreement has notary provisions at the end, the enclosed Modification should only be signed in the presence of a notary public and other witnesses (if applicable).  All documents must be executed and the signatures must be exactly as the names are typed.  Please retain one copy and return the other original Modification Agreement.

**The following additional documents are enclosed:**

- Summary of the Modification
- Additional Assistance Available

- Legal Disclosures
- Instructions for Making the Payment
- Modification Agreement

Vanessa George has been assigned as the Relationship Manager and will be the designated representative for resolution, inquiries and submission of documents.

---

### Account Information

**Account Number:** ▮▮▮▮5853

**Property Address:**
837 S MAIN ST
MANSFIELD, OH 44907

We are here to help!

The Account Relationship Manager:
Vanessa George
RMA@mortgagefamily.com
Online:
www.mortgagequestions.com

---

▮▮▮▮5853

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

**NewRez**

PHH000189

**For any questions**, we can be reached Monday through Friday 8:00am to 9:00pm ET at 800-750-2518, to speak with the assigned Relationship Manager, Vanessa George. If Vanessa George is not available, another dedicated member of our Home Retention Department will be available to answer any questions.

Our Customer Care Center is also available, toll free at 800-449-8767, Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm ET to answer any inquiries.



Sincerely,

Loan Servicing

5853

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

**CONFIDENTIAL**



PHH000190

## SUMMARY OF THE MORTGAGE MODIFICATION OFFER

- **FIRST MODIFIED PAYMENT DUE DATE:** The first modified monthly payment will begin on 12/01/2020.
- The modified interest rate is 2.875% and will be fixed for the remaining term of the mortgage account.
- **NEW MODIFIED PAYMENT:** The modified monthly mortgage payment amount is as follows:

| Modified Monthly Payment | |
| --- | --- |
| Principal and Interest | $301.17 |
| Escrow* | $167.95 |
| **Total Modified Monthly Payment** | **$469.12** |

*The escrow payment may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts, or other escrow expenses. Therefore, the total monthly payment may change accordingly. We will send a notification if there are any adjustments made to the total monthly payment.

- **NEW PRINCIPAL BALANCE:** Any past due amounts as of the modification effective date, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid to a third party on behalf of the above referenced account, will be added to the mortgage account balance.

- **ESCROW ACCOUNT:** The terms of the Modification Agreement require the servicer to set aside a portion of the new monthly payment in an escrow account for payment of the property taxes, insurance premiums and other required fees. Any prior waiver of escrows by the lender of this account is no longer in effect. PHH Mortgage Services will draw on this account to pay real estate taxes and insurance premiums as they come due. Please note the escrow payment amount will adjust if the taxes, insurance premiums and/or assessment amounts change, so the amount of the monthly payment PHH Mortgage Services must place in escrow will also adjust as permitted by law. This means the monthly payment may change. The initial monthly escrow payment will be included in the loan payment noted in the enclosed Agreement; there is no need to remit this amount separately.

- **NO FEES:** There are no fees under the Modification Program.

- **AGREEMENT:** The account holder(s) must **sign and return the Modification Agreement to us** in the enclosed, pre-paid envelope by the due date which is 11/24/2020 : If the Modification Agreement has notary provisions at the end, the enclosed Loan Modification Agreement should not be signed unless in the presence of a notary and other witnesses (if applicable). All of the documents must be executed and the signatures must be exactly as the names are typed.  One copy should be retained for personal records and all other original Modification Agreements should be returned.

5853                                                     *OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

CONFIDENTIAL



REPRESENTATION OF PRINTED DOCUMENT

PHH000191

## ADDITIONAL ASSISTANCE IS AVAILABLE

If financial hardship is being experienced, housing counseling may be a way to help manage finances. We recommend contacting a HUD-approved agency for assistance in keeping the home. This assistance is available at no charge.

| | | |
|---|---|---|
| HUD Approved Housing Counseling | (800) 569-4287 | www.HUD.gov |
| Homeowner's HOPE Hotline Number | (888) 995-4673 | https://995hope.org/ |
| Fannie Mae Assistance Program | (800) 232-6643 | www.knowyouroptions.com |
| Consumer Financial Protection Bureau (CFPB) | (855) 411-2372 | www.consumerfinance.gov/mortgagehelp/ |
| Freddie Mac Assistance Program | | http://myhome.freddiemac.com/ |

To submit a qualified written request, a notice of error or a request for information, the following address must be used:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

5853

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

CONFIDENTIAL

PHH000192



# ADDITIONAL LEGAL DISCLOSURES

**Notice Regarding Bankruptcy:** Please be advised that if you are part of an active Bankruptcy case or if you have received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan.

**Notice Regarding Tax Consequences of Mortgage Assistance Options:** The acceptance of a Modification, Short Sale, or Deed-in-Lieu of Foreclosure may result in federal, state, or local tax consequences and/or affect one's eligibility for any public assistance benefits. We cannot provide advice on these impacts and encourage a tax professional be contacted to discuss any questions.

