## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION (AKRON)

| | |
|---|---|
| ANGELA L. RUCKMAN, | Case No. 5:21-cv-00923-BMB |
| Plaintiff, | Judge Bridget Meehan Brennan |
| v. | |
| PHH MORTGAGE CORPORATION d.b.a. PHH MORTGAGE SERVICING, *et al.*, | **ANGELA RUCKMAN'S BRIEF IN OPPOSITION TO PHH MORTGAGE CORPORATION'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Plaintiff Angela L. Ruckman, by and through counsel, hereby submits her brief in opposition to Defendant PHH Mortgage Corporation's Motion for Summary Judgment (Dkt. No. 38). For the reasons set forth in the attached memorandum of law, Defendant's motion must be denied.

Respectfully submitted,

*/s/ Daniel M. Solar*
Daniel M. Solar (0085632)
Marc E. Dann (0039425)
Michael A. Smith Jr. (0097147)
Dann Law
15000 Madison Avenue
Lakewood, Ohio 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Angela L. Ruckman*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.    STATEMENT OF FACTS ................................................................................... 2

    A.   The Parties Reached A Loan Modification Agreement ................................... 2

    B.   Ms. Ruckman Timely Executed And Returned the Permanent Loan
        Modification  Agreement ................................................................................. 2

    C.   PHH Receives, and Fails to Apply or Return Ms. Ruckman's Timely Payments .......... 4

II.    STANDARD OF REVIEW ................................................................................ 10

III.    LAW AND ARGUMENT ................................................................................. 10

    A.   Ms. Ruckman Never Rejected the Loan Modification Agreement ............................... 12

    B.   Ms. Ruckman Fully Performed Under the Agreement By Making Payments In
        Accordance With the Agreement ................................................................... 13

    C.   Plaintiff Has Sustained Damages Under RESPA and the RMLA .............................. 17

IV.    CONCLUSION ................................................................................................. 18

CERTIFICATE OF SERVICE ........................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) .......................................................... 11

*Baynes v. Cleland,* 799 F.3d 600 (6th Cir. 2015) ......................................................... 11

*Cameron v. Ocwen Loan Servicing, LLC*, S.D.Ohio No. 2:18-cv-428,
    2020 U.S. Dist. LEXIS 14595 (Jan. 29, 2020)......................................................... 18

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................... 11

*Edwards v. Thomas H. Lurie & Associates*, Franklin App. No 94APE01-21,
    1995 WL 12126........................................................................................................ 14

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d. 344 (6th Cir. 1998) ................ 11

*Littlejohn v. Parrish*, 1st Dist., 2005-Ohio-4850 ......................................................... 15

*Wiley v. United States,* 20 F.3d 222 (6th Cir. 1994) ..................................................... 11

**Statutes, Regulations and Rules**

12 C.F.R. § 1024.41(c)(1)(ii) ..................................................................................... 12, 13

12 C.F.R. § 1024.41(g) .............................................................................................. 12, 17

12 C.F.R. § 1024.41(g)(1)........................................................................................... 12, 13

12 C.F.R. § 1024.41(h) ................................................................................................... 13

**MEMORANDUM OF LAW**

Plaintiff Angela Ruckman reached an agreement with the servicer and owner of her mortgage loan to modify her loan—an agreement that would bring the loan current and resolve a pending foreclosure case in state court. Although Ms. Ruckman had made each and every payment in full, on time, and according to the express wire transfer instructions incorporated in the parties' loan modification agreement, the loan servicer, Defendant PHH failed to properly apply her payments and pressed forward with the foreclosure suit by filing a motion for summary judgment.

