IN THE COURT OF COMMON PLEAS
RICHLAND COUNTY, OHIO

| | |
|---|---|
| HSBC BANK USA N.A. AS TRUSTEE FOR OWNIT MORTGAGE | Case No. 2020 CV 0169 |
| Plaintiff, | Judge Brent N. Robinson |
| v. | |
| ANGELA L. RUCKMAN, *et al*, | **Affidavit of Angela Ruckman** |
| Defendant. | |

I, Angela Ruckman, being first duly sworn as if upon oath, do swear and affirm as follows:

1.   I am not a minor, I have personal knowledge of the facts in this affidavit, and I am competent to testify to these facts.

2.   I am a Defendant and homeowner in this foreclosure case.

3.   I participated in the court's mediation program and reached a settlement settlement agreement with the Plaintiff.

4.   In July I submitted a complete loan modification application to PHH through their counsel.  This was my first loan modification application to this loan servicer.

5.   On August 13, 2020, I received a notice dated August 5, 2020 stating that my loan modification application was complete as of July 31, 2020, and under review.

6.   After reviewing my loan modification, PHH offered me a trial loan modification.

7.   Per the agreement, after I made three trial modification payments in September, October, and November, Plaintiff, through its servicer PHH Mortgage Services Inc., offered me a permanent loan modification.

8.   The loan modification agreement provided that the loan would be modified effective November 1, 2020, and that my new modified monthly payment would be

$469.12.  A true and correct copy of the loan modification agreement is attached hereto as Exhibit A.

9.  I did not receive the written permanent modification agreement from PHH until late November, 2020.

10.  I requested, and received, an extension of time to accept the loan modification agreement.

11.  I was informed that if I made the first payment by December 1, 2020, then I could have until the end of December to return the paperwork.

12.  The loan modification agreement included specific payment remittance instructions for payments via electronic money order.  The instructions included a unique receiver code for PHH with Western Union Quick Collect Payments, and instructions to include my account reference number on each payment.  A true and correct copy of the payment instructions is attached hereto as Exhibit B.

13.  On November 30, 2020, I made a payment of $470 to Plaintiff's servicer PHH via  money order according to the servicer's payment instructions.  A true and correct copy of the November 30, 2020 money order receipt is attached hereto as Exhibit C.

14.  I notarized and mailed the loan agreement paperwork to Plaintiff's loan servicer to the address designated by Plaintiff's loan servicer in December 2020.

15.  I continued to make monthly payments according to the agreement.

16.  On January 4, 2021, I made my January monthly payment of $470 to Plaintiff's servicer PHH via a Western Union Quick Collect Payment money order at my local Kroger, according to the servicer's payment instructions.  A true and correct copy of the January 4, 2020 money order receipt is attached hereto as Exhibit D.

17.  On January 29, 2021, at a hearing with Magistrate Andrea Clark, Plaintiff acknowledged that it had received the loan modification documents and also my December and January payments.

18.  By February 2021, I had not yet received the signed loan modification from PHH, but I also had not received any notice that the loan modification had been denied.

19.  On February 11, 2021, although I had not yet received any assurance that

PHH had implemented the loan modification agreement, I made my February monthly payment of $470 to Plaintiff's servicer PHH via money order according to the servicer's payment instructions. A true and correct copy of the February 11, 2021 money order receipt is attached hereto as Exhibit E.

20.     On February 22, 2021, I made my March monthly payment of $470 to Plaintiff's servicer PHH via money order according to the servicer's payment instructions. A true and correct copy of the February 22, 2021 money order receipt is attached hereto as Exhibit F.

21.     On March 3, 2021, I received an email from Diane Bennett, Loss Mitigation Department Coordinator for Plaintiff's attorney, Clunk Hoose Co. LPA, stating as follows:

> The reversal has not yet been approved by management, our client is working to get it reversed; however, the last payment our client received from you was for the January payment, you will need to make the February and March payments immediately.

A true and correct copy of my email correspondence is attached hereto as Exhibit G.

22.     On March 4, 2021, I received a notice dated February 25, 2021 that PHH had rejected my February 11, 2021 payment. A true and correct copy of the notice is attached hereto as Exhibit H.

23.     On March 6, 2021, I sent an email in response to Ms. Bennett informing her that I had made all the payments, but that I had just learned PHH had rejected at least one payment:

> Ive made all payments. Jan. Feb. March. However i was notified by krogers today. That PHH refused the dated Feb 11th which would have been for the month of March payment. Can you explain what the issue is and what to do?

*See* Exhibit G.

24.     On March 8, 2021, Ms. Bennett responded to my email and confirmed that the loan modification was approved; however she also claimed that her client had not received the two payments for February and March that I had made the previous month:

> I received the below email from you this morning. Our client has advised that

3

you are due for the February and March payments, for a total of $873.93. If you want the modification to go through, that payment needs to be made immediately. **Our client's modification team has confirmed they will accept that amount and then reverse the denial.**

Also, I read down through all my notes, I have emails from you that you sent the December and January pmts, there is nothing mentioning that the February payment was sent (that was at the end of January).

If you have proof that you made the February payment and that it was accepted, please provide the proof and I will forward to our client.

Please let me know if you will be sending the payment today.

*Id.* (emphasis added).

25.     I responded to Ms. Bennett's email the same day with receipts showing my February and March payments had already been made:

I made both payments for February and march. Payment made on February 11th was refused and i was notified by krogers. See attached for receipts and pic of email krogers gave me.

*Id.*

26.     Even though Ms. Bennett had previously acknowledged that her client had already received the January 2021 payment, she responded to my email by asserting that the February payment had been applied towards the January payment rather than February:

Based on the receipts you sent, looks like you are due for Feb and March to me.

You have a receipt purchase for $470 on 2/11 – which would be your January pmt (can you produce a separate receipt for Jan?)

You have a notification on 2/25 that the 2/11 pmt can't be processed

You have a receipt for $471.50 purchased on 2/22 – this would make the January pmt – making you due for Feb and March.

I didn't see any extra receipts in your file indicating that a Jan pmt was made other than the receipt above that you purchased on 2/22 almost one month behind.

4

*Id.*

27.     The same day, on March 8, 2021 I responded to Ms. Bennett with an email and receipts documenting my payments to PHH on January 4, 2021, February 11, 2021, February 22, 2021, and the notice that PHH had refused my February 11, 2021 payment.  A true and correct copy of my March 8, 2021 email is attached hereto as Exhibit I.

28.     On March 10, 2021, I emailed Ms. Bennett to request an update on my loan payments:

> Has there been any further updates and any tracking as to where my payments where deposited? Did you receive the January receipt?

A true and correct copy of my March 10, 2021 email is attached hereto as Exhibit J.

