**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELA L. RUCKMAN, | : | Case No.: 5:21-cv-00923-BMB |
| Plaintiff, | : | Judge Bridget Meehan Brennan |
| v. | : | |
| PHH MORTGAGE CORPORATION d/b/a | : | |
| PHH MORTGAGE SERVICING, *et al.*, | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

**DEFENDANT PHH MORTGAGE CORPORATION'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant PHH Mortgage Corporation ("Defendant"), by and through its undersigned counsel, hereby submits this Reply in Support of its Motion for Summary Judgment, and states as follows:

**I.      INTRODUCTION**

The record is uncontroverted that Plaintiff's modification paperwork was received on January 19, 2021, with the notarization dated January 12, 2021, but it was due by December 31, 2020. Handville Aff., ¶ 16. This is the *only* modification paperwork in the record. Therefore, Plaintiff's unsupported assertion that she initially returned the paperwork in December 2020 (Opp., p. 12) is contradicted by the record. Therefore, under 12 C.F.R. section 1024.41(g)(2), Plaintiff rejected the loss mitigation option and Defendant correctly proceeded with the foreclosure.

As a result, any subsequent offers by Defendant, such as its offer to allow Plaintiff to catch up on her payments by March 25, 2021, are not governed by section 1024.41. 12 C.F.R. § 1024.41(i); *Brimm v. Wells Fargo Bank, N.A.*, 688 F. App'x 329, 331 (6th Cir. 2017). Regardless, Plaintiff admitted that she did not submit the required $873.93. Ruckman Depo. p. 37.

1

Further, as there was no violation of RESPA, there cannot be a violation under the RMLA. Therefore, the statutory claims fail as a matter of law. Based upon the undisputed factual record, Defendant is entitled to judgment as a matter of law on all claims against it.

## II. ARGUMENT

### a. **Plaintiff failed to establish a genuine issue of material fact with respect to whether she timely submitted a complete initial loss mitigation application by December 31, 2020.**

Plaintiff alleges that Defendant violated 12 C.F.R. section 1024.41 ("Regulation X" of RESPA). The regulation prohibits a loan servicer from foreclosing on a property if the borrower has submitted a complete loss-mitigation application. 12 C.F.R. § 1024.41(g). In *Dent v. Investment Corp. of America*, the Eastern District of Michigan addressed a similar situation to the case at bar, and stated:

> Despite ample opportunity to obtain discovery from Defendant which could support their positions, Plaintiffs have failed to produce any answers to interrogatories, documentation, or other evidence which could support their allegations that they submitted to Defendant a complete application for mortgage assistance, nor any evidence that Defendant considered that application complete. Plaintiffs thus have failed to demonstrate that a question of material fact exists with regard to whether they submitted a complete application for mortgage relief.

No. 15–cv–11268, 2015 WL 9694807, at *5 (E.D.Mich. Dec. 23, 2015). The same is true here. Plaintiff failed to create a question of material fact with regard to whether she submitted a complete application for mortgage relief and, therefore, her claims relying on this fact being proved should be rejected.

The record is undisputed that Plaintiff failed to timely submit the complete initial loan modification agreement to Defendant by the agreed deadline of December 31, 2020. The only modification any party can produce shows that Plaintiff did not execute the modification in front

2

of a notary public until January 12, 2021.[1] This was almost two weeks after the extended deadline. *See Schoen v. Bank of Am., N.A.*, No. 2:17-cv-648, 2019 U.S. Dist. LEXIS 23460, at *27-28 (S.D. Ohio Feb. 13, 2019) ("The plain language of the provision gives a servicer the right to treat a borrower as if she rejected an offer for a loss mitigation option if the borrower does not accept it by the validly set deadline. Accordingly, it provides an **option to the servicer but requires nothing of the servicer**. Because it requires nothing, there can be no violation.") Therefore, under section 1024.41(g)(2), Plaintiff rejected the loss mitigation option and Defendant can proceed with the foreclosure.