To submit a qualified written request, a notice of error or a request for information, use the following address:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648-

9-814-BIZ58-0000094-001-06-000-001-000-000

■■■■5853

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT
NMLS # 2726
**CONFIDENTIAL**

PHH000193

# NewRez

## PAYMENT REMITTANCE INFORMATION

**PLEASE DON'T FORGET:**
1. All checks should be payable to PHH Mortgage Services.
2. Always include the account number with the payment.

| Overnight Mail |
| --- |
| **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services<br>1 Mortgage Way SV22<br>Mt Laurel, NJ 08054<br><br>**Reference:** PHH Mortgage Account # 7092845853 |

| Regular Mail |
| --- |
| **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services<br>1 Mortgage Way SV22<br>Mt Laurel, NJ 08054<br><br>**Reference:** PHH Mortgage Account # 7092845853 |

| Money Gram |
| --- |
| **Receiver Code:** 7440<br>**Payable to:**  PHH Mortgage<br>**City:** Mt Laurel<br>**State:** New Jersey<br>**Reference:** PHH Mortgage Account # 7092845853<br>**Agent Locator:** (800) 926-9400 |

| Western Union |
| --- |
| **By WUQC: Western Union Quick Collect**<br>**Code City:** PHHUS<br>**State:** NJ<br>**Reference:** PHH Mortgage Account # 7092845853 |

9-814-BIZ58-0000094-001-07-000-001-000-000

5853

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726

INTERNET REPRINT

**CONFIDENTIAL**



Loan Number: ████5853
Investor Loan Number: ████0858

This document was prepared by PHH Mortgage Corporation

After Recording Return To:
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

# LOAN MODIFICATION AGREEMENT

Borrower (s):  ANGELA RUCKMAN

<u>THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $22,644.26, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.</u>

BALLOON PAYMENT DISCLOSURE
THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF YOU MAKE ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, YOU WILL BE REQUIRED TO REPAY, IN  A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO  ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* – LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME.  SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN.  IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.

CONFIDENTIAL

PHH000195

The debtor, ANGELA RUCKMAN, and HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-5 through the servicer of the underlying mortgage loan agreement, PHH Mortgage Corporation,  have agreed to modify the terms of said underlying mortgage loan agreement. HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-5 is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement.  PHH Mortgage Corporation, remains servicer for said underlying mortgage loan agreement.

This Loan Modification Agreement ("Agreement"), made this 6th day of November, 2020 ("Modification Agreement Date"), between ANGELA RUCKMAN ("Borrower") and PHH Mortgage Corporation, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 08/24/2005 and recorded in the Records of Richland County, OH and (2) the Note, bearing the same date as, and secured by, the Security Instrument (collectively, "Loan Documents"), which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 

**837 S MAIN ST**
**MANSFIELD, OH 44907**

The real property described being set forth as follows:

(Legal Description Attached, if applicable, for Recording Only)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

Representations:

1. Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Loan Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.
2. Under penalty of perjury, if required by the Lender, borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses, and assets. To the extent requested by Lender, borrower provided documents that supported that information.
3. Borrower has made any and all required trial period plan payments or down payments.
4. Borrower currently has sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.
5. Borrower understands that property title may be reviewed as a precondition to the modification.

Acknowledgements and Preconditions to the Modification:

1. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement are not met.
2. Prior to the Modification Effective Date (defined as 11/01/2020), if Lender determines that any of the representations above are no longer true and correct, 1) the Loan Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Loan Documents.
3. The Loan Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

Modified Loan Terms:

1. If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Loan Documents will automatically become modified on 11/01/2020.  If Borrower has failed to make any payments that are a precondition to this modification or receipt of clear title is not received, this modification will not take effect.

   The new Maturity Date will be 10/01/2035.

   Borrower understands that in order to reach an affordable payment under this modification, the loan may have been re-

CONFIDENTIAL

PHH000196

amortized beyond the maturity date. This means that if all payments are made in accordance with the loan terms, when Borrower reaches the maturity date, there will be an outstanding amount still due.

This amount includes an interest-bearing balloon payment in the amount of $22,644.26 ("Balloon Payment") which is due when the loan reaches maturity, sold, refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $22,644.26.

BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE LOAN TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF YOU CANNOT PAY THE BALLOON PAYMENT WHEN DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR YOU MAY LOSE YOUR PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CONSIDER YOUR ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE.  THE BALLOON PAYMENT ON THE MORTGAGE LOAN YOU HAVE APPLIED FOR IS DUE 179 MONTHS FROM THE DATE YOUR MORTGAGE LOAN BEGINS.

CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT YOU OBTAIN AT THIS TIME.

2.  The current Unpaid Principal Balance is $51,720.69. The New Principal Balance of the Note will be $58,552.36 (the "New Principal Balance"). This includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan.  Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law.

3.   The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable), the "Principal Forgiveness" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $58,552.36.  Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.  Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

4.  Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 2.875%, beginning 11/01/2020. Borrower promises to make monthly payments of principal and interest of U.S. $301.17, beginning on 12/01/2020 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement.  The initial monthly escrow amount is $167.95. The yearly rate of 2.875% will remain in effect until principal and interest are paid in full.  If on 10/01/2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) The Maturity Date.