In its motion for summary judgment, PHH argues that it was justified in "rejecting" Ms. Ruckman's payments and moving forward with foreclosure because it did not receive the executed loan modification on time, and because payments were allegedly not made under the agreement. These arguments fail for three reasons.  First, there is a genuine issue of material fact as to whether the documents were returned by the December 31 deadline—Ms. Ruckman testified that she signed and returned the documents by that date, and this testimony is supported by her actions in continuing to make payments and her contemporaneous emails with PHH's counsel expressing frustration that PHH had lost her documents yet again.  Second, the loan modification agreement itself contained an "errors and omissions" provision which called for lost or missing documents to be reexecuted and resubmitted upon request.  When PHH's counsel informed Ms. Ruckman that PHH claimed the documents had not been received and requested that she reexecute and resubmit the documents, she did so the same day.  Third, in its representations to the foreclosure court and its written correspondence with Ms. Ruckman following the date of PHH's "denial letter," PHH maintained that a loan modification agreement had been reached and it agreed to honor the agreement provided that Ms. Ruckman made her payments under the agreement, which she did.

After having agreed to honor the loan modification agreement, PHH could not later rely on its prior denial letter to justify its refusal to perform under the agreement.

PHH's motion for summary judgment must be denied because genuine issues of material fact remain and Defendant is not entitled to judgment as a matter of law.

## I.     STATEMENT OF FACTS

### A.     The Parties Reached A Loan Modification Agreement

Following her payment of three months of trial modification payments, Ms. Ruckman was offered a permanent loan modification agreement by her loan servicer in November 2020.  After several weeks of negotiation, she decided to accept the offer.  The terms of the loan modification included new modified monthly mortgage payments of $469.12 per month beginning in December 2020, and PHH was to modify the loan effective November 1, 2020. (Compl. at ¶¶ 36-39.) Ms. Ruckman requested additional time to sign and return the loan modification agreement, and PHH agreed to the request, on the condition that Ms. Ruckman made her first payment no later than December 1, 2020. (Compl. at ¶ 40.) Ms. Ruckman made her first payment on November 30, 2020.

### B.     Ms. Ruckman Timely Executed And Returned the Permanent Loan Modification Agreement

There is a genuine issue of fact concerning the date the loan modification agreement was executed and returned to PHH.  Ms. Ruckman testified that she notarized and returned the permanent modification agreement in December 2021, before the December 31 deadline. (Ruckman Dep. at 19:14-21:22.)   Additionally, Ms. Ruckman promptly reexecuted and resubmitted the loan modification at the request of Plaintiff's counsel after being informed that

PHH claimed it did not receive the executed modification papers in December.  (Ruckman Dep. 25-28.)  PHH claims that it did not receive the agreement until January 2022.

The loan modification agreement contains an "errors and omissions" provision, providing as follows:

> 7. Errors and Omissions. That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's requests to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement."

(Loan modification agreement at ¶ 7 (emphasis added).).  When PHH's counsel emailed Ms. Ruckman to inform her that PHH claimed it never received the loan modification documents. Ms. Ruckman expressed frustration that PHH claimed it did not receive the permanent modification documents she had sent in December, and offered to sign and send the documents again:

> . . . If PHH doesn't have my paperwork and your office doesn't have it, where could it have gone this time? This is what took place before. Everyone claimed no paperwork was received and could not explain to myself or the credit counselor what happened.
>
> At this point, and with court fast approaching, I'm kinda stuck. Payment is still $578 which currently is high with current circumstances, but this house is the only thing I have connecting me to my deceased daughter.
>
> Will you be sending updated documents for me to sign?

(Bennett Aff. Ex. C at 2.)  When Ms. Bennett expressed confusion about whether Ms. Ruckman wanted to apply for a new loan modification, Ms. Ruckman promptly clarified that she was referring to the permanent loan modification with an effective date of November 1, and she noted that she had already made both the December and January payments. (*Id.*) Four minutes later, Ms. Bennett asked Ms. Ruckman to notarize and resubmit the original loan documents to PHH and

3

confirmed that November first would still be the "correct effective date" for the loan modification. (*Id.*) The notarization page on the loan modification documents reflect that Ms. Ruckman notarized the loan modification the same date she received the email instructions from Ms. Bennett.

Thereafter, at a January 29, 2021 hearing before the foreclosure court magistrate, PHH's counsel, Clunk, acknowledged that its client had received the executed loan modification agreement, and that it had also received payments for December and January under that agreement. (Ruckman Dep. 29-30.)