29. Ms. Bennett responded the same day with an email stating: "Your receipts were received and sent to PHH for review." *Id.*

30.     Nine days later, on March 19, 2021, Ms. Bennett sent me an email claiming that PHH did not receive my February payments:

> Our client cannot confirm receipt of payments from you. The following amount is due before the end of March or the modification is denied.
>
> We have still not received $873.93. Mod team has given time to receive funds till end of march, if funds not received, mod will be denied again and then we will not be able to reverse mod denial.
>
> End of March means we should receive funds at least by 25th, so that mod team can modify loan before month end, otherwise they will also ask for the payment of April.  The receipts that you provided do not show that payment was sent to and received by PHH.
>
> It appears you may need to go back to Kroger to obtain your funds.

A true and correct copy of my March 19, 2021 email is attached hereto as Exhibit K.

31.     On March 19, 2021, I responded to Ms. Bennett via email:

> I would like to know where my money is! I have receipts. I paid per their instructions western union. No clue how long it will take to file an investigation with western union to track my money to show it was paid. Where do i come

up with extra money in the mean time?

*Id.*

32.     Later in the day on March 19, 2021, I sent a second email to Ms. Bennett: "What was the last payment received from western union?" *Id.*

33.     On March 20, 2021, I sent a third email to Ms. Bennett:  "The receipts show the biller as PHH Mortgage. The account # is on each receipt. The amount due, how was the calculated?" *Id.*

34.     On March 22, 2021, I sent a fourth email to Ms. Bennett, informing her that I had resubmitted the February 11, 2021 payment that PHH had rejected, and that my account was therefore current:

> I went to Krogers yesterday. Spoke with Jackie who has been the contact person since the denial of the 2/11/21 payment. She is the one who contacted me and gave me the copy of the email. That payment was resubmitted yesterday. Per her instructions, the recipient needs to use the reference number to track payment and deposits. If a payment is not accepted an email will be sent instructing Krogers to contact the sender. Then the money is refunded. Or the money can be resubmitted to the recipient again. Krogers is notified within 7-11 business days if there is an issue.
>
> **I have used the same payment for all payments since the modification process started. There has only been 1 issue, and that was 2/11/21 payment which would have been Februarys payment. Why it was denied or refused? I do not have an answer, PHH would have to answer that question. Being no other payments have been refused or declined, including the 2/22/21 payment which was the payment for March. There should be only 1 payment issue and thats the 2/11/21 payment declined by PHH. That payment was resubmitted yesterday. Receipt is attached. This would make my account current. All receipts show the biller as PHH. Contains the account number and a reference number.**

A true and correct copy of my March 22, 2021 email is attached hereto as Exhibit L (emphasis added).  A true and correct copy of my payment resubmission receipt is attached hereto as Exhibit M.

35.     Ms. Bennett replied with an email stating that she would forward my receipt of my resubmission of the February 11, 2021 payment to PHH, but she also stated erroneously that she expected the modification to be denied because "signed

documents and payments were all due in November 2020."

> I will send the receipt to PHH, but if PHH doesn't have the funds in hand by 3/25/21, I expect the modification to be denied. After all, signed documents and payments were all due in November 2020.

Exhibit L.

36.    I responded to Ms. Bennett's email by addressing her false statements about my payments:

> Per krogers, phh needs to use the reference numbers on the receipts to track payments received. Maybe it was posted to another account? **You claim 2 payments were missing, but the only denied payment was the February payment paid on 2/11. That was resubmitted yesterday. No other payments have been returned which means all other payments were received and accepted by PHH. I have made every payment. All paperwork was signed. Krogers can not track a payment that was sent after it was received. The other alleged missing payment has not been applied to my or was applied to another account. I have my receipts showing I paid. I dont know what more I can do.**

*Id.* (emphasis added).

37.    Ms. Bennett responded by telling me to request a payment history directly from her client:

> Please call PHH and request a payment history if you believe all payments have been made, that way you can see what payments came in and how they were applied.

*Id.*

38.    On March 23, 2021, Ms. Bennett sent me an email that she claimed was a payment breakdown for my trial payments, but it did not account for my February and March 2021 payments:

> Angela, below is the breakdown of your payments received.
>
> Trial plan pmts were $469.15
>
> 09/02/20 $470 received - $469.15 September's pmt = .85
>
> 10/26/20 $1,000 received +.85 = $1,000.85 - $469.15 for October's pmt =

$531.70

$531.70 - $469.15 for November's pmt = $62.55

12/03/20 $470 received + $62.55 = $532.55 - $469.12 (perm mod pmt for Dec) = $63.43

01/05/21 $470 received + $63.43 = $533.43 - $469.12 (perm mod pmt for Jan) = $64.31

Loan is due for the Feb an March pmts as of 3/23/21

The payment that was being sent today, 3/23/21 has not yet shown as received or applied to your account and will likely be rejected because it is not the full amount of the Feb & Mar pmts combined.

$469.12 Feb + $469.12 Mar = $938.24 - $64.31 = $873.93.

A true and correct copy of the March 23, 2021 email is attached hereto as Exhibit N.

39.     On March 30, 2021, I made my April monthly payment of $470 to Plaintiff's servicer PHH via money order according to the servicer's payment instructions. A true and correct copy of the March 30 2021 payment receipt is attached hereto as Exhibit O.

40.     I made each and every payment to Plaintiff via money order per the written remittance instructions provided by its servicer, PHH.

41.     I have never received any notice from Plaintiff not to use the payment instructions that were previously provided, or changing those payment instructions.

42.     I made each and every payment as instructed via wire transfer.

43.     I only received notice that a single payment, the February 11, 2021 payment, was rejected by the recipient, PHH. I resubmitted the February 11, 2021 payment on March 22, and have not received any notification that the resubmitted payment was rejected.

44.     Neither Plaintiff, its counsel, nor its loan servicer have ever provided me written notice that the permanent loan modification was denied, or the reason for the denial.

45.     I have fully performed under the loan modification agreement. I have submitted the signed modification agreement and I have made all monthly payments under the agreement in full, and on time.

46.     Plaintiff has failed to fulfill its requirements under the loan modification agreement.

47.     Plaintiff has failed to implement the loan modification agreement, and it has improperly applied my monthly payments towards the unmodified loan balance.

48.     Plaintiff's loan servicer PHH wrongfully rejected the February 11, 2021 payment I made per the remittance instructions it provided as part of the loan modification agreement.

49.     Plaintiff's law firm has misrepresented the amount due on the loan under the loan modification agreement in its communications with me and with the Court.

50.     On March 30, 2021, Plaintiff filed a motion for summary judgment in this foreclosure action, even though I had fully performed under the loan modification agreement.

51.     As a consequence of Plaintiff's breach of the loan modification agreement, and the misrepresentations of Plaintiff's counsel, it has been necessary for me to hire a lawyer to enforce the settlement agreement and save my home from foreclosure.

_Angela Ruckman_
Angela Ruckman

Sworn to and subscribed before me by Angela Ruckman, April 20, 2021.

[seal]

AMBER HICKMAN
Notary Public
State of Ohio
My Comm. Expires
December 9, 2024

_Amber Hickman_
Notary Public
State of Ohio

9

# EXHIBIT A



11/06/2020

837 S MAIN ST

Respond to this offer no later than:

# 11/24/2020

ANGELA RUCKMAN

MANSFIELD, OH 44907 **Account Information** Account Number:

APPROVAL FOR PERMANENT MODIFICATION
PLEASE READ CAREFULLY

1. To accept the modification, the following must be
done:
a. The Modification Agreement must be signed and

Dear ANGELA RUCKMAN:

Congratulations! The above referenced account is
approved for a modification. This letter will explain the
next steps necessary to accept the modification offer.