Further, and importantly, any subsequent offers Defendant made to Plaintiff after she rejected the loan modification agreement to reverse the denial of it were at Defendant's discretion and were not subject to the requirements of 12 C.F.R. section 1024.41(g). "Section 1024.41, as it happens, does not require mortgage servicers to consider duplicative requests." *Brimm*, 688 F. App'x 329 at 331. "The regulation requires a servicer only 'to comply with the requirements of this section for *a single* complete loss mitigation application for a borrower's mortgage loan account.' *Id.*, citing 12 C.F.R. § 1024.41(i) (emphasis added). Therefore, Plaintiff's argument regarding the February 2021 and March 2021 payments is a red-herring and irrelevant. Defendant gave Plaintiff a *second* chance, *after* the January 15, 2021, denial of the first loan modification

---

[1] Plaintiff's claim that she timely submitted a re-executed loan modification under the errors and omissions section of the loan modification agreement is also incorrect. Plaintiff alleges that she timely returned the re-executed loan modification on January 12th on instruction of PHH's counsel after counsel advised her that PHH had not received her executed loan modification. See Plaintiff's Opposition, p. 12. What Plaintiff fails to point out is that PHH did not receive Plaintiff's re-executed loan modification until January 19th, 2021(Handville Aff., ¶ 16) after PHH had sent its denial letter on January 15th, 2021, to be effective January 14th, 2021. Regardless, the errors and omissions clause is not applicable as Plaintiff failed to return the executed loan modification by the December 31, 2020, deadline, so the loan modification was no longer in effect. Thu s, there was no loan modification agreement available to be re-executed.

application, to enter a permanent modification by catching up on her February 2021 and March 2021 payments by March 25, 2021. Even though the record is undisputed that Plaintiff never paid the $873.93 by March 25, 2021, this payment dispute is not governed by 12 C.F.R. section 1024.41(g). Ruckman Depo. 41:24-25.

Therefore, summary judgment should be entered in Defendant's favor as to Plaintiff's RESPA claim.

### b. **Plaintiff failed to establish a genuine issue of material fact as to whether PHH improperly or failed to apply the payments she tendered in February and March of 2021.**

Plaintiff's allegation that PHH wrongfully refused to accept her payments in February and March of 2021 is simply incorrect. Borrower's counsel cross-examined PHH's witness, Howard Handville, at length concerning the payments tendered by Plaintiff during February and March of 2021. Mr. Handville explained that PHH made the initial decision in January of 2021 to consider reversing the denial of the loan modification due to Plaintiff's untimely return of the loan modification pending additional internal review. However, the offer to reverse the denial of the loan modification did not become final until March of 2021, at which time Plaintiff was advised by Diane Bennett on three occasions that PHH would reverse the denial if Plaintiff paid $873.93. *See* Depo. of Howard Handville, pp. 68-71; Affidavit of Diane Bennett, Paragraphs 7-10.

Thus, Plaintiff was fully aware of what she needed to do to have the denial of her loan modification agreement reversed - **simply make the payment of $873.93 which she consciously and intentionally refused to do**, **and admitted that she did not do so**. Ruckman Depo., p. 37. This is not a situation in which PHH misrepresented the amount to be paid to have the loan modification reversed. PHH researched and confirmed the payments applied to the Plaintiff's loan

4

and determined what was applied and what was owed to allow the reversal to occur. Plaintiff still refused to make the required payment. As such, Plaintiff had the last best chance to avoid the foreclosure from being filed and she intentionally refused to do so.

Further, Plaintiff's argument that PHH failed to advise her of the return of the payment she tendered on February 25, 2021, is also simply a red herring. As Mr. Handville pointed out, Plaintiff contracted with a third party to submit her payment to PHH, so it was that third party's responsibility to advise her of the return of her payment. *See* Depo. of Howard Handville, p.102. Further, PHH did notify Plaintiff of the rejection of the payments as her March 2021 monthly statement for her loan would have disclosed that the payments were not applied. *See* Depo. of Howard Handville, pp. 98-99; Affidavit of Angela Ruckman, ¶¶19-20. Plaintiff could have contacted PHH directly during this entire time to ask the reason for the return of her payments but for reasons unknown, she did not do so.