The initial monthly escrow amount is $167.95. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total

CONFIDENTIAL

REPRESENTATION OF PRINTED DOCUMENT

PHH000197

monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower's payment schedule for the modified Loan is as follows:



| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* (adjusts periodically) | Total Monthly Payment* (adjusts periodically) | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 14.92 | 2.875 | 11/01/2020 | $301.17 | $167.95 | $469.12 | 12/01/2020 | 179 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

## Additional Agreements:

1. Transfer of Property. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

2. Original Loan Document Conditions. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of  11/01/2020:

   a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:
   a. Default Under the Modification. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b. Original Loan Document Conditions. All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

CONFIDENTIAL

PHH000198

c.   Modification Does Not Constitute Release. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d.   Costs and Expenses. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

e.   Agreement to Provide Any Additional Modification Documents. Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.  Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

f.   Agreement of Use of Non-Public Information. Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower  information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's  loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

g.   Consent to Contact. Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

4.   Escrow Account. By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property: (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items."  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all

INTERNET REPRINT

CONFIDENTIAL

REPRESENTATION OF PRINTED DOCUMENT

PHH000199

purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds.  Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5.  Severability. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6.  Inclusion of Exhibits. Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

7.  Errors and Omissions. That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary.  All documents the Lender requests of Borrower under this section shall be referred to as "Documents."  Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement.  At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

8.  Final Agreement. This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender

9-814-BIZ58-0000094-001-13-000-001-000-000

CONFIDENTIAL

PHH000200

and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms.  There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9.  Additional Events of Default.  Without limiting the other events of default set forth in the Loan Documents, Borrower will be in default under this Agreement and under the Loan Documents upon the occurrence of any one or more of these events:

    a.  Any material representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

    b.  Borrower fails to make the New Monthly Payments as required by this Agreement. 

    c.  Borrower sells or conveys any interest in the Property without Lender's prior written consent.

    d.  Breach of any of the terms or provisions of this Agreement.

10.  Consequences of Default.  If Borrower defaults under this Agreement or the Loan Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Loan Documents and/or this Agreement.

11.  Mortgage Insurance. Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment.  Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

12.  Credit Reporting. Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus.  Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

13.  No Novation.  Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Loan Documents.  Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

14.  Discharged Bankruptcy. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability.  However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances.  The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder.  Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

CONFIDENTIAL

REPRESENTATION OF PRINTED DOCUMENT

PHH000201

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein.  This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

_____          _____
Date                                               ANGELA RUCKMAN

9-814-BIZ58-0000094-001-15-000-001-000-000

**CONFIDENTIAL**

PHH000202

State of _____

County of _____

On this ___ day of _____ , _____ , before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.



_____

Notary Public

My Commission Expires: _____

CONFIDENTIAL

PHH000203

# LENDER ACKNOWLEDGEMENT

### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.



PHH Mortgage Corporation

_____

Authorized Signer


_____

Date


State of _____

County of _____

On this ___ day of _____, _____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of PHH Mortgage Corporation., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.


_____

Notary Public

My Commission Expires: _____

9-814-BIZ58-0000094-001-17-000-001-000-000

CONFIDENTIAL

# EXHIBIT D

**8-814-BKO20-0000052-001-01-000-000-000-000**



ANGELA RUCKMAN
837 S MAIN ST
MANSFIELD OH 44907-2036





**NewRez**

01/14/2021          Account Number: ██████

ANGELA RUCKMAN
837 S MAIN ST
MANSFIELD, OH 44907

### DECISION ON THE REQUEST FOR MORTGAGE ASSISTANCE
### PLEASE READ CAREFULLY

| Account Information |
| --- |
| **Account Number:** ██████ |
| **Property Address:** 837 S MAIN ST MANSFIELD, OH 44907 |
| We are here to help! |
| Account Relationship Manager: Steven Siegel RMA@mortgagefamily.com Online: www.mortgagequestions.com |

Dear Customer(s),

Thanks for the request for mortgage assistance. Unfortunately, the account is no longer eligible for the loan modification offer that was sent due to the reason listed below.

- You failed to return the final modification agreement within the required timeframe.

Below, please find important information about our decision regarding mortgage assistance, with additional details on the following pages.

**The following additional documents are enclosed for information:**

- Legal Disclosures
- Additional Assistance Available
- Understanding Net Present Value

Although the account is no longer eligible for the loan modification offer, it may be eligible for a Short Sale or Deed in Lieu of foreclosure, **with both options satisfying the account.** A Short Sale is the process of listing and selling the home to a third party, even if more is owed than the property's current market value. A Deed in Lieu is the process of transferring ownership of the property to PHH Mortgage Services by executing a deed. These options allow transition out of the home while avoiding foreclosure.

**Benefits of a Short Sale or Deed in Lieu include:**

- Foreclosure can be avoided by exiting the property, even if more is owed than the property is worth.
- The account may be eligible for relocation assistance.

**NOTE:** To be reviewed for a Short Sale or Deed in Lieu of foreclosure, additional information and/or documents may be required.

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

REPRESENTATION OF PRINTED DOCUMENT

# NewRez

We are here to help! Steven Siegel has been assigned as the account relationship manager and will be the designated representative for resolution, inquiries and submission of documents.

**For any questions**, we can be reached toll free Monday through Friday 8:00am to 9:00pm ET at 800-750-2518, to speak with the assigned Relationship Manager Steven Siegel. If Steven Siegel is not available, another dedicated member of our Home Retention Department will be available to answer any questions.



Our Customer Care Center may also be contacted at 800-449-8767, Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm ET.

Sincerely,

*Loan Servicing*

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

 INTERNET REPRINT     NMLS # 2726

REPRESENTATION OF PRINTED DOCUMENT



# U̲N̲D̲E̲R̲S̲T̲A̲N̲D̲I̲N̲G̲ N̲E̲T̲ P̲R̲E̲S̲E̲N̲T̲ V̲A̲L̲U̲E̲ ("NPV")

During the application process, we calculate the Net Present Value ("NPV") of a modification. The NPV calculation requires us to input certain financial information about the accountholder's income and mortgage account, including the factors listed below. The estimated cashflow to the owner of the account is currently $0.00, whereas the estimated cashflow of the highest-value modification we could have offered is $0.00.