### C. PHH Receives, and Fails to Apply or Return Ms. Ruckman's Timely Payments

The loan modification agreement included specific payment instructions by PHH. (Compl. Exs. B, C.) Per the modification agreement, PHH directed Ms. Ruckman to make payments via wire transfer utilizing its unique receiver code and account reference number. (*Id.*) Following these instructions to the letter, Ms. Ruckman made each of her monthly payments via wire transfer through Western Union Quick Collect Payment program at the Mansfield Kroger. (Compl. at ¶¶ 41, 43, Ex. 2 (hereinafter "Ruckman Aff.").) In accordance with the terms of the loan modification agreement, Ms. Ruckman made her December payment on November 30, 2020, her January payment on January 4, 2021, her February payment on February 11, 2021, her March payment on February 22, 2021, and her April payment on March 30, 2021. (Ruckman Aff. ¶¶ 13, 16, 19, 20, 39.) After her February 11, 2021 payment was rejected by PHH, Ms. Ruckman resubmitted that payment on March 22, 2021 following PHH's remittance instructions, and provided Clunk with notice of the resubmission of payment and payment receipt. (Ruckman Aff. ¶ 34, Exs. L and M.).

PHH failed to implement the loan modification agreement and properly apply Ms. Ruckman's payments under the agreement. PHH's attorney Clunk pressed Ms. Ruckman to make additional payments and falsely maintained that its client had not received Ms. Ruckman's payments, despite Ms. Ruckman's wire transfer receipts.

For example, on March 3, 2021, after Ms. Ruckman had already submitted her February and March payments to PHH via wire transfer, she received an email from Diane Bennett, Loss Mitigation Department Coordinator for Clunk, stating as follows:

> The reversal has not yet been approved by management, our client is working to get it reversed; however, the last payment our client received from you was for the January payment, you will need to make the February and March payments immediately.

(Ruckman Aff. ¶ 21, Ex. G.)

On March 4, 2021, Ms. Ruckman received a notice that PHH had rejected her February 11, 2021 payment. (Ruckman Aff. ¶ 22, Ex. H.)  Ms. Ruckman promptly responded with an email notifying Ms. Bennett that her February 11 payment had been rejected:

> I've made all payments. Jan. Feb. March. However i was notified by krogers today. That PHH refused the dated Feb 11th which would have been for the month of March payment. Can you explain what the issue is and what to do?

(Ruckman Aff. ¶ 23, Ex. G.)

On March 8, 2021, Ms. Bennett responded to Ms. Ruckman's email and confirmed that the loan modification was approved; however she also claimed that her client had not received the two payments for February and March that Ms. Ruckman had made the previous month:

> I received the below email from you this morning. Our client has advised that you are due for the February and March payments, for a total of $873.93. If you want the modification to go through, that payment needs to be made immediately. **Our client's modification team has confirmed they will accept that amount and then reverse the denial.**

> Also, I read down through all my notes, I have emails from you that you sent the December and January pmts, there is nothing mentioning that the February payment was sent (that was at the end of January).
>
> If you have proof that you made the February payment and that it was accepted, please provide the proof and I will forward to our client.
>
> Please let me know if you will be sending the payment today.

(Ruckman Aff. ¶ 24, Ex. G (emphasis added).) Ms. Ruckman responded to Ms. Bennett's email the same day with receipts documenting her February and March payments:

> I made both payments for February and march. Payment made on February 11th was refused and i was notified by krogers. See attached for receipts and pic of email krogers gave me.

(Ruckman Aff. ¶ 25, Ex. G.)

Even though Ms. Bennett had previously acknowledged that Ms. Ruckman had already received the January 2021 payment, she responded to Ms. Ruckman's email by asserting that her February payment had been applied towards the January payment rather than February:

> Based on the receipts you sent, looks like you are due for Feb and March to me.
>
> You have a receipt purchase for $470 on 2/11 – which would be your January pmt (can you produce a separate receipt for Jan?)
>
> You have a notification on 2/25 that the 2/11 pmt can't be processed
>
> You have a receipt for $471.50 purchased on 2/22 – this would make the January pmt – making you due for Feb and March.
>
> I didn't see any extra receipts in your file indicating that a Jan pmt was made other than the receipt above that you purchased on 2/22 almost one month behind.