**Property Address:**
837 S MAIN ST
MANSFIELD, OH 44907 We are here to help!

Below is important information about our decision
regarding mortgage assistance, with additional details
on the following pages. However, do not forget time is of
the essence to accept this modification as this offer will
expire if we do not receive a response by 11/24/2020 .

The Account Relationship Manager:
Vanessa George
RMA@mortgagefamily.com Online:
www.mortgagequestions.com

What needs to be done:

b. All pages of the signed copies should be returned to us in the enclosed, prepaid envelope by 11/24/2020

What will we do:
1. The account is approved for a Mortgage Modification with monthly payments in the amount of $469.12. The offer
   details are enclosed. All materials should be carefully read.
2. If the Modification Agreement has notary provisions at the end, the enclosed Modification should only be signed in
   the presence of a notary public and other witnesses (if applicable). All documents must be executed and the
   signatures must be exactly as the names are typed. Please retain one copy and return the other original
   Modification Agreement.

The following additional documents are enclosed:

Summary of the Modification
Additional Assistance Available
Legal Disclosures

Instructions for Making the Payment
Modification Agreement

Vanessa George has been assigned as the Relationship Manager and will be the designated representative for resolution,
inquiries and submission of documents.

CWN_PLS_FNL This communication is from a debt collector attempting to collect a debt; any information
obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through
bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on

the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 1 NMLS # 2726



For any questions, we can be reached Monday through Friday 8:00am to 9:00pm ET at 800-750-2518, to speak with the assigned Relationship Manager, Vanessa George. If Vanessa George is not available, another dedicated member of our Home Retention Department will be available to answer any questions.

Our Customer Care Center is also available, toll free at 800-449-8767, Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm ET to answer any inquiries.

Sincerely,

Loan Servicing

OCWN_PLS_FNL This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required

by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 2 NMLS # 2726



## SUMMARY OF THE MORTGAGE MODIFICATION OFFER

FIRST MODIFIED PAYMENT DUE DATE: The first modified monthly payment will begin on 12/01/2020. The modified interest rate is 2.875% and will be fixed for the remaining term of the mortgage account. NEW MODIFIED PAYMENT: The modified monthly mortgage payment amount is as follows:

> Modified Monthly Payment
> Principal and Interest $301.17
> Escrow* $167.95
> Total Modified Monthly Payment $469.12

*The escrow payment may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts, or other escrow expenses. Therefore, the total monthly payment may change accordingly. We will send a notification if there are any adjustments made to the total monthly payment.

NEW PRINCIPAL BALANCE: Any past due amounts as of the modification effective date, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid to a third party on behalf of the above referenced account, will be added to the mortgage account balance.

ESCROW ACCOUNT: The terms of the Modification Agreement require the servicer to set aside a portion of the new monthly payment in an escrow account for payment of the property taxes, insurance premiums and other required fees. Any prior waiver of escrows by the lender of this account is no longer in effect. PHH Mortgage Services will draw on this account to pay real estate taxes and insurance premiums as they come due. Please note the escrow payment amount will adjust if the taxes, insurance premiums and/or assessment amounts change, so the amount of the monthly payment PHH Mortgage Services must place in escrow will also adjust as permitted by law. This means the monthly payment may change. The initial monthly escrow payment will be included in the loan payment noted in the enclosed Agreement; there is no need to remit this amount separately.

NO FEES: There are no fees under the Modification Program.

AGREEMENT: The account holder(s) must sign and return the Modification Agreement to us in the enclosed, pre-paid envelope by the due date which is 11/24/2020 : If the Modification Agreement has notary provisions at the end, the enclosed Loan Modification Agreement should not be signed unless in the presence of a notary and other witnesses (if applicable). All of the documents must be executed and the signatures must be exactly as the names are typed. One copy should be retained for personal records and all other original Modification Agreements should be returned.

OCWN_PLS_FNL This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be

This document was prepared by PHH Mortgage Corporation

After Recording Return To:
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data]

## LOAN MODIFICATION AGREEMENT

Borrower (s): ANGELA RUCKMAN

<u>THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE
UPON MATURITY IS $22,644.26, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS
MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.</u>

### BALLOON PAYMENT DISCLOSURE
THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF
YOU MAKE ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT
THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS
AGREEMENT, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING
PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS
OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER
UNDER THE TERMS OF THE SECURITY INSTRUMENT).

CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE – LOAN SERVICER HAS NO OBLIGATION
TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. If YOU DO NOT
HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO
OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING
ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE
CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY
BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY
COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF
YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE
THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN
DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.

Page 1
The debtor, ANGELA RUCKMAN, and HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust,
Mortgage Loan Asset-Backed Certificates, Series 2005-5 through the servicer of the underlying mortgage loan
agreement, PHH Mortgage Corporation, have agreed to modify the terms of said underlying mortgage loan agreement.
HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed
Certificates, Series 2005-5 is the owner of the loan and retains all rights to collect payments as per the underlying
mortgage loan agreement. PHH Mortgage Corporation, remains servicer for said underlying mortgage loan agreement.

This Loan Modification Agreement ("Agreement"), made this 6th day of November, 2020 ("Modification Agreement Date"),
between ANGELA RUCKMAN ("Borrower") and PHH Mortgage Corporation, Lender/Servicer or Agent for Lender/Servicer
("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated
08/24/2005 and recorded in the Records of Richland County, OH and (2) the Note, bearing the same date as, and secured
by, the Security Instrument (collectively, "Loan Documents"), which covers the real and personal property described in the
Security Instrument and defined therein as the "Property", located at

837 S MAIN ST

The real property described being set forth as follows:

(Legal Description Attached, if applicable, for Recording Only)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

Representations:

1. Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Loan Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.
2. Under penalty of perjury, if required by the Lender, borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses, and assets. To the extent requested by Lender, borrower provided documents that supported that information.
3. Borrower has made any and all required trial period plan payments or down payments.
4. Borrower currently has sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.
5. Borrower understands that property title may be reviewed as a precondition to the

modification. Acknowledgements and Preconditions to the Modification:

1. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement are not met.
2. Prior to the Modification Effective Date (defined as 11/01/2020), if Lender determines that any of the representations above are no longer true and correct, 1) the Loan Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Loan Documents.
3. The Loan Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

Modified Loan Terms:

1. If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Loan Documents will automatically become modified on 11/01/2020. If Borrower has failed to make any payments that are a precondition to this modification or receipt of clear title is not received, this modification will not take effect.

The new Maturity Date will be 10/01/2035.

Borrower understands that in order to reach an affordable payment under this modification, the loan may have been re-

Page 2

amortized beyond the maturity date. This means that if all payments are made in accordance with the loan terms, when Borrower reaches the maturity date, there will be an outstanding amount still due.