    **c.**    **Plaintiff's argument that there was an "agreement" to reverse the denial at a hearing on January 29, 2021, is inadmissible and barred by the Ohio Statute of Frauds R.C. 1335.05.**

It is well-established that "a mortgage is a conveyance within the statute of frauds and perjuries." *FirstMerit Bank, N.A. v. Inks*, 2014-Ohio-789, ¶ 23, 138 Ohio St. 3d 384, 389, 7 N.E.3d 1150, 1155 (2014). While a mortgage is a lien for a debt, it also is a conveyance of property that passes the property conditionally to the mortgagee as well as a transfer of property as security for the debt. *Id.* Oral agreements related to the modification of mortgage loans fall within the statute of frauds and are unenforceable. *Id.*

Here, there was no oral agreement to reverse the denial of the loan modification, as it needed to be executed by PHH to be enforceable. Even if there was such an alleged oral agreement,

5

it pertains to an interest in land because it involves the terms upon which PHH agreed to modify the mortgage. Moreover, Plaintiff voluntarily made payments in February of 2021, thereby belying her claim that these payments were made incident to an oral agreement to reverse the denial of the loan modification. See Affidavit of Angela Ruckman, ¶ ¶19, 20. As such, it falls within R.C. 1335.05.

Because there is no evidence that an oral agreement to reverse the denial of the loan modification was ever reduced to a writing signed by PHH, it does not comply with R.C. 1335.05 and is unenforceable. As such, the loan modification did not become effective until PHH signed and implemented it in August of 2021.

Thus, at the time of the hearing on January 29, 2021, [2] the loan modification had been denied and *any agreement to reverse the denial of the loan modification had not been reduced to writing* (especially as the borrower's tendered loan modification received by PHH on January 19th, 2021, had not been executed by PHH, the party to be charged under contract law). Accordingly, any references to correspondence PHH's counsel had regarding the January 29th, 2021, hearing with the foreclosure court regarding the reversal of the loan modification is inadmissible.

---

[2] Any discussions regarding the reversal of the denial of the loan modification (or otherwise regarding a loan modification), including those allegedly had at the mediation January 29, 2021, hearing, were made in the context of an ongoing court ordered mediation and were part of settlement negotiations. *See* Docket, attached hereto as **Exhibit A**. Therefore, any communications regarding such an agreement to reverse a previous denial is protected and inadmissible under Ohio R. Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is likewise not admissible.").

    d.    **Plaintiff failed to establish a genuine issue of material fact with respect to whether Defendant violated the RMLA.**

As explained in Defendant's opening brief, Defendant followed the federal regulation regarding the loan modification process, so Plaintiff's allegations simply do not fit into the everyday meaning of improper, fraudulent, or dishonest dealings. A cause of action under the RMLA should be made of more egregious acts done at origination, such as illegal kickbacks, fraudulent appraisals, and lying about the terms of a loan. It should not apply to the loss mitigation process already regulated under Federal law.

    e.    **Plaintiff failed to establish a genuine issue of material fact with respect to whether she is entitled to damages**.

Moreover, even if Plaintiff could prove her alleged violations, Plaintiff failed to show that any damages *resulted from* Defendant's actions – specifically, actions before January 15, 2021, when the *first* loss-mitigation application was denied – and her claims are therefore futile. Importantly, as previously explained, plaintiff may recover for violations of Regulation X only as to her first loss-mitigation application. See 12 C.F.R. § 1024.41; *see also Brimm*, 688 Fed.Appx. 329 at 331 (6th Cir. 2017) (finding that under Regulation X, a lender need only consider a borrower's first loss-mitigation application); *Bertschy-Gallimore v. U.S. Bank Nat'l Ass'n*, No. 1:15–cv–352, 2015 WL 3889260, at *7 (W.D. Mich. June 24, 2015) (dismissing the plaintiff's Regulation X claim because she filed previous loss-mitigation applications with the lender). As Plaintiff failed to adequately show causation of any damages related to any action by Defendant *prior to denial of the first loss mitigation application on January 15, 2021* – none of her alleged damages are specifically attributed to prior to January 15, 2021, and she even attributes her loss of wages to the time period beginning in March 2021 (Ruckman Depo., p. 46). Further, Plaintiff

testified that her emotional distress in this matter began in March of 2021, again after the denial of her first loss mitigation application on January 15, 2021. Ruckman Depo. p. 47. As a result, Plaintiff has not proven her damages and fails to state a viable claim under RESPA.

Further, Plaintiff failed to adequately link her claims of emotional distress and financial loss to Defendant's alleged failure to implement a loan modification by December 31, 2020. Nowhere in her Opposition does she sufficiently explain *which* actions caused her alleged damages – she only broadly references the "actions of PHH" and "PHH's violations." Opp., p. 17-18. Thus, Plaintiff failed to establish causation. *See Austerberry v. Wells Fargo Home Mortg.*, No. 15–cv–13297, 2015 WL 8031857, at *7 (E.D. Mich. Dec. 7, 2015) (holding that a plaintiff seeking compensation for emotional damage under RESPA must provide more than "threadbare" claims, and must show "*how Defendant allegedly caused those damages*") (emphasis added).