The NPV input values we used in this NPV evaluation are listed in the NPV Data Input Fields and Values chart in this notice.

*OCWN_STND_ALNE_DENL*

8-814-BKO20-0000052-001-04-000-000-000-000

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT        NMLS # 2726

REPRESENTATION OF PRINTED DOCUMENT

# NewRez



## NPV INPUT DATA FIELDS AND VALUES

This table includes the information we used in the NPV calculation.

**Please Note:**

Fields that are blank may not apply to the account modification evaluation.

| Input Data Fields | Explanation | Value used in NPV calculation |
|---|---|---|
| **I. Borrower Information** | | |
| 1. **Current Borrower Credit Score** | This field identifies your credit score as provided by one or more of the three national credit reporting agencies. | █ |
| 2. **Current Co-Borrower Credit Score** | If a co-borrower is listed on the mortgage, this field identifies the co-borrower's credit score as provided by one or more of the three national credit reporting agencies. | |
| 3. **Monthly Gross Income** | This field identifies the monthly gross income of all borrowers on the mortgage before any payroll deductions or taxes. | N/A |
| **II. Property Information** | | |
| 4. **Property State** | This field identifies the 2-letter state code of the property securing the mortgage for which a loan modification is being applied. | OH |
| 5. **Property Zip Code** | This field identifies the ZIP code of the property securing the mortgage for which a loan modification is being applied. | 44907 |
| 6. **Property Value** | This field identifies the estimated fair market value of the property for which a loan modification is being applied that was used for this analysis. | $106,000.00 |
| 7. **Property Valuation Type** | This field identifies the method by which the property for which a loan modification is being applied was valued (as noted in Field 6, Property Value) 1. Automated Valuation Model (AVM) 2. Exterior Broker Price Opinion (BPO) /Appraisal (as-is value) 3. Interior BPO/Appraisal (as-is value) | 1 |
| 8. **Occupancy** | This field uses codes to identify the occupancy of the property for which a modification is being applied. The servicer will use a code of 1, 3 or 4 for owner-occupied properties and will use a code of 2 for non-owner-occupied properties. | 1 |
| **III. Mortgage Information** | | |
| 9. **Data Collection Date** | This field identifies the date on which we collected the Unpaid Principal Balance and other data used in the NPV analysis. | 11/04/2020 |

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT            NMLS # 2726

8-814-BKO20-0000052-001-05-000-000-000-000



![NewRez logo]

| Input Data Fields | Explanation | Value used in NPV calculation |
|---|---|---|
| 10. **Investor Code** | This field identifies the owner of the mortgage for which a loan modification is being applied.<br>1. Fannie Mae<br>2. Freddie Mac<br>3. Owned by a private investor other than us, your servicer<br>4. Owned by us, your servicer, or an affiliated company<br>5. Ginnie Mae | 3 |
| 11. **Unpaid Principal Balance at Origination** | This field identifies the amount of the mortgage for which a modification is being applied at the time it was originated (i.e., the amount borrowed). | $83,400.00 |
| 12. **First Payment Date at Origination** | This field identifies the date the first payment on the mortgage for which a modification is being applied was due after it was originated. | 10/01/2005 |
| 13. **Product Before Modification** | This field uses codes to identify the type of mortgage held prior to the most recent application for a modification:<br>1. Adjustable Rate Mortgage (ARM) and/or Interest Only<br>2. Fixed Rate | 2 |
| 14. **Adjustable Rate Mortgage (ARM) Reset Date** | This field applies only if the type of mortgage held prior to the most recent application for a modification is an Adjustable Rate Mortgage (ARM) loan.<br><br>This field identifies the date on which the next ARM reset was due to occur, as of the Data Collection Date (Field 9). | |
| 15. **Next Adjustable Rate Mortgage (ARM) Reset Rate** | This field identifies the rate at which the mortgage was expected to change based on when the next reset date (Field 14) is scheduled to occur. Please review the mortgage documents for information on how your mortgage's rate is recalculated at its reset date.<br><br>If the reset date on the ARM loan is within 120 days of the Data Collection Date, the value in this field is the expected interest rate on the mortgage at the next reset date.<br><br>If the reset date on the ARM loan is more than 120 days from the Data Collection Date, the value in this field is the current interest rate at the time of NPV evaluation. | |