(Ruckman Aff. ¶ 26, Ex. G.) The same day, on March 8, 2021, Ms. Ruckman responded to Ms. Bennett with an email and receipts documenting her payments to PHH on January 4, 2021, February 11, 2021, February 22, 2021, and the notice that PHH had refused her February 11, 2021 payment. (Ruckman Aff. ¶ 27, Ex. I.)  Ms. Ruckman followed up again on March 10, 2021, and

was informed by Ms. Bennett that her receipts were being sent to PHH for review. (Ruckman Aff.

¶¶ 28-49, Ex. J.)

On March 16, 2021, the foreclosure court issued a dismissal order acknowledging that the

parties had informed the court that a settlement agreement had been reached, and ordering the case

dismissed on April 16, 2021 unless litigation pushed forward by that date.

On March 19, 2021, Ms. Bennett sent an email to Ms. Ruckman asserting that PHH could

not confirm receipt of Ms. Ruckman's February payments:

> Our client cannot confirm receipt of payments from you. The following amount is
> due before the end of March or the modification is denied.
>
> We have still not received $873.93. Mod team has given time to receive funds till
> end of march, if funds not received, mod will be denied again and then we will not
> be able to reverse mod denial.
>
> End of March means we should receive funds at least by 25th, so that mod team
> can modify loan before month end, otherwise they will also ask for the payment of
> April. The receipts that you provided do not show that payment was sent to and
> received by PHH.
>
> It appears you may need to go back to Kroger to obtain your funds.

(Ruckman Aff. ¶ 30, Ex. K.)

Ms. Ruckman responded with three emails over the next two days noting that she had made

her payments according to the instructions provided by PHH and that she already had provided

proof of those payments. In the first email, sent on March 19, 2021, Ms. Ruckman stated:

> I would like to know where my money is! I have receipts. I paid per their
> instructions western union. No clue how long it will take to file an investigation
> with western union to track my money to show it was paid. Where do i come up
> with extra money in the mean time?

(Ruckman Aff. ¶ 31, Ex. K). Later in the day on March 19, 2021, Ms. Ruckman sent a second

email to Ms. Bennett: "What was the last payment received from western union?" (Ruckman Aff.

¶ 32, Ex. K). The following day, Ms. Ruckman sent a third email to Ms. Bennett: "The receipts

show the biller as PHH Mortgage. The account # is on each receipt. The amount due, how was the calculated?" (Ruckman Aff. ¶ 33, Ex. K).

On March 22, 2021, after receiving no further response from Clunk, having no indication that her February 22, 2021 payment had been rejected, and having been given no other instructions on how to address the payment that PHH had wrongfully rejected on February 11, 2021, Ms. Ruckman resubmitted the February 11, 2021 payment via wire transfer using the same remittance instructions. (Ruckman Aff. ¶ 34, Exs. L, M).

Ms. Ruckman promptly informed Ms. Bennett that she had resubmitted the payment and that her account was now current:

> I went to Krogers yesterday. Spoke with Jackie who has been the contact person since the denial of the 2/11/21 payment. She is the one who contacted me and gave me the copy of the email. That payment was resubmitted yesterday. Per her instructions, the recipient needs to use the reference number to track payment and deposits. If a payment is not accepted an email will be sent instructing Krogers to contact the sender. Then the money is refunded. Or the money can be resubmitted to the recipient again. Krogers is notified within 7-11 business days if there is an issue.
>
> I have used the same payment for all payments since the modification process started. There has only been 1 issue, and that was 2/11/21 payment which would have been Februarys payment. Why it was denied or refused? I do not have an answer, PHH would have to answer that question. Being no other payments have been refused or declined, including the 2/22/21 payment which was the payment for March. There should be only 1 payment issue and thats the 2/11/21 payment declined by PHH. That payment was resubmitted yesterday. Receipt is attached. This would make my account current. All receipts show the biller as PHH. Contains the account number and a reference number.

(Ruckman Aff. ¶ 34.)

Ms. Bennett replied with an email stating that she would forward Ms. Ruckman's receipt of her resubmission of the February 11, 2021 payment to PHH, but she also stated erroneously that she expected the modification to be denied because "signed documents and payments were all due in November 2020."