This amount includes an interest-bearing balloon payment in the amount of $22,644.26 ("Balloon Payment") which is due when the loan reaches maturity, sold, refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $22,644.26.

BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE LOAN TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF YOU CANNOT PAY THE BALLOON PAYMENT WHEN DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR YOU MAY LOSE YOUR PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CONSIDER YOUR ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE. THE BALLOON PAYMENT ON THE MORTGAGE LOAN YOU HAVE APPLIED FOR IS

CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT YOU OBTAIN AT THIS TIME.

2. The current Unpaid Principal Balance is $51,720.69. The New Principal Balance of the Note will be $58,552.36 (the "New Principal Balance"). This includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan. Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law.

3. The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable), the "Principal Forgiveness" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $58,552.36. Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

4. Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 2.875%, beginning 11/01/2020. Borrower promises to make monthly payments of principal and interest of U.S. $301.17, beginning on 12/01/2020 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement. The initial monthly escrow amount is $167.95. The yearly rate of 2.875% will remain in effect until principal and interest are paid in full. If on 10/01/2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

The initial monthly escrow amount is $167.95. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total

Page 3

monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower's payment schedule for the modified Loan is as follows:

| Years Interest Change Date Rate (%) Interest Rate | Monthly Principal Interest | Date Payment Amount and Estimated Monthly | Escrow Payment Amount* (adjusts | periodically) Total Monthly Payment* | (adjusts periodically) Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 1 - 14.92 2.875 | 11/01/2020 | $301.17 | $167.95 | $469.12 | 12/01/2020 | 179 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property

accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Additional Agreements:

1. Transfer of Property. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

2. Original Loan Document Conditions. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of 11/01/2020:

    a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:
    a. Default Under the Modification. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    b. Original Loan Document Conditions. All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

Page 4

    c. Modification Does Not Constitute Release. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    d. Costs and Expenses. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

    e. Agreement to Provide Any Additional Modification Documents. Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's

option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

f. Agreement of Use of Non-Public Information. Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

g. Consent to Contact. Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

4. Escrow Account. By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all

Page 5

purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the

with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. Severability. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6. Inclusion of Exhibits. Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

7. Errors and Omissions. That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement. At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

8. Final Agreement. This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender

Page 6

and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9. Additional Events of Default. Without limiting the other events of default set forth in the Loan Documents, Borrower

these events:

  a. Any material representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

  b. Borrower fails to make the New Monthly Payments as required by this Agreement.

  c. Borrower sells or conveys any interest in the Property without Lender's prior written

  consent. d. Breach of any of the terms or provisions of this Agreement.

10. Consequences of Default. If Borrower defaults under this Agreement or the Loan Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Loan Documents and/or this Agreement.

11. Mortgage Insurance. Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

12. Credit Reporting. Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

13. No Novation. Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Loan Documents. Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

14. Discharged Bankruptcy. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

Page 7
## BORROWER ACKNOWLEDGEMENT

IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained

herein. This Agreement and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

Case 5:21-cv-00023-RWS-JBB Document 52-1 Filed 04/20/22 Page 21 of 70

All individuals on the mortgage, note and the property title must sign this Agreement.

_____  _____
Date ANGELA RUCKMAN

State of _____

County of _____

On this ___ day of _____ , _____ , before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: _____

## LENDER ACKNOWLEDGEMENT

(For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

PHH Mortgage Corporation

_____

Authorized Signer

_____

Date

State of _____

County of _____

On this ___ day of _____, _____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of PHH Mortgage Corporation., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____

# EXHIBIT B



## PAYMENT REMITTANCE INFORMATION

PLEASE DON'T FORGET:
1. All checks should be payable to PHH Mortgage Services.
2. Always include the account number with the payment.

Money Order, Personal Check, or Certified Check

Send To: PHH Mortgage Services
1 Mortgage Way SV22
Mt Laurel, NJ 08054

Reference: PHH Mortgage Account #

Money Order, Personal Check, or Certified Check

Send To: PHH Mortgage Services
1 Mortgage Way SV22
Mt Laurel, NJ 08054

Reference: PHH Mortgage Account #

Receiver Code: 7440
Payable to: PHH Mortgage
City: Mt Laurel
State: New Jersey
Reference: PHH Mortgage Account #

Agent Locator: (800) 926-9400
By WUQC: Western Union Quick Collect
Code City: PHHUS
State: NJ
Reference: PHH Mortgage Account #

OCWN_PLS_FNL This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 1 NMLS # 2726

# EXHIBIT C



FRESH
FOR
EVERYONE.

1240 PARK AVENUE WEST
419 528 1860
Your cashier was RACHEL
MR      CFP PAYMENTS      NP    470.00
MR      CFP FEE           NP      1.50
        TAX                       0.00
   **** BALANCE                 471.50
US DEBIT Purchase
************9872 - C
REF#:   000300    TOTAL: 471.50
PURCHASE: 471.50   CASHBACK: 0.00
AID: A0000000980840
TC: 932559DB3DA2AEFA
VERIFIED BY PIN
        DEBIT                  471.50
        CHANGE                   0.00
TOTAL NUMBER OF ITEMS SOLD =        0
11/30/20 04:51pm 518 31 114 449

THANK YOU FOR SHOPPING KROGER !
Now Hiring - Apply Today!
jobs.kroger.com
www.kroger.com

---

CheckFreePay

Store 518
1240 Park Ave W
Mansfield, OHIO 44906

CheckFreePay
Terminal ID:              40000273
Date:                    11/30/2020
Time:                   04:51:49 PM
Trace-Nr.:                  234869
Biller:                PHH Mortgage
Amount:                    470.00
Tender Type:                 CASH
Fee:                         1.50
Total:                     471.50

ACT#:
Reference Number:      0H0503:6463:42
CFP Terminal ID:            0H0503

Payment will be delivered no later than
12/01/20.

Keep your bill stub and receipt until
the payment has been completed as
instructed. The bill stub and receipt
must be presented for any inquiry or
change to the payment.

Payment Receipt Number: 3354300421

tecting your privacy is very
ant to us. That is why we want
ar and transparent about why
information, the information
how we use that
completing this
agree that this
but i data        lated
recin per          ormation
subjec of i         ction
https://mat          the
financia ey .       er, is
ny at
um, i privacy-policy

# EXHIBIT D

**CheckFreePay**



---

Store 836
1500 Lexington Ave
Mansfield, ⋯ 44907

---

CheckFreePay
Terminal ID:          40000761
Date:                 01/04/2021
Time:                 05:20:07 PM
Trace-Nr.:            830635
Biller:               PHH Mortgage
Amount:               470.00
Tender Type:          CASH
Fee:                  1.50
Total:                471.50

---

ACT#:                 ▮▮▮▮▮▮
Reference Number:     OHO49r, 0105:100
CFP Terminal ID:      OHO496

Payment will be delivered no later than
01/05/21.

Keep your bill stub and receipt until
the payment has been completed as
instructed. The bill stub and receipt
must be presented for any inquiry or
change in the payment.