Regardless, she cannot show a causal link because she failed to present any evidence other than self-serving testimony that she submitted a complete request for mortgage assistance on time by December 31, 2020. Rather, Plaintiff's foreclosure action – which she alleges damaged her in the form of emotional distress and defense cost – arose because she failed to make payments to her servicer. *Collins v. Wickersham*, 862 F.Supp.2d 649, 659 (E.D. Mich.2012) ("The alleged injuries plainly resulted from Plaintiffs' failure to make loan payments and the ensuing foreclosure."); *Benford v. CitiMortgage, Inc.*, No. 11–12200, 2011 WL 5525942, at *5 (E.D.Mich. Nov. 14, 2011) ("Citi's alleged failure to provide [the plaintiff] with . . . information did not result in foreclosure. Rather, Plaintiff's failure to make the loan payments triggered this course of events."). Therefore, it is apparent that any emotional distress or financial loss stemmed not from any alleged violation by Defendant, but from the initiation of the foreclosure itself due to Plaintiff's own undisputed default, and the *subsequent* denials of a loss-mitigation application —

the latter of which cannot, in any event, serve as a basis for her Regulation X claim. *See Peck v. Ocwen Loan Servicing, LLC*, No. 14-12105, 2017 WL 4572331, at *4 (E.D. Mich. Oct. 13, 2017) (holding that the plaintiffs were not entitled to relief under RESPA where "it was [the] [p]laintiffs' failure to pay their mortgage payments that caused their damages"); *Garrow v. Wells Fargo Bank, N.A.*, No. 1:15-cv-1277, 2016 WL 1637441, at *3 (W.D. Mich. April 26, 2016) ("Plaintiffs have failed, however, to make a sufficient showing that the alleged violations—rather than the failure to make the required payments—were the true cause of Plaintiffs' damages."); *Lee v. Equifirst Corp.*, 2010 WL 4320714, *9 (M.D. Tenn.) ("It is clear that the foreclosure was caused by the plaintiff's inability to pay the amount she owed; knowledge of why certain payments were applied in certain ways [the information plaintiff requested in her qualified written response] had no effect on her ability to make loan payments."). Further, there is no evidence that Plaintiff would not have suffered the asserted emotional distress or incurred financial costs had the permanent loan modification been instituted by December 31, 2020 – especially as there is no evidence tying the broad assertions to Defendant's conduct prior to January 15, 2021. As such, Plaintiff has failed to establish a genuine issue of material fact with respect to whether she suffered any actual damages *as a result of* Defendant's alleged violations.

Further, Plaintiff cannot prove she is entitled to statutory damages, which are only available "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). "To show a pattern or practice, a plaintiff must show that noncompliance with the statute 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Necak v. Select Portfolio Servicing, Inc.*, No. 1:17 CV 1473, 2019 WL 1877174, at *6 (N.D. Ohio Apr. 26, 2019) (quoting *Lewis v PNC Pank, N.A.*, No. 3:17 CV 220, 2018 WL 6249989, at *8 (S.D. Ohio Nov. 29, 2018)). "To establish a pattern or practice of noncompliance, 'one or two violations alone

are insufficient.'" *Schoen v. Bank of Am., N.A.*, No. 2:17-CV-648, 2019 WL 590882, at *10 (S.D. Ohio Feb. 13, 2019) (citation omitted). Therefore, at most, Plaintiff can establish a single violation under RESPA, which is insufficient to establish a pattern or practice of noncompliance by itself.

### III.    CONCLUSION

For all the reasons set forth above, Plaintiff's claims fail as a matter of law, as evidenced by the undisputed record evidence. Thus, this Court should grant summary judgment in Defendant's favor as to Plaintiff's claims.

Respectfully submitted,

/s/John R. Wirthlin
John R. Wirthlin
Blank Rome LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
Telephone: (513) 362-8748
Facsimile: (513) 362-8787
Email: John.Wirthlin@blankrome.com

*Counsel for Defendant PHH Mortgage Corporation*

## CERTIFICATE OF SERVICE

I certify that an exact copy of the foregoing document was electronically filed and served via the ECF system on June 24, 2022.

/s/John R. Wirthlin
John R. Wirthlin