8-814-BKO20-0000052-001-06-000-000-000-000

*OCWN_STND_ALNE_DENL*



This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726

REPRESENTATION OF PRINTED DOCUMENT

# NewRez



| Input Data Fields | Explanation | Value used in NPV calculation |
|---|---|---|
| 16. **Unpaid Principal Balance Before Modification** | This field identifies the unpaid amount of principal (amount borrowed) on the mortgage for which a loan modification is being applied as of the Data Collection Date. It does not include any unpaid interest or other amounts that may be owed. | $51,720.69 |
| 17. **Remaining Term (# of Payment Months Remaining)** | This field identifies the remaining number of months left to pay under the term of the mortgage for which a modification is being applied as of the Data Collection Date. Please review the mortgage documents (including any permanent modification documentation, if previously modified) for information about the term of the mortgage. | 196 |
| 18. **Principal and Interest Payment Before Modification** | This field shows the amount of principal and interest scheduled to be paid each month as of the Data Collection Date.<br>a. If the loan had an adjustable rate scheduled to reset within 120 days, this field will reflect the principal and interest payment associated with the new interest rate.<br>b. If the loan had an adjustable rate scheduled to reset after 120 days, this field will reflect the current scheduled monthly mortgage payment and the note interest rate in effect at the time of evaluation.<br>c. If the mortgage is an Interest Only loan and is still in the interest-only period, the value in this field is the interest payment that was due each month.<br>d. If the mortgage is a negative-amortizing loan, the value in this field is the greater of:<br>a) the principal and interest payment sent on the most recent payment date; or<br>b) the minimum payment required on the loan.<br><br>If there was a prior modification trial period plan or permanent modification, the value in this field is the modified payment. | $419.48 |
| 19. **Monthly Real Estate Taxes** | This field identifies the monthly cost of the real estate taxes. If taxes are paid annually, this amount will be 1/12th of the annual cost. | $96.36 |
| 20. **Monthly Hazard and Flood Insurance** | This field identifies the monthly cost of the hazard and flood insurance coverage. If the premium is paid annually, this amount will be 1/12th of the annual cost. | $58.67 |
| 21. **Homeowners Association Dues/Fees** | This field identifies the monthly homeowner's or condominium association fee payment. If your homeowner's or condominium association fees are paid annually, this will be 1/12th of the annual cost.<br><br>If the property has no association fee payments, this field is blank. | $0.00 |
| 22. **Escrow Shortage** | This field identifies the future monthly escrow shortages, if any.<br><br>If the property has no future monthly escrow shortages, this field is | $775.07 |

8-814-BKC20-0000052-001-07-000-000-000-000

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726



# NewRez



| Input Data Fields | Explanation | Value used in NPV calculation |
|---|---|---|
| | blank. | |
| 23. **Months Past Due** | This field identifies the number of mortgage payments required to the mortgage current, as of the Data Collection Date. | ■ |
| 24. **Mortgage Insurance Coverage Percent** | This field identifies the percentage of private mortgage insurance coverage on the mortgage requested to be modified. If there is no private mortgage insurance applicable, this field is blank. | ■ |
| 25. **Capitalized UPB Amount** | This field identifies the capitalized unpaid principal balance, including all outstanding principal, accrued interest and escrow advances as of the Data Collection Date. | ■ |
| **IV. Proposed Modification Information** | | |
| The fields below describe the proposed modification that was calculated by the servicer according to the program guidelines (subject to investor restrictions) that were used in the Net Present Value (NPV) evaluation. | | |
| 26. **NPV Date** | This field identifies the initial date that the Net Present Value evaluation was conducted on the mortgage for which a modification is being applied. | 11/04/2020 |
| 27. **Modification Fees** | This field identifies the total amount of costs and fees that would have been paid by the investor (owner) of the loan, if this account is approved for a modification. It includes expenses such as notary fees, property valuation, credit report and other required fees. | $0 |
| 28. **Unpaid Principal Balance under proposed Streamline Modification (Net of Forbearance & Principal Reduction)** | This field identifies the beginning principal balance on which the applicant would have been required to pay interest if a **Streamline** modification had been received.<br><br>It is likely to be different than the current principal balance because it includes amounts owed for missed mortgage payments and unpaid expenses that are allowed to be added (capitalized) to the principal balance. Additionally, it may be reduced by proposed principal forbearance (Field 32) or proposed principal forgiveness (Field 33). | ■ |
| 29. **Interest Rate under proposed Streamline Modification** | This field identifies the starting interest rate of the proposed **Streamline** modified mortgage. This rate is fixed for at least the first five years after modification. | 2.875% |
| 30. **Amortization Term under proposed Streamline Modification** | This field identifies the number of months left to pay the proposed **Streamline** modified mortgage. | 179 |
| 31. **Principal and Interest Payment under** | This field identifies the amount of the monthly principal and interest payment on the proposed **Streamline** modified mortgage. | $301.17 |

■

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

REPRESENTATION OF PRINTED DOCUMENT

# NewRez



| Input Data Fields | Explanation | Value used in NPV calculation |
|---|---|---|
| **proposed Streamline Modification** | | |
| 32. **Principal Forbearance under proposed Streamline Modification** | This field identifies the amount of principal the loan's investor was willing to forbear on the proposed **Streamline** modified mortgage. You would still owe this amount, but would not be charged interest on it, and no payments would have been due on this amount until the loan was paid off. | $0.00 |
| 33. **Principal Forgiveness Amount under proposed Streamline Modification** | This field identifies the amount of principal the loan's investor was willing to forgive under the proposed **Streamline** modified mortgage. | $0.00 |

*8-814-BKC20-0000052-001-09-000-000-000-000*

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

REPRESENTATION OF PRINTED DOCUMENT

**What should be done if there is disagreement with the reason(s) for non-approval?**

If there is disagreement with the reason(s) for non-approval, please contact us at:

PHH Mortgage Services
Escalations Department
P.O. Box 5432
Mount Laurel, NJ 08054
Email: EscalatedCases@mortgagefamily.com

8-814-BKO20-0000052-001-10-000-000-000-000

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.