I will send the receipt to PHH, but if PHH doesn't have the funds in hand by 3/25/21, I expect the modification to be denied. After all, signed documents and payments were all due in November 2020.

(Ruckman Aff. ¶ 34, Ex. L.) Ms. Ruckman immediately responded to Ms. Bennett's false statements about her payments in an email response:

> Per krogers, phh needs to use the reference numbers on the receipts to track payments received. Maybe it was posted to another account? You claim 2 payments were missing, but the only denied payment was the February payment paid on 2/11. That was resubmitted yesterday. No other payments have been returned which means all other payments were received and accepted by PHH. I have made every payment. All paperwork was signed. Krogers can not track a payment that was sent after it was received. The other alleged missing payment has not been applied to my or was applied to another account. I have my receipts showing I paid. I dont know what more I can do.

(Ruckman Aff. ¶ 36, Ex. L (emphasis added).) Ms. Bennett responded by suggesting that Ms. Ruckman contact her client directly to request a payment history. (Ruckman Aff. ¶ 37, Ex. L.)

On March 23, 2021, Ms. Bennett sent Ms. Ruckman an email that she claimed was a payment breakdown of trial payments, but it did not account for Ms. Ruckman's February and March 2021 payments:

> Angela, below is the breakdown of your payments received.
>
> Trial plan pmts were $469.15
> 09/02/20 $470 received - $469.15 September's pmt = .85
> 10/26/20 $1,000 received +.85 = $1,000.85 - $469.15 for October's pmt = $531.70
> $531.70 - $469.15 for November's pmt = $62.55
> 12/03/20 $470 received + $62.55 = $532.55 - $469.12 (perm mod pmt for Dec) = $63.43
> 01/05/21 $470 received + $63.43 = $533.43 - $469.12 (perm mod pmt for Jan) = $64.31
>
> Loan is due for the Feb and March pmts as of 3/23/21
>
> The payment that was being sent today, 3/23/21 has not yet shown as received or applied to your account and will likely be rejected because it is not the full amount of the Feb & Mar pmts combined.
> $469.12 Feb + $469.12 Mar = $938.24 - $64.31 = $873.93.

(Ruckman Aff. ¶ 38, Ex. N.) On March 30, 2021, Ms. Ruckman made her April monthly payment of $470 to PHH. (Ruckman Aff. ¶ 39, Ex. O.)

On March 29, 2021, PHH filed a motion for summary judgment, and Ms. Ruckman, who was previously unrepresented, had no choice but to hire counsel and expend legal fees to defend against the motion for summary judgment and to enforce the settlement agreement. (Ruckman Aff. ¶ 51.)

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reviewing a motion for summary judgment, the Court must view all facts and reasonable inferences from those facts in the light most favorable to the non-moving party.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). Summary judgment must be denied if genuine issues of material fact remain for trial. *Id.*  If a reasonable jury could return a verdict for the nonmoving party, summary judgment for the moving party is inappropriate. *Baynes v. Cleland,* 799 F.3d 600, 606 (6th Cir. 2015).  The movant bears the initial burden of showing that there is no material issue in dispute. *Id.* at 607 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact is deemed material only if it might affect the outcome of the case under the governing substantive law.  *Id.* (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994), in turn citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 247-48 (1986)).

## III.    LAW AND ARGUMENT

PHH's motion for summary judgment is premised on the argument that PHH was justified in pressing forward and seeking a foreclosure judgment because Ms. Ruckman "rejected" the loan

modification agreement or failed to perform by making timely payments under the agreement. But these arguments lack merit.

Under 12 C.F.R. § 1024.41(g), a servicer is prohibited from moving for a foreclosure judgment or sale except for the following circumstances:

> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).

PHH attempts to argue that all three exceptions apply.  But given that the evidence establishes that Ms. Ruckman timely remitted the executed loan modification agreement and the necessary payments, but that PHH failed to properly account for her payments under the same, there is a genuine issue of material fact as to whether any of these circumstances occurred in this case, and therefore whether PHH was justified in pressing forward with the foreclosure case.