Payment Receipt Number: 0044301001

Protecting your privacy is very
important to us. That is why we want
to be clear and transparent about why
we collect information, the informati⋯
we collect and how ⋯ ⋯ ⋯ ⋯
information. By com⋯
transaction, you ⋯
⋯ansaction and ⋯l
⋯ including ⋯
⋯ as part of
⋯ https inform⋯
⋯ inⁱⁿthe more
⋯er Pol,
⋯ ᵍger.com,
⋯ /ducts.

---

Kroger

1500 LEXING⋯ ⋯ AVE
419-756
Your c⋯                    ⋯OQUIE
KROGER PLU⋯               ******5473
MR    CFᵖ⋯          NP    470.00
MR    CF⋯            ⁴¹      1.50
SC    MS  ⁱ⁰ ⋯   ⋯ ⋯LL      0.10-
      TAX                    0.00
**** BALANCE                471.40
US DEBIT Purchase
***********9872 ~   C
REF#:    000000     TOTAL: 471.40
PURCHASE: 471.40    CASHBACK: 0.00
AID: A000000030840
TC: FE9EFE⋯   5C0C7
VERIFIED BY
      DEBIT                 471.40
      CHANGE                  0.00
TOTAL NUMBER OF ITEMS SOLD =     0
KROGER SAVINGS            $   0.10
TOTAL COUPONS            $   0.10
TOTAL SAVINGS (0 %)     $   0.10
01/04/21 05:19pm 836 31 138 350
*********************************
Remaining Dec Fuel Points: 186
*********************************
Fuel Points Earned Today: 0
Total January Fuel Points: 37

With Our Low Prices, You Saved
**$0.10**

Annual Card Savings $29.90
Now Hiring - Apply Today!
jobs.kroger.com
www.kroger.com

# EXHIBIT E

## CheckFreePay

Store 836
1500 Lexington Ave.
Mansfield, OHIO 44907

CheckFreePay
| | |
|---|---|
| Terminal ID: | 40000761 |
| Date: | 02/11/2021 |
| Time: | 02:56:02 PM |
| Trace-Nr.: | 490721 |
| Biller: | PHH Mortgage |
| Amount: | 470.00 |
| Tender Type: | CASH |
| Fee: | 1.50 |
| Total: | 471.50 |

ACT#:
Reference Number: CH0496:6143:12
CFP Terminal ID: OH0496

Payment will be delivered no later than 02/12/21.

Keep your bill stub and receipt until the payment has been completed as instructed. The bill stub and receipt must be presented for any inquiry or change to the payment.

Payment Receipt Number: 0424300121

Protecting your privacy is very important to us. That is why we want to be clear and transparent about why we collect information, the information we collect and how we use that information. By completing this transaction, you agree that this transaction and all data associated with it, including personal information collected as part of the transaction, but excluding information about the recipient of the money transfer, is subject to Kroger Policy at https://www.kroger.com/1/privacy-policy/financial-products.



FRESH FOR EVERYONE.

1500 LEXINGTON AVE
419-756-6049
Your cashier was JACQUIE
KROGER PLUS CUSTOMER      ******5473
MR    CFP PAYMENTS       NP   470.00
MR    CFP FEE            NP     1.50
SC    MS .10 OFF PAY FEE        0.10-
BO    eCon 014XWALO
BO    eCon Winter Fuel           1
      TAX                     0.00
  **** BALANCE             471.40
DEBIT Purchase
************4926 - SWIPED
REF#: 000000    TOTAL: 471.40
PURCHASE: 471.40    CASHBACK: 0.00
      DEBIT                  471.40
      CHANGE                  0.00
TOTAL NUMBER OF ITEMS SOLD =    0
KROGER SAVINGS           $   0.10
TOTAL COUPONS            $   0.10
TOTAL SAVINGS (0 %)      $   0.10
02/11/21 02:56pm 836 31 59 350
*****************************
   TELL US HOW WE ARE DOING!
   EARN 50 BONUS FUEL POINTS!
   Go to www.krogerfeedback.com
Date: 02/11/21
Time: 02:56pm
Entry ID: 016-441-59-836-31-90
   No purchase necessary
   See website for offical rules
*****************************
Remaining Jan Fuel Points: 574
*****************************
Fuel Points Earned Today: 0
Total February Fuel Points: 267
With Our Low-Prices, You Saved
       $0.10
Annual Card Savings $153.2'
Now Hiring - Apply Today
      jobs.kroger.com
      www.kroger.com

# EXHIBIT F

CheckFreePay

--------------------------------------
Store 836
1500 Lexington Ave
Mansfield, OHIO 44907

--------------------------------------
CheckFreePay
Terminal ID:                   40000761
Date:                        02/22/2021
Time:                       05:59:55 PM
Trace-Nr.:                       883533
Biller:                    PHH Mortgage
Amount:                          470.00
Tender Type:                       CASH
Fee:                               1.50
Total:                           471.50
--------------------------------------

ACT#:
Reference Number:       0H0496:6154:22
CFP Terminal ID:                0H0496

Payment will be delivered no later than
02/23/21.

Keep your bill stub and receipt until
the payment has been completed as
instructed. The bill stub and receipt
must be presented for any inquiry or
change to the payment.

Payment Receipt Number: 0534300221

Protecting your privacy is very
important to us. That is why we want
to be clear and transparent about why
we collect information, the information
we collect and how we use that
information. By completing this
transaction, you agree that this
transaction and all data associated
with it, including personal information
collected as part of the transaction,
but excluding information about the
recipient of the money transfer, is
subject to Kroger Policy at
https://www.kroger.com/i/privacy-policy
/financial-products.



1500 LEXINGTON r.
419-756-6049
Your cashier was TAYLOR
...GER PLUS CUSTOMER      ********5473
MK    CFP PAYMENTS       NP   470.00
MK    CFP FEE            NP     1.50
SC    HS .10 OFF PAY FEE        0.10-
      TAX                       0.00
   **** BALANCE              471.40
DEBIT Purchase
*********4926 - SWIPED
REF#: 000000      TOTAL: 471.40
PURCHASE: 471.40   CASHBACK: 0.00
      DEBIT                   471.40
      CHANGE                    0.00
TOTAL NUMBER OF ITEMS SOLD =    0
KROGER SAVINGS          $     0.10
TOTAL COUPONS           $     0.10
TOTAL SAVINGS (0 %)     $     0.10
02/22/21 06:00pm 836 31 73 471
**************************************

# EXHIBIT G



**Angela Ruckman** ████████████████

---

## 2020 CV 0169 Modification/Mediation Ch file 20-00349

6 me   age

---

**Diane S. Bennett** <dbennett@clunkhoose.com>
To: ████████████████████████

Wed, Mar 3, 2021 at 9:31 AM

Hello Angela:


The reversal has not yet been approved by management, our client is working to get it reversed; however, the last payment our client received from you was for the January payment, you will need to make the February and March payment   immediately


Do you   till want the modification?  Ha   your financial   ituation changed and you no longer want the mod?