REPRESENTATION OF PRINTED DOCUMENT



## ADDITIONAL ASSISTANCE IS AVAILABLE

If financial hardship is being experienced, housing counseling may be a way to help manage finances. We recommend contacting a HUD-approved agency for assistance in keeping the home. This assistance is available at no charge.

| | | |
|---|---|---|
| HUD Approved Housing Counseling | (800) 569-4287 | www.HUD.gov |
| Homeowner's HOPE Hotline Number | (888) 995-4673 | https://995hope.org/ |
| Fannie Mae Assistance Program | (800) 232-6643 | www.knowyouroptions.com |
| Consumer Financial Protection Bureau (CFPB) | (855) 411-2372 | www.consumerfinance.gov/mortgagehelp/ |
| Freddie Mac Assistance Program | | http://myhome.freddiemac.com/ |

To submit a qualified written request, a notice of error or a request for information, the following address must be used:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

8-814-BKO20-0000052-001-11-000-000-000-000

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.



INTERNET REPRINT

NMLS # 2726

REPRESENTATION OF PRINTED DOCUMENT



## ALTERNATIVES TO FORECLOSURE

- <u>Account Refinance option</u>:  This an option to apply for a new mortgage and pay off the existing lien, if favorable terms are obtained making the current payment more affordable.

- <u>Account Modification option</u>: An account modification may change one or more terms of the original mortgage agreement. This may include a change in interest rate, account balance or term, which may lower the mortgage payment and bring the account current. Contact us for more information on available modification programs, as this option may be limited based on the non-approval reason included in this notice.

- <u>Sale of the property</u>: If there is an inability to continue paying the mortgage payment, the best option may be to find more affordable housing. As an alternative to foreclosure, it may be possible to sell the property and use the proceeds to pay off the current lien.

- <u>Short Sale</u>: If the value of the property has declined, and the property cannot be sold for an amount sufficient to pay the current lien in full, it may be possible to sell it for less than the full payoff amount to satisfy the lien.

- <u>Deed in Lieu of Foreclosure</u>: If an attempt to sell the property has been unsuccessful, it may be possible to voluntarily return the deed to satisfy the lien and avoid foreclosure.

## LEGAL DISCLOSURES

**Notice regarding Credit Discrimination:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

**Notice Regarding Bankruptcy:** Please be advised that if the account is part of an active Bankruptcy case or if the account has received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt.  If the bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If the account has received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from the accountholder(s) personally. Finally, if the account is in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, the accountholder(s) should continue to make payments in accordance with the plan.

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

8-814-BKC20-0000052-001-12-000-000-000-000

# EXHIBIT E

PHH000319

☐ 0BKO20    Shipped Date: 01/15/2021    ███████    Letter ID:BB014    G2 SIMPLEX 9X12 FLT CK 1ST CLASS HOME MOD PKGS    ANGELA RUCKMAN    837 S MAIN ST
Letter Date: 01/14/2021    MANSFIELD OH 449072036    ^

| JOB DETAILS | ACCOUNT DETAILS | MAIL TRACKING RECORDS |
| --- | --- | --- |

**OUTBOUND SUMMARY**

| VENTURE SHIPPING | USPS ENTRY DATE: | STATUS | USPS DELIVERY DATE: |
| --- | --- | --- | --- |
| 01/15/2021 09:25:00 PM | 02/04/2021 10:27:00 AM | IN PROCESS | 02/04/2021 10:27:00 AM |

**OUTBOUND DETAILS**

| VENTURE SHIPPING | USPS DATE: | STATUS | USPS LOCATION |
| --- | --- | --- | --- |
| 01/15/2021 09:25:00 PM | 02/04/2021 10:27:00 AM | IN PROCESS | CLEVELAND OH |

# EXHIBIT F



Loan Number: ███████████
Investor Loan Number: ███████████

This document was prepared by PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

# LOAN MODIFICATION AGREEMENT

Borrower (s): ANGELA RUCKMAN

<u>THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $22,644.26, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.</u>

**BALLOON PAYMENT DISCLOSURE**
THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF YOU MAKE ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

_CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE_ – LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.

The debtor, ANGELA RUCKMAN, and HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-5 through the servicer of the underlying mortgage loan agreement, PHH Mortgage Corporation, have agreed to modify the terms of said underlying mortgage loan agreement. HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-5 is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. PHH Mortgage Corporation, remains servicer for said underlying mortgage loan agreement.

This Loan Modification Agreement ("Agreement"), made this 6th day of November, 2020 ("Modification Agreement Date"), between ANGELA RUCKMAN ("Borrower") and PHH Mortgage Corporation, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 08/24/2005 and recorded in the Records of Richland County, OH and (2) the Note, bearing the same date as, and secured by, the Security Instrument (collectively, "Loan Documents"), which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at



837 S MAIN ST
MANSFIELD, OH 44907

The real property described being set forth as follows:

**(Legal Description Attached, if applicable, for Recording Only)**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

**Representations:**

1. Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Loan Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.
2. Under penalty of perjury, if required by the Lender, borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses, and assets. To the extent requested by Lender, borrower provided documents that supported that information.
3. Borrower has made any and all required trial period plan payments or down payments.
4. Borrower currently has sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.
5. Borrower understands that property title may be reviewed as a precondition to the modification.

**Acknowledgements and Preconditions to the Modification:**

1. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement are not met.
2. Prior to the Modification Effective Date (defined as 11/01/2020), if Lender determines that any of the representations above are no longer true and correct, 1) the Loan Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Loan Documents.
3. The Loan Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

**Modified Loan Terms:**

1. If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Loan Documents will automatically become modified on 11/01/2020. If Borrower has failed to make any payments that are a precondition to this modification or receipt of clear title is not received, this modification will not take effect.