Moreover, as to the denial letter allegedly sent on January 14, 2021, Ms. Ruckman has testified and averred that she did not receive any such correspondence. (Ruckman Aff. at ¶ 18; Ruckman Dep. at 28:16-29:20).  Further, this correspondence would not be sufficient to constitute a denial letter sufficient to satisfy the condition in 12 C.F.R. § 1024.41(g)(1). To satisfy 12 C.F.R. § 1024.41(g)(1), a denial letter must have been sent pursuant to 12 C.F.R. § 1024.41(c)(1)(ii). That is, this correspondence must have been sent within thirty (30) days of receiving a complete loss mitigation application and advise as to whether a borrower was denied *eligibility* for any available loss mitigation options. In the instant matter, Ms. Ruckman had already been *approved* for a loss

mitigation option that she had accepted. Therefore the January 14, 2021 correspondence could not have been sent pursuant to 12 C.F.R. § 1024.41(c)(1)(ii) and could not have satisfied the condition set forth in 12 C.F.R. § 1024.41(g)(1). Further, PHH's own records and PHH's corporate representative's testimony confirm that the January 14, 2021 correspondence does not contain the necessary "appeal" language required per  12 C.F.R. § 1024.41(h) which would be necessary to be a denial letter pursuant  to 12 C.F.R. § 1024.41(c)(1)(ii). (Handville Dep. at 46:13-49-8).

### A.    Ms. Ruckman Never Rejected the Loan Modification Agreement

PHH's argument that Ms. Ruckman "rejected" the loan modification agreement is contradicted by evidence and testimony of Ms. Ruckman and lacks merit.

First, Ms. Ruckman has testified that she signed and returned the loan modification agreement by the December 31, 2020 deadline.  (Ruckman Dep. at 19.)  The testimony is also corroborated by the fact that Ms. Ruckman continued to make her monthly payments under the agreement, including her December and January payments, which were received and applied by PHH.

Second, the loan modification agreement had an "errors and omissions" provision that addressed lost or missing documents.  The provision required Ms. Ruckman to reexecute and resubmit any missing documents upon request by PHH.  On January 12, when PHH's counsel informed Ms. Ruckman that PHH claimed it had not received the documents, Ms. Ruckman promptly agreed to notarize and return the documents again, and she did so the same day, after expressing her frustration that her documents had once again been lost by PHH.  (Bennet Aff., Ex. A.)  Viewing this evidence in the light most favorable to Ms. Ruckman, the nonmoving party, a reasonable trier of fact could conclude that Ms. Ruckman never "rejected" the loan modification agreement.

Third, PHH's argument is contradicted by its representations to the foreclosure court and Ms. Ruckman. It is undisputed that on January 29, 2021, PHH's attorney acknowledged to the foreclosure court and Ms. Ruckman that the loan modification agreement had been reached, and on March 8, 2021, PHH's attorney memorialized in writing the parties' agreement that the loan would be modified provided that all payments were made. As discussed in further detail below, Ms. Ruckman did, in fact, make each and every payment per PHH's written payment instructions, and therefore she fully performed under the parties' agreement.

PHH's argument that its "rejection" of payments was justified because the permanent modification had been denied on January 14, 2021 also lacks merit. It is well settled that the parol evidence rule bars a party from introducing prior agreements or negotiations to contradict a written agreement. *Edwards v. Thomas H. Lurie & Associates*, Franklin App. No 94APE01-21, 1995 WL 12126 ("If the parties have stated the terms of their contract in the form of a complete written integration, it cannot be varied or contradicted by proof of antecedent negotiations and agreements.") As a matter of law, PHH cannot rely on its purported January 14, 2021 denial letter to justify its rejection of Ms. Ruckman's payments in February and March, when PHH had later agreed in writing and in representations to the court that the signed agreement had been received.

**B.      Ms. Ruckman Fully Performed Under the Agreement By Making Payments In  Accordance With the Agreement**

PHH's argument that Ms. Ruckman failed to perform under the loan modification agreement lacks merit. Although PHH previously claimed that it did not receive Ms. Ruckman's payments for various months between January and March, Ms. Ruckman supplied detailed wire transfer receipts demonstrating her submission of each and every payment. Ms. Ruckman was current on her monthly payments under the permanent loan modification agreement at the time

PHH moved for a foreclosure judgment. There was no justification for Plaintiff to "reject" her payments.