If the rever  al i   not approved, you will need to reapply, I have attached a copy of the financial packet in ca  e we don't get the approval



**This communication is provided pursuant to Ohio Evid. R. 408 and shall not be construed as an offer or acceptance of settlement or compromise.**



Thank  ,

Diane S  Bennett

Lo    Mitigation Department Coordinator

dbennett@clunkhoo  e com

Clunk, Hoo  e Co , LPA

Attorney   At Law

495 Wolf Ledges Parkway

Akron, OH  44311

PH:  (330) 436-0300 FAX:  330-436-0301 or 855-770-4022



We <u>cannot</u> give you legal advice.  We represent your Lender and our Client's interest may be opposed to your own interests.  If you have questions regarding legal matters, we urge you to obtain your own attorney.


**PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY AND ALL INFORMATION PROVIDED BY YOU WILL BE USED FOR THAT PURPOSE**


**Important Notice to Mortgagors Involved in a Bankruptcy proceeding  If you are a debtor involved in a bankruptcy proceeding, this e mail or letter has been sent to you merely for informational purposes and may be disregarded as an attempt to collect the debt (unless your mortgage is subject to an in rem order). If the automatic stay is in effect, we will not act to collect the debt owed until the stay has been lifted or the case has been discharged, please be assured that we are not attempting, and will not attempt, to collect this debt as a personal obligation, except in those circumstances when we may have the right to do so under applicable bankruptcy law. Otherwise, we will seek recovery of the debt from the property securing this debt**


**The JDC Family of Companie ®**
Clunk, Hoose Co., LPA
Omega Title Agency, LLC

## Confidentiality Notice:

Federal and State Law requires that we inform you that this firm is a debt collector attempting to collect a debt and any information we obtain may be used for that purpose. The information contained in this email is intended only for the personal and confidential use of the recipient(s) named above. If the reader of this me   age i  not the intended recipient or an agent re  pon ible for delivering it to the intended recipient, you are hereby notified that you have received thi document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by email and delete the original message.

---

📄 **LD   RMA pdf**
385K

---

**Angela Ruckman** ███████████████                                    Sat, Mar 6, 2021 at 10:22 PM

To: "Diane S. Bennett" <dbennett@clunkhoose.com>

Ive made all payments. Jan. Feb. March. However i was notified by krogers today. That PHH refused the payment dated Feb 11th which would have been for the month of March payment  Can you e plain what the i   ue i   and what to do?

Angela
[Quoted text hidden]

---

**2 attachments**


**image001.png**
8K


**image001.png**
8K

---

**Diane S. Bennett** <dbennett@clunkhoose.com>          Mon, Mar 8, 2021 at 9:41 AM

To ████████████████████████

Good Morning:

I received the below email from you this morning.  Our client has advised that you are due for the February and March payments, for a total of $873.93.  If you want the modification to go through, that payment needs to be made immediately.  Our client's modification team has confirmed they will accept that amount and then reverse the denial.

Also, I read down through all my notes, I have emails from you that you sent the December and January pmts, there is nothing mentioning that the February payment was sent (that was at the end of January).

If you have proof that you made the February payment and that it was accepted, please provide the proof and I will forward to our client.

Please let me know if you will be sending the payment today.

Thanks,

Diane S. Bennett

Loss Mitigation Department Coordinator

dbennett@clunkhoose.com

Clunk, Hoose Co., LPA

Attorneys At Law

495 Wolf Ledges Parkway

Akron, OH  44311

PH:  (330) 436-0300 FAX:  330-436-0301 or 855-770-4022



**From:** Angela Ruckman [mailto:█████████████████]
**Sent:** Saturday, March 06, 2021 10:23 PM
**To:** Diane S. Bennett
**Subject:** Re: 2020 CV 0169 Modification/Mediation Ch file 20-00349

Ive made all payments. Jan. Feb. March. However i was notified by krogers today. That PHH refused the payment dated Feb 11th which would have been for the month of March payment  Can you e plain what the i  ue i  and what to do?

[Quoted text hidden]
[Quoted text hidden]

---

**Angela Ruckman** <████████████████████>                                      Mon, Mar 8, 2021 at 3:34 PM
To  "Diane S  Bennett"  dbennett@clunkhoo e com

I made both payments for February and march. Payment made on February 11th was refused and i was notified by krogers. See attached for receipts and pic of email krogers gave me.
[Quoted text hidden]

---

**6 attachments**



**20210308_153233.jpg**
3848K



**20210308_153140.jpg**
3318K



**20210308_153118.jpg**
3294K

CLUNK HOOSE Co. LPA

**image001.png**
8K

CLUNK HOOSE Co. LPA

**image001.png**
8K

**image001.png**



8K

**Diane S. Bennett** <dbennett@clunkhoose.com>　　　　　　　　　　　　　　Mon, Mar 8, 2021 at 3:59 PM
To: Angela Ruckman ████████████████

Hi Angela:

Based on the receipts you sent, looks like you are due for Feb and March to me.

You  have a receipt purchase for $470  on 2/11 – which would be your January pmt (can you produce a separate receipt for Jan?)

You have a notification on 2/25  that the 2/11 pmt can't be processed

You have a receipt for $471.50 purchased on 2/22 – this would make the January pmt – making you due for Feb and March.

I didn't see any extra receipts in your file indicating that a Jan pmt was made other than the receipt above that you purchased on 2/22 almost one month behind.

[Quoted text hidden]
[Quoted text hidden]

**Angela Ruckman** ████████████████　　　　　　　　　　　　　　　Mon, Mar 8, 2021 at 4:17 PM
To: "Diane S. Bennett" <dbennett@clunkhoose.com>

[Quoted text hidden]



**20210308_161604.jpg**
4642K

# EXHIBIT H

## Account Error Report

Date : 02/25/2021
Agent Name : KROGER #836
Attention : COL-MONEY SVCS
Terminal ID : OH0496
Phone : (419) 756-6049
Fax : (614) 898-3507

Dear Agent,

CheckFreePay was unable to process the following customer payment(s). In order
to correct the error, please locate the bill stub that corresponds to the payment(s)
below. Attach the information to the bottom of this page and fax it to the
CheckFreePay Research Department.

*Important: Customers will not receive credit for this payment until the correct bill
information is provided. Receipts and counter slips are not acceptable.*

| Entry Date | Biller Name | Account Number | Amount |
|------------|-------------|----------------|--------|
| 2/11/2021 | PHH Mortgage-NextDay | ████████ | $470.00 |

**PLEASE ATTACH BILL STUB HERE.**          **FAX TO 1-888-798-3015**

419.756.8950

PHH

Name of Utility Office

Angela Rickman          First Amount $420⁰⁰

# EXHIBIT I

4/13/2021

 Gmail

**Angela Ruckman** ████████████

---

# Payment receipts 2021

1 me   age

**Angela Ruckman** ████████████████████                                Mon, Mar 8, 2021 at 4:33 PM
To: "Diane S. Bennett" <dbennett@clunkhoose.com>

---

**4 attachments**



**20210308_153140_2.jpg**
1583K



**20210308_161604~2.jpg**
2276K

**20210308_153118~2.jpg**
1576K





**20210308_153233~3.jpg**
1947K

# EXHIBIT J

 Gmail

Angela Ruckman < ██████████████ >

# Progress

2 me  age

---

**Angela Ruckman** ████████████████  Wed, Mar 10, 2021 at 8:08 AM
To: "Diane S. Bennett" <dbennett@clunkhoose.com>

Ha   there been any further update   and any tracking a   to where my payment   where depo ited? Did you receive the January receipt?