   The new Maturity Date will be 10/01/2035.

   Borrower understands that in order to reach an affordable payment under this modification, the loan may have been re-

amortized beyond the maturity date. This means that if all payments are made in accordance with the loan terms, when Borrower reaches the maturity date, there will be an outstanding amount still due.

This amount includes an interest-bearing balloon payment in the amount of $22,644.26 ("Balloon Payment") which is due when the loan reaches maturity, sold, refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $22,644.26.



**BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE LOAN TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF YOU CANNOT PAY THE BALLOON PAYMENT WHEN DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR YOU MAY LOSE YOUR PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CONSIDER YOUR ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE. THE BALLOON PAYMENT ON THE MORTGAGE LOAN YOU HAVE APPLIED FOR IS DUE 179 MONTHS FROM THE DATE YOUR MORTGAGE LOAN BEGINS.**

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT YOU OBTAIN AT THIS TIME.**

2. The current Unpaid Principal Balance is $51,720.69. The New Principal Balance of the Note will be $58,552.36 (the "New Principal Balance"). This includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan. Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law.

3. The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable), the "Principal Forgiveness" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $58,552.36. Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

4. Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 2.875%, beginning 11/01/2020. Borrower promises to make monthly payments of principal and interest of U.S. $301.17, beginning on 12/01/2020 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement. The initial monthly escrow amount is $167.95. The yearly rate of 2.875% will remain in effect until principal and interest are paid in full. If on 10/01/2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

The initial monthly escrow amount is $167.95. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total



monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* (adjusts periodically) | Total Monthly Payment* (adjusts periodically) | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 14.92 | 2.875 | 11/01/2020 | $301.17 | $167.95 | $469.12 | 12/01/2020 | 179 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

## Additional Agreements:

1. **Transfer of Property.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

2. **Original Loan Document Conditions.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of 11/01/2020:

   a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:
   a. **Default Under the Modification.** All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b. **Original Loan Document Conditions.** All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

c. **Modification Does Not Constitute Release.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d. **Costs and Expenses.** All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

e. **Agreement to Provide Any Additional Modification Documents.** Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement. 

f. **Agreement of Use of Non-Public Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

g. **Consent to Contact.** Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

4. **Escrow Account.** By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all

purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law. 

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6. **Inclusion of Exhibits.** Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

7. **Errors and Omissions.** That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement. At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

8. **Final Agreement.** This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender

and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9. **Additional Events of Default.** Without limiting the other events of default set forth in the Loan Documents, Borrower will be in default under this Agreement and under the Loan Documents upon the occurrence of any one or more of these events:

   a. Any material representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

   b. Borrower fails to make the New Monthly Payments as required by this Agreement. 

   c. Borrower sells or conveys any interest in the Property without Lender's prior written consent.

   d. Breach of any of the terms or provisions of this Agreement.

10. **Consequences of Default.** If Borrower defaults under this Agreement or the Loan Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Loan Documents and/or this Agreement.

11. **Mortgage Insurance.** Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

12. **Credit Reporting.** Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

13. **No Novation.** Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Loan Documents. Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

14. **Discharged Bankruptcy.** Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

# BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein.  This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

_j - 12 - 2021_
Date

_Angela Ruckman_
ANGELA RUCKMAN

9-814-BIZ58-0000094-001-25-000-001-000-000

State of _Ohio_

County of _Richland_

On this 12 day of _January 2021_ , before me, the undersigned, a Notary Public in and for said county and state, personally appeared _Angela Ruckman_ personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.



JILL MONTGOMERY
Notary Public
State of Ohio
My Comm. Expires
December 7, 2024

_Jill Montgomery_
Notary Public

My Commission Expires: _Dec 7, 2024_

# LENDER ACKNOWLEDGEMENT

### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein.  This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.



PHH Mortgage Corporation

_____

Authorized Signer

_____

Date

State of _____

County of _____

On this __ day of _____, ____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of PHH Mortgage Corporation., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: _____

# EXHIBIT G

PHH000266



Loan Number: ■■■5853
Investor Loan Number: ■■■■0858

This document was prepared by PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

# LOAN MODIFICATION AGREEMENT

Borrower (s):  ANGELA RUCKMAN

<u>THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS
$22,644.26, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE
TERMS OF THIS MORTGAGE.</u>

**BALLOON PAYMENT DISCLOSURE**
**THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF YOU MAKE ALL THE
SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON
THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE
PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER
AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER
UNDER THE TERMS OF THE SECURITY INSTRUMENT).**

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* **– LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS
LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON
PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE
BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL
PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME.  SUCH INTEREST RATE MAY BE
HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND
EXPENSES FOR THE ARRANGING OF THE NEW LOAN.  IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY
PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH
FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.**

PHH000267

The debtor, ANGELA RUCKMAN, and HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-5 through the servicer of the underlying mortgage loan agreement, PHH Mortgage Corporation, have agreed to modify the terms of said underlying mortgage loan agreement. HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-5 is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement.  PHH Mortgage Corporation, remains servicer for said underlying mortgage loan agreement.