There is also no evidence that PHH ever actually "rejected" or returned any payment. Ms. Ruckman's payments were each sent via wire transfer utilizing PHH's express written instructions and the same method which had been effective for all prior payments. But Ms. Ruckman only received notice that a single payment was "rejected" and that notice came from Kroger rather than PHH or Clunk. Moreover, Ms. Ruckman did not receive a refund of the payment, but rather resubmitted the payment to PHH and she notified PHH's attorney that she had done so.

Ms. Ruckman did not receive any notice that the other three payments were rejected, nor did she receive a "return" of her money or any other refund. In fact, Ms. Ruckman notified PHH's counsel that Kroger had informed her that PHH needed to take specific steps to refund Ms. Ruckman, yet PHH and Clunk failed to take those steps. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Littlejohn v. Parrish*, 1st Dist., 2005-Ohio-4850, ¶ 19. PHH's refusal to accept payments because a modification was denied, and denial of a modification because payments were refused is a breach of the duty of good faith and fair dealing.

PHH attempts to rely upon Ms. Bennett's instructions to remit $873.93 by March 25, 2021 and Ms. Ruckman's purported failure to remit such funds necessary to "reverse the denial of the modification", but this is not evidence of Ms. Ruckman's failure to perform. In fact, PHH acknowledges that Ms. Ruckman had sent in sufficient funds in excess of $873.93 in the month of March, 2021, but PHH failed to process those payments. (Handville Dep. at 75:25-77:25).

In sum, viewing the evidence in the light most favorable to the nonmoving party, a reasonable trier of fact could conclude that Ms. Ruckman had fully performed under the loan

14

modification agreement by making payments under the express payment instructions of that agreement.  A reasonable trier of fact could also conclude that PHH's failure to properly apply the payments, and its failure to return the payments to Ms. Ruckman was a material breach of that agreement. Because PHH was not justified in moving forward with its foreclosure case, it is not entitled to summary judgment on Ms. Ruckman's RESPA claims.

**B.  Ms. Ruckman Fully Performed Under the Agreement By Making Payments In Accordance With the Agreement**

**1.  Supplemental Jurisdiction Should Not Be Denied on the RMLA Claim**

As PHH is not entitled to summary judgment as to Ms. Ruckman's RESPA claims, there is no basis for this Court to use its discretion to deny supplemental jurisdiction of Ms. Ruckman's state-law claim under the RMLA.

**2.  PHH Has Violated the RMLA.**

Ms. Ruckman brings two claims under the amended RMLA pursuant to R.C. 1322.40 and R.C. 1322.45. Both sections apply to a registrant, licensee, and person required to be registered or licensed under Chapter 1322. R.C. 1322.40(A) and R.C. 1322.45(A). A "registrant" is defined as "any person that has been issued a certificate of registration" under Chapter 1322. R.C. 1322.01(GG). A "licensee" is defined as "any individual who has been issued a mortgage loan originator license" under Chapter 1322. R.C. 1322.01(T). Current R.C. 1322.07(A) provides, in part:

> No person, on the person's own behalf or on behalf of any other person, shall act as a mortgage lender, mortgage servicer, or mortgage broker without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a mortgage lender, mortgage servicer, or mortgage broker in this state.

The RMLA was amended to protect mortgage borrowers from wrongful conduct by mortgage lenders and mortgage servicers. PHH is the servicer of the Loan and, as a mortgage

15

servicer, is subject to the RMLA because it is required to be registered under Chapter 1322 and has been issued certificates of registration. (D.E. 1, ¶ 99).

Mortgage servicers are prohibited from engaging in "conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(C). Mortgage servicers must: (1) Act with reasonable skill, care, and diligence; (2) Act with good faith and fair dealing in any transaction, practice, or course of business in connection with the brokering originating of any residential mortgage loan; and (3) Comply with the duties imposed by other statutes and common law. R.C. 1322.45(A). PHH does not contest that Plaintiffs suffered damages as a result of PHH's violations of the RMLA. (D.E. 13, ¶¶ 47-49, 116, 120).