Angela

---

**Diane S  Bennett**  dbennett@clunkhoo e com  Wed, Mar 10, 2021 at 10 59 AM
To: Angela Ruckman  ████████████████

Your receipts were received and sent to PHH for review. .

[Quoted text hidden]

**The JDC Family of Companies®:**
Clunk, Hoose Co., LPA
Omega Title Agency, LLC

**Confidentiality Notice**

Federal and State Law require   that we inform you that thi   firm i   a debt collector attempting to collect a debt and any information we obtain may be u ed for that purpose. The information contained in this email is intended only for the personal and confidential use of the recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, plea e notify u   immediately by email and delete the original me   age

# EXHIBIT K

4/13/2021

 Gmail

**Angela Ruckman** ████████████

## 2020 CV 0169 ch file 20-00349

4 me   age

**Diane S. Bennett** <dbennett@clunkhoose.com>                    Fri, Mar 19, 2021 at 11:24 AM
To: Angela Ruckman ████████████

Our client cannot confirm receipt of payments from you.  The following amount is due before the end of March or the modification is denied.

We have  till not received $873 93  Mod team ha  given time to receive fund  till end of march, if fund  not received, mod will be denied again and then we will not be able to reverse mod denial.

End of March means we should receive funds **at least by 25ᵗʰ**, so that mod team can modify loan before month end, **otherwise they will also ask for the payment of April**.

The receipts that  you provided do not show that payment was sent to and received by PHH.

It appears you may need to go back to Kroger to obtain your funds

**From:** Diane S. Bennett
**Sent:** Wednesday, March 10, 2021 11:00 AM
**To:** 'Angela Ruckman'
**Subject:** RE: Progress

Your receipts were received and sent to PHH for review

**From:** Angela Ruckman [mailto ███████████]
**Sent:** Wednesday, March 10, 2021 8:09 AM
**To:** Diane S. Bennett
**Subject:** Progress


Has there been any further updates and any tracking as to where my payments where deposited? Did you receive the January receipt?


Angela

**The JDC Family of Companies®:**
Clunk, Hoo e Co , LPA
Omega Title Agency, LLC

**Confidentiality Notice:**

Federal and State Law requires that we inform you that this firm is a debt collector attempting to collect a debt and any information we obtain may be used for that purpose. The information contained in this email is intended only for the personal and confidential use of the recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, di emination, di tribution, or copying of thi me age i trictly prohibited If you have received thi communication in error, please notify us immediately by email and delete the original message.

---

**Angela Ruckman** ███████████                                    Fri, Mar 19, 2021 at 2:48 PM
To: "Diane S. Bennett" <dbennett@clunkhoose.com>

I would like to know where my money i ! I have receipt  I paid per their in truction  we tern union  No clue how long it will take to file an inve tigation with we tern union to track my money to show it was paid. Where do i come up with extra money in the mean time?
[Quoted text hidden]

---

**Angela Ruckman** ███████████                                    Fri, Mar 19, 2021 at 2 51 PM
To: "Diane S. Bennett" <dbennett@clunkhoose.com>

What was the last payment received from western union?

On Fri, Mar 19, 2021, 11 24 AM Diane S  Bennett   dbennett@clunkhoo e com  wrote
[Quoted text hidden]

---

**Angela Ruckman** ███████████                                    Sat, Mar 20, 2021 at 10:18 AM
To  "Diane S  Bennett"  dbennett@clunkhoo e com

The receipts show the biller as PHH Mortgage. The account # is on each receipt. The amount due, how was the calculated?

On Fri, Mar 19, 2021, 11:24 AM Diane S. Bennett <dbennett@clunkhoose.com> wrote:
[Quoted text hidden]

# EXHIBIT L

 **Gmail**

**Angela Ruckman** ███████████████

## Resubmitted denied payment
4 me age

**Angela Ruckman**███████████████████              Mon, Mar 22, 2021 at 11:06 AM
To: "Diane S. Bennett" <dbennett@clunkhoose.com>

I went to Kroger ye terday Spoke with Jackie who ha been the contact per on ince the denial of the 2/11/21 payment She i the one who contacted me and gave me the copy of the email. That payment was resubmitted yesterday. Per her instructions, the recipient needs to use the reference number to track payment and deposits. If a payment is not accepted an email will be sent instructing Krogers to contact the sender. Then the money is refunded. Or the money can be resubmitted to the recipient again. Krogers is notified within 7-11 business days if there is an issue.

I have used the same payment method for all payments since the modification process started. There has only been 1 issue, and that was 2/11/21 payment which would have been Februarys payment. Why it was denied or refused? I do not have an answer, PHH would have to answer that question. Being no other payments have been refused or declined, including the 2/22/21 payment which was the payment for March. There should be only 1 payment issue and thats the 2/11/21 payment declined by PHH That payment wa re ubmitted ye terday Receipt i attached Thi would make my account current All receipt how the biller a PHH. Contains the account number and a reference number.

Angela

       **received_145775037430033~2.jpeg**
            166K

**Diane S. Bennett** <dbennett@clunkhoose.com>            Mon, Mar 22, 2021 at 1:38 PM
To: Angela Ruckman ███████████████████

Below is the information for Western Union Quick Collect, if you have not already, you should have confirmation that Kroger sent the funds using the information below.

I will send the receipt to PHH, but if PHH doesn't have the funds in hand by 3/25/21, I expect the modification to be denied.  After all, signed documents and payments were all due in November 2020.

[Quoted text hidden]

**The JDC Family of Companies®:**
Clunk, Hoose Co., LPA
Omega Title Agency, LLC

<strong>Confidentiality Notice:</strong>

Federal and State Law requires that we inform you that this firm is a debt collector attempting to collect a debt and any information we obtain may be used for that purpose. The information contained in this email is intended only for the personal and confidential use of the recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by email and delete the original message.

Case: 5:21-cv-00923-BMB  Doc #: 52-1  Filed: 04/28/22  54 of 63.  PageID #: 803

**Angela Ruckman** ▆▆▆▆▆▆▆▆▆▆                Mon, Mar 22, 2021 at 3:25 PM
To: "Diane S. Bennett" <dbennett@clunkhoose.com>

Per kroger , phh need  to u  e the reference number  on the receipt  to track payment  received  Maybe it wa  po  ted to another account? You claim 2 payment  were missing, but the only denied payment was the February payment paid on 2/11. That was resubmitted yesterday. No other payments have been returned which means all other payments were received and accepted by PHH. I have made every payment. All paperwork was signed. Krogers can not track a payment that was sent after it was received. The other alleged missing payment has not been applied to my account or was applied to another account. I have my receipts showing I paid  I dont know what more I can do

[Quoted text hidden]

**8 attachment**

**image001 png**
1K

**image002.png**
1K

**image003 png**
1K

**image004.png**
1K

**image004.png**
1K

**image003.png**
1K

**image002.png**
1K

**image001.png**
1K

---

**Diane S. Bennett** <dbennett@clunkhoose.com>
To: Angela Ruckma ██████████████████████

Mon, Mar 22, 2021 at 4:12 PM

Please call PHH and request a payment history if you believe all payments have been made, that way you can see what payments came in and how they were applied.