This Loan Modification Agreement ("Agreement"), made this 6th day of November, 2020 ("Modification Agreement Date"), between ANGELA RUCKMAN ("Borrower") and PHH Mortgage Corporation, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 08/24/2005 and recorded in the Records of Richland County, OH and (2) the Note, bearing the same date as, and secured by, the Security Instrument (collectively, "Loan Documents"), which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

837 S MAIN ST
MANSFIELD, OH 44907

The real property described being set forth as follows:

**(Legal Description Attached, if applicable, for Recording Only)**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

### Representations:

1. Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Loan Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.
2. Under penalty of perjury, if required by the Lender, borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses, and assets. To the extent requested by Lender, borrower provided documents that supported that information.
3. Borrower has made any and all required trial period plan payments or down payments.
4. Borrower currently has sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.
5. Borrower understands that property title may be reviewed as a precondition to the modification.

### Acknowledgements and Preconditions to the Modification:

1. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement are not met.
2. Prior to the Modification Effective Date (defined as 11/01/2020), if Lender determines that any of the representations above are no longer true and correct, 1) the Loan Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Loan Documents.
3. The Loan Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

### Modified Loan Terms:

1. If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Loan Documents will automatically become modified on 11/01/2020.  If Borrower has failed to make any payments that are a precondition to this modification or receipt of clear title is not received, this modification will not take effect.

   The new Maturity Date will be 10/01/2035.

   Borrower understands that in order to reach an affordable payment under this modification, the loan may have been re-

PHH000268

amortized beyond the maturity date. This means that if all payments are made in accordance with the loan terms, when Borrower reaches the maturity date, there will be an outstanding amount still due.

This amount includes an interest-bearing balloon payment in the amount of $22,644.26 ("Balloon Payment") which is due when the loan reaches maturity, sold, refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $22,644.26.

**BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE LOAN TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF YOU CANNOT PAY THE BALLOON PAYMENT WHEN DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR YOU MAY LOSE YOUR PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CONSIDER YOUR ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE.  THE BALLOON PAYMENT ON THE MORTGAGE LOAN YOU HAVE APPLIED FOR IS DUE 179 MONTHS FROM THE DATE YOUR MORTGAGE LOAN BEGINS.**

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT YOU OBTAIN AT THIS TIME.**

2.  The current Unpaid Principal Balance is $51,720.69. The New Principal Balance of the Note will be $58,552.36 (the "New Principal Balance"). This includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan.  Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law.

3.  The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable), the "Principal Forgiveness" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $58,552.36. Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.  Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

4.  Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 2.875%, beginning 11/01/2020. Borrower promises to make monthly payments of principal and interest of U.S. $301.17, beginning on 12/01/2020 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement.  The initial monthly escrow amount is $167.95. The yearly rate of 2.875% will remain in effect until principal and interest are paid in full.  If on 10/01/2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

The initial monthly escrow amount is $167.95. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total

PHH000269

monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* (adjusts periodically) | Total Monthly Payment* (adjusts periodically) | Payment Begins On | Number of Monthly Payments |
|-------|------|------|------|------|------|------|------|
| 1 - 14.92 | 2.875 | 11/01/2020 | $301.17 | $167.95 | $469.12 | 12/01/2020 | 179 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

## Additional Agreements:

1. **Transfer of Property.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

2. **Original Loan Document Conditions.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of 11/01/2020:

   a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:
   a. **Default Under the Modification.** All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b. **Original Loan Document Conditions.** All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.



c.  **Modification Does Not Constitute Release.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d.  **Costs and Expenses.** All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

e.  **Agreement to Provide Any Additional Modification Documents.** Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

f.  **Agreement of Use of Non-Public Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

g.  **Consent to Contact.** Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

4.  **Escrow Account.** By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all

PHH000271

purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law. 

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6. **Inclusion of Exhibits.** Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

7. **Errors and Omissions.** That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement. At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

8. **Final Agreement.** This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender

PHH000272

and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9. **Additional Events of Default.** Without limiting the other events of default set forth in the Loan Documents, Borrower will be in default under this Agreement and under the Loan Documents upon the occurrence of any one or more of these events:

   a. Any material representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

   b. Borrower fails to make the New Monthly Payments as required by this Agreement.

   c. Borrower sells or conveys any interest in the Property without Lender's prior written consent.

   d. Breach of any of the terms or provisions of this Agreement.



10. **Consequences of Default.** If Borrower defaults under this Agreement or the Loan Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Loan Documents and/or this Agreement.

11. **Mortgage Insurance.** Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

12. **Credit Reporting.** Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

13. **No Novation.** Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Loan Documents. Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

14. **Discharged Bankruptcy.** Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

9-814-BIZ58-000009A-001-24-000-001-000-000

PHH000273

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

1-12-2021
_____
Date

Angela Ruckman
_____
ANGELA RUCKMAN

9-814-BIZ58-0000094-001-25-000-001-000-000

PHH000274

State of _Ohio_____

County of _Richland_____

On this 12 day of _January 2021_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _Angela Ruckman_____personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.



JILL MONTGOMERY
Notary Public
State of Ohio
My Comm. Expires
December 7, 2024

_Jill Montgomery_

Notary Public

My Commission Expires: _Dec 7, 2024_____

## LENDER ACKNOWLEDGEMENT

### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein.  This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

PHH Mortgage Corporation

_Nadia S Cordero_

Authorized Signer      **Nadia S. Cordero**

**SEP 17 2021**

_____

Date

State of _____

County of _____

On this __ day of _____, ____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of PHH Mortgage Corporation., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____

Notary Public

My Commission Expires: _____

9-814-BIZSB-000009&-001-27-000-001-000-000