PHH wishes to use the everyday meaning of the terms of the statute. (D.E. 38, at 12-13). Merriam-Webster's Legal Dictionary defines "improper" as "not in accord with correct procedure." The term "dishonest" is defined as "characterized by lack of truth, honesty, or trustworthiness" with synonyms of "unfair" and "deceptive". The term "reasonable" is defined as "being in accordance with reason, fairness, duty, or prudence." The term "good faith" is defined as "honesty or lawfulness of purpose." The term "fair dealing" is defined as "the transacting of business in a manner characterized by candor and full disclosure and free of self-dealing."

PHH is required to comply with RESPA, and, as discussed, *supra*, PHH failed to do so. PHH's "dual-tracking" of the Loan by moving for summary judgment despite Ms. Ruckman's performance under and in furtherance of the loan modification agreement, is an action "not in accord with correct procedure"—12 C.F.R. § 1024.41(g)—not with "honesty or lawfulness of purpose" and certainly "unfair" and "deceptive" as it unnecessarily allowed the foreclosure matter to proceed and caused, *inter alia*, Ms. Ruckman to incur legal fees and expenses in further defense of the foreclosure. Failing to provide proper responses to the RFIs and NOEs, and failing to correct

errors asserted by the NOEs are certainly "not in accord with correct procedure" and not "honesty or lawfulness of purpose."

### C. Plaintiff Has Sustained Damages Under RESPA and the RMLA.

Ms. Ruckman has suffered pecuniary damages as a direct result of PHH's actions in violation of RESPA and the RMLA. Specifically, as a result of such violations, Clunk was directed, permitted, or empowered to file a motion for summary judgment, and Ms. Ruckman, who was previously unrepresented, had no choice but to hire counsel and expend legal fees to defend against the motion for summary judgment and to enforce the settlement agreement. (Ruckman Aff. ¶ 51; Ruckman Dep. at 44:11-45:21). These fees are damages incurred as a direct and proximate result of PHH's violations of RESPA and the RMLA and are distinct and separate from any fees incurred in the filing of and prosecution of the instant matter.

Furthermore, Ms. Ruckman testified that she suffered from out of pocket, pecuniary damages such as lost wages from an estimated forty (40) hours of missed at work as a result of PHH's violations (Ruckman Dep. at 44:11-44:16, 45:23-47:1).

Ms. Ruckman additionally testified as to her emotional distress damages suffered, expressly testifying that the actions of PHH at issue in the instant matter exacerbated existing medical conditions. (Ruckman Depo. at 47:2-50:2, 52:6-52:13). In a similar case alleging emotional distress damages under RESPA, the Southern District of Ohio found that a plaintiff's testimony as to their emotional distress was sufficient to create a genuine issue of material fact so as to survive summary judgment. *Cameron v. Ocwen Loan Servicing, LLC*, S.D.Ohio No. 2:18-cv-428, 2020 U.S. Dist. LEXIS 14595 at *3 (Jan. 29, 2020). Moreover, despite claiming that Ms. Ruckman has failed to provide any expert testimony related to any emotional damages, Defendant

has failed to proffer any authority establishing that such would be necessary to recover emotional damages.

In sum, Ms. Ruckman has provided evidence of her damages stemming from PHH's violations of RESPA and the RMLA and a genuine issue of material fact remains as to the same.

## IV.   CONCLUSION

Defendant PHH's motion for summary judgment must be denied because Defendant is not entitled to judgment as a matter of law and genuine issues of material fact preclude summary judgment.

Respectfully submitted,

*/s/ Daniel M. Solar*
Daniel M. Solar (0085632)
Marc E. Dann (0039425)
Michael A. Smith Jr. (0097147)
Dann Law
15000 Madison Avenue
Lakewood, Ohio 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Angela L. Ruckman*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 28, 2022, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


*/s/ Daniel M. Solar*
Daniel M. Solar (0085632)
*Counsel for Plaintiff Angela L. Ruckman*

19