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT M



FRESH
FOR
EVERYONE.

**Check Free Pay**

| | |
|---|---|
| 15¢ | Ave |
| Mansi | 44907 |

Check #####

| | |
|---|---|
| Terminal ID: | 40000761 |
| Date: | 03/21/2021 |
| Time: | 01:22:00 PM |
| Trace-Nr.: | 119641 |
| Biller: | PHH Mortgage |
| Amount: | 470.00 |
| Tender Type: | CASH |
| Fee: | 1.50 |
| Total: | 471.50 |

ACT#:
Reference Number: DH0496:6181:11
CFP Terminal ID: 0H0496

Payment will be delivered no later than 03/23/21.

Keep your bill stub and receipt until the payment has been completed as instructed. The bill stub and receipt must be presented for any inquiry or change to the payment.

Payment Receipt Number: 0804300111

Protecting your privacy is very important to us. That is why we want to be clear and transparent about why we collect information, the information we collect and how we use that information. By completing this transaction, you agree that this transaction and all data associated with it, including personal information collected as part of the transaction, but excluding information about the recipient of the money transfer, is subject to Kroger Policy at https://www.kroger.com/i/privacy-policy /financial-products.

```
                            CUE
KROGER                    ######5473
MR                               1.50
SC        #.                     0.10-
          TAX                    0.00
   **** BALANCE.                 1.40
          CASH                   1.40
          CHANGE                 0.00
TOTAL NUMBER OF ITEMS SOLD =     0
KROGER SAVINGS            $       0.10
TOTAL COUPONS            $       0.10
TOTAL SAVINGS (G %)     $       0.10
03/21/21 01:22pm 836 31 37 350
********************************
     TELL US HOW WE ARE DOING!
     EARN 50 BONUS FUEL POINTS!
   Go to www.krogerfeedback.com
Date: 03/21/21
Time: 01:22pm
Entry ID: 016-441-37-836-31-60
      No purchase necessary
   See website for offical rules
********************************
Fuel Points Earned Today: 0
Total March Fuel Points: 910
********************************
Remaining Feb Fuel Points: 620
   With Our Low Prices, You Saved
           $0.10
     Annual Card Savings $514.96
     Now Hiring - Apply Today!
          jobs.kroger.com
          www.kroger.com
```

# EXHIBIT N

 **Gmail**

**Angela Ruckman** ███████████████

---

## Breakdown of pmts 20-00349

**Diane S. Bennett** <dbennett@clunkhoose.com>        Tue, Mar 23, 2021 at 3:51 PM
To: Angela Ruckman ████████████████

Angela, below is the breakdown of your payments received.

Trial plan pmts were $469.15

09/02/20 $470 received - $469.15 September's pmt = .85

10/26/20 $1,000 received +.85 = $1,000.85 - $469.15 for October's pmt = $531.70

$531.70 - $469.15 for November's pmt = $62.55

12/03/20 $470 received + $62.55 = $532.55 - $469.12 (perm mod pmt for Dec) = $63.43

01/05/21 $470 received + $63.43 = $533.43 - $469.12 (perm mod pmt for Jan) = $64.31

Loan is due for the Feb an March pmts as of 3/23/21

The payment that was being sent today, 3/23/21 has not yet shown as received or applied to your account and will likely be rejected because it is not the full amount of the Feb & Mar pmts combined.

$469.12 Feb + $469.12 Mar = $938.24 - $64.31 = **$873.93.**

Please send in one lump sum $873.93 to cover the Feb and March payments.

**This communication is provided pursuant to Ohio Evid. R. 408 and shall not be construed as an offer or acceptance of settlement or compromise.**

Thanks,

Diane S. Bennett

Loss Mitigation Department Coordinator

dbennett@clunkhoose.com

Clunk, Hoose Co., LPA

Attorneys At Law

495 Wolf Ledges Parkway

Akron, OH  44311

PH:  (330) 436-0300 FAX:  330-436-0301 or 855-770-4022



We __cannot__ give you legal advice.  We represent your Lender and our Client's interest may be opposed to your own interests.  If you have questions regarding legal matters, we urge you to obtain your own attorney.

**PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY AND ALL INFORMATION PROVIDED BY YOU WILL BE USED FOR THAT PURPOSE.**

**Important Notice to Mortgagors Involved in a Bankruptcy proceeding: If you are a debtor involved in a bankruptcy proceeding, this e-mail or letter has been sent to you merely for informational purposes and may be disregarded as an attempt to collect the debt (unless your mortgage is subject to an in rem order)  If the automatic stay is in effect, we will not act to collect the debt owed until the stay has been lifted or the case has been discharged, please be assured that we are not attempting, and will not attempt, to collect this debt as a personal obligation, except in those circumstances when we may have the right to do so under applicable bankruptcy law. Otherwise, we will seek recovery of the debt from the property securing this debt.**

**The JDC Family of Companies®:**
Clunk, Hoo e Co , LPA
Omega Title Agency, LLC

**Confidentiality Notice:**

Federal and State Law requires that we inform you that this firm is a debt collector attempting to collect a debt and any information we obtain may be used for that purpose. The information contained in this email is intended only for the personal and confidential use of the recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, di  emination, di  tribution, or copying of thi  me  age i   trictly prohibited  If you have received thi  communication in error, please notify us immediately by email and delete the original message.

# EXHIBIT O

Store 518
1240 Park Ave W
Mansfield, OHIO 44905

**Angela Ruckman**

CheckFreePay

| | |
|---|---|
| Terminal ID: | |
| Date: | 40000272 |
| Time: | 03/30/2021 |
| Trace-Nr.: | 08:00:24 PM |
| Biller: | 500132 |
| Amount: | PHH Mortgage |
| Tender Type: | 470.00 |
| Fee: | CASH |
| Total: | 1.50 |
| | 471.50 |

---

ACT#:
Reference Number: OHO503:6582:24
CFP Terminal ID: OHO503

Payment will be delivered no later than
04/01/21.

Keep your bill stub and receipt until
the payment has been completed as
instructed. The bill stub and receipt
must be presented for any inquiry or
change to the payment.

Payment Receipt Number: 0894300241

**April 2021 Payment**

Protecting your privacy is very
important to us. That is why we want
to be clear and transparent about why
we collect information, the information
we collect and how we use that
information. By completing this
transaction, you agree that this
transaction and all data associated
with it, including personal information
collected as part of the transaction,
but excluding information about the
recipient of the money transfer, is
subject to Kroger Policy at
https://www.kroger.com/i/privacy-policy
/financial-products.