UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA L. RUCKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 5:21-cv-00923 |
| | ) | |
| v. | ) | |
| | ) | |
| PHH MORTGAGE CORPORATION | ) | JUDGE BRIDGET M. BRENNAN |
| d/b/a PHH MORTGAGE SERVICING, | ) | |
| | ) | |
| and | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| CLUNK, HOOSE CO., L.P.A., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Angela L. Ruckman ("Ruckman") filed this action against the servicer of her residential mortgage loan, PHH Mortgage Corporation *d/b/a* PHH Mortgage Servicing ("PHH"), under 12 C.F.R. § 1024.1 *et seq.* (known as "Regulation X"), which implements the federal Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), and under the Ohio Residential Mortgage Lending Act, R.C. 1322.01 *et seq.* ("RMLA"). (Doc. No. 1 at PageID# 14-16 & 17-19, Counts I and III.)

Also named as a defendant is the law firm of Clunk, Hoose Co. L.P.A. ("Clunk"). Ruckman seeks relief against Clunk under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (*Id*. at PageID# 16, Count II.) Clunk answered the Complaint and listed several affirmative defenses. (Doc. No. 10.)

1

Clunk has moved pursuant to Fed. R. Civ. Pro. 12(c) for judgment on the pleadings on the FDCPA claim in Count II. (Doc. Nos. 22 & 29.)[1] Ruckman has responded in opposition. (Doc. No. 28). For the reasons stated herein, Clunk's motion for judgment on the pleadings is DENIED.

## I. Facts

The facts below are taken from the pleadings, which include: Ruckman's Complaint (Doc. No. 1);[2] Clunk's Answer (Doc. No. 10); and PHH's Answer (Doc. No. 12).

### A. The Parties

Ruckman owns a home in Mansfield, Ohio (the "Property"), subject to a mortgage with a monthly payment obligation. (Doc. No. 1 at ¶¶ 1-3, 39; Doc. No. 10 at ¶ 2; Doc. No. 12 at ¶ 2.) Exhibit 1 to the Complaint contains correct copies of a promissory note and mortgage signed by Ruckman on August 24, 2005, when she purchased the Property. (Doc. No. 1 at ¶ 4; Doc. No. 1-1; Doc. No. 10 at ¶ 4; Doc. No. 12 at ¶ 4.) Ruckman's note and mortgage are referred to collectively herein as the "Home Loan." (Doc. No. 1-1.)

At all times relevant to this dispute, PHH serviced the Home Loan. PHH serviced the Home Loan on behalf of HSBC Bank USA, N.A. ("HSBC"). HSBC is an assignee of the original mortgage lender and trustee for certain mortgage-backed securities. (Doc. No. 1 at ¶¶ 6-7; Doc. No. 10 at ¶¶ 6-7; Doc. No. 12 at ¶¶ 6-7.) HSBC was neither named nor joined in this case.

---

[1] PHH did not move under Rule 12; instead, it moved for summary judgment under Rule 56. (Doc. No. 38.) The Court will address PHH's motion in a future order.

[2] The Court notes that Exhibit 2 to the Complaint is a lengthy notarized affidavit from Ruckman with its own exhibits, which provide details in addition to those found in the body of the Complaint. (*See* Doc. No. 1-2.)

By early 2020, Ruckman fell behind on her payments and was delinquent under the terms of the Home Loan. (Doc. No. 1 at ¶ 31; Doc. No. 10 at ¶ 31; Doc. No. 12 at ¶ 31.) On March 5, 2020, HSBC (represented by Clunk) filed a foreclosure action against Ruckman in state court in Richland County, Ohio, Case No. 2020 CV 0169. (Doc. No. 1 at ¶¶ 8, 32; Doc. No. 10 at ¶¶ 8, 32; Doc. No. 12 at ¶¶ 8, 32.)

### B. Loss Mitigation & Home Loan Modification[3]

"In July 2020, Ruckman submitted a loss mitigation application to PHH through Clunk." (Doc. No. 1 at ¶ 33; Doc. No. 10 at ¶ 33; Doc. No. 12 at ¶ 33.) On August 4, 2020, PHH acknowledged that Ruckman's application had been received and was complete. (Doc. No. 1 at ¶ 35; Doc. No. 1-2 at PageID# 47, ¶ 5; Doc. No. 10 at ¶ 35; Doc. No. 12 at ¶ 35.)

A Loss Mitigation Department Coordinator at Clunk named Diane Bennett ("Bennett") communicated directly with Ruckman multiple times in 2020 and 2021 regarding her delinquency on the Home Loan, the status of loan payments, and loan modification options and issues. (*See* Doc. No. 1 at ¶¶ 46-56; Doc. No. 22 at PageID# 278, 279, 280; Doc. 40; *e.g.*, Doc. No. 1-2 at ¶¶ 21, 23-38, Exs. G, I, J, K, & L; *cf.* Doc. No. 10 at ¶¶ 46-56.)

PHH offered Ruckman a trial loan modification, which would require her to make three payments of $469.15 for September, October, and November 2020. (Doc. No. 1 at ¶ 36; Doc. No. 1-2 at PageID# 47 ¶¶ 5-7; Doc. No. 10 at ¶ 36; Doc. No. 12 at ¶ 36.) Ruckman made all three trial payments as required. (Doc. No. 1 at ¶ 37; Doc. No. 10 at ¶ 37; Doc. No. 12 at ¶ 37.)

---

[3] Regulation X, which implements the RESPA, contains helpful definitions: "Loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." 12 C.F.R. § 1024.31. "Loss mitigation application means an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option." *Id.*

PHH sent Ruckman a document dated November 6, 2020 and titled "Approval for Permanent Modification." (*See* Doc. No. 1 at ¶ 38; Doc. No. 10 at ¶ 38; Doc. No. 12 at ¶ 38; Doc. No. 1-2 at Ex. A.) That loan modification document indicated a November 24, 2020 deadline to be executed and returned. (Doc. No. 1-2 at Ex. A.) The deadline was extended by PHH and Ruckman by agreement to December 31, 2020. (Doc. No. 1 at ¶ 40; Doc. No. 12 at ¶ 40; Doc. No. 10 at ¶ 40.)

Ruckman alleges that she executed the loan modification agreement and mailed it to PHH in December 2020. (Doc. No. 1 at ¶ 42.) But PHH and Clunk allege that Ruckman did not return the loan modification agreement by December 30, 2020. (Doc. No. 10 at ¶ 42; Doc. No. 12 at ¶ 42.)[4]

PHH and Clunk admit, however, that Ruckman *did* timely pay the amount due as prescribed in the loan modification agreement. (Doc. No. 1 at ¶ 41; Doc. No. 10 at ¶ 41; Doc. No. 12 at ¶ 41.) The loan modification papers provided to Ruckman directed that the first modified monthly payment due date would be December 1, 2020. (Doc. No. 1-2 at Ex. A.) The monthly amount due would be $469.12. (*Id*.) All parties agree and admit:

> On November 30, 2020, Ruckman timely remitted a payment in the amount of $470.00 in satisfaction of the payment due under the Modification for December 1, 2020 via money order in compliance with PHH's express written instructions for the same.

(Doc. No. 1 at ¶ 41; Doc. No. 10 at ¶ 41; Doc. No. 12 at ¶ 41.) Ruckman made this payment at a Kroger supermarket store in Mansfield, Ohio, her receipt indicates. (Doc. No. 1-2 at Ex. C.)

The Complaint includes receipts showing three more subsequent payments of $470.00 dated January 4, February 11, and February 22, 2021 – each made at a Kroger supermarket store

---

[4] Ruckman offered to file an amended pleading with additional detail related to this factual dispute. (*See* Doc. No. 28 at PageID# 324 n.1.)

4

in Mansfield, Ohio. (Doc. No. 1-2 at Exs D, E, & F.)

PHH and Clunk both admit that Ruckman's January 4th payment was received and accepted. (Doc. No. 1 at ¶ 44; Doc. No. 10 at ¶ 44; Doc. No. 12 at ¶ 44.) However, PHH apparently refused to accept Ruckman's February 11, 2021 payment. PHH and Clunk both affirmatively aver that this payment was rejected because the loan modification purportedly had been denied on January 14, 2021. (*See* Doc. No. 1 at ¶¶ 43-45; Doc. No. 10 at ¶¶ 43-45; Doc. No. 12 at ¶¶ 43-45; Doc. No. 22 at PageID# 280.) Because Defendants aver that the February 11, 2021 payment was purposefully rejected, it follows necessarily that: (i) Ruckman must have tendered such payment; and (ii) PHH must have received notification that Ruckman tendered the payment.

PHH's refusal to accept Ruckman's payment(s) was a short-lived stance. On March 3, 2021, Clunk, through Bennett, emailed urging that Ruckman "will need to make the February and March payments immediately." (Doc. No. 1-2 at Ex. G; Doc. No. 1 at ¶¶ 46-47; Doc. No. 10 at ¶¶ 46-47; Doc. No. 12 at ¶¶ 46-47.) On March 8, 2021, Clunk, again through Bennett, emailed Ruckman asserting the following:

> Our client has advised that you are due for the February and March payments, for a total of $873.93. If you want the modification to go through, that payment needs to be made immediately. Our client's modification team has confirmed they will accept that amount and then reverse the denial.

(Doc. No. 1-2 at Ex. G PageID# 81.) On March 19, 2021, Clunk, through Bennett, emailed Ruckman asserting the following: "The following amount [$873.93] is due before the end of March or the modification is denied." (Doc. No. 1-2 at Ex. K PageID# 94.)[5]

---

[5] Clunk confirmed the authenticity of this email and averred that this email speaks for itself. (Doc. No. 10 at ¶ 52.)

5

### C. Activity in the State Court Foreclosure Action

Before the end of March, on March 29, 2021, Clunk filed a motion for summary judgment against Ruckman in the pending state court foreclosure action in Richland County, Ohio. (Doc. No. 1 at ¶ 61; Doc. No. 10 at ¶ 61; Doc. No. 12 at ¶ 61; Doc. No. 1-2 at p. 9 ¶ 50.)

On August 30, 2021, the foreclosure case was dismissed voluntarily by settlement, according to the publicly accessible online docket for the clerk of the Richland County Court of Common Pleas. Ruckman continued to reside at the Property (and apparently still does of the parties' latest filings). (*See* Doc. No. 1 at ¶ 3.)

## II. Law and Analysis

"In the context of a Rule 12(c) motion, the burden is on the moving party to show it is entitled to judgment as a matter of law." *Kenyon v. Union Home Mortg. Corp.*, 581 F.Supp.3d 951, 959 (N.D. Ohio 2022); *see also Jenkins v. Livonia Police Dep't*, No. 13-14489, 2016 WL 759338, at *2 (E.D. Mich. Feb. 26, 2016) ("Judgment may be granted under Rule 12(c) *where the movants clearly establish* that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law." (emphasis added)); *Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 152 (6th Cir. 2005) ("The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.").

Clunk has not carried its burden as movant, and so the motion must be denied.

### A. Standard of Review

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "[T]he inquiry on a motion to dismiss is not

whether Plaintiff will be successful on the merits, but simply whether her pleadings are sufficient to state a claim upon which relief can be granted." *Id.* at 726. "To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581(6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

"[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). The function of the Court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Jenkins v. Livonia Police Dep't*, No. 13-14489, 2016 WL 759338, at *2 (E.D. Mich. Feb. 26, 2016).

Documents fairly construed as exhibits *to the pleadings* or public records subject to judicial notice are permissible terrain when resolving a Rule 12(c) motion.

> Although our decision concerning a motion for a judgment on the pleadings rests primarily upon the allegations of the complaint, matters of public record, orders,

7

>items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account. We can also consider exhibits appended to the motion for a judgment on the pleadings so long as they are referred to in the Complaint and are central to the claims contained therein.

*Briggs v. Hogan*, No. 21-5581, 2022 WL 985825, at *2 (6th Cir. Apr. 1, 2022) (citations and quotations omitted); *see also Barany-Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir. 2008); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." (citation omitted)). But the Court may not consider additional evidence from *outside* the pleadings – *i.e.,* not without converting the motion to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

### B. Clunk Fails to Provide Statutory Analysis or Case Law

Local Rule 7.1(c) provides that a "moving party must serve and file with its motion a memorandum of the points *and authorities* on which it relies in support of the motion." N.D. Ohio L.R. 7.1 (emphasis added).

Clunk does not cite any cases or other legal authority. The motion offers no textual analysis of the FDCPA, *i.e.*, the statute which governs Count II against Clunk. Clunk does not review the elements of a cause of action under the FDCPA, either.

"It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving a court to . . . put flesh on its bones." *Meridia Prods. Liab. Lit. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (noting a failure to discuss the elements of a cause of action and failure to cite legal authority)). Although predicated on case law from another circuit, the following excerpt has resonance here:

> The motion cites nothing – not one judicial decision, not one treatise or other secondary source.
>
> This will not do.  Parties moving for relief must provide a legal argument warranting that relief, and the argument must be bolstered by relevant legal authority.  [Movant] has evidently decided to let the court do his legal research for him.  But a court does not serve as the parties' research assistant, doing the work they cannot be bothered to do: it is emphatically not [the] court's responsibility to research and construct the parties arguments.  And that is especially true when parties have counsel, as [movant] has here.
>
> . . . So when a party moves to dismiss a complaint and cites no legal authority, the court can deny the motion for that reason alone.

*In re Khan*, No. 20B17315, 2021 WL 5121894, at *1 (Bankr. N.D. Ill. Sept. 7, 2021) (Seventh Circuit citations and quotations omitted); *see also Loucks v. Fieldstone Mortg. Co.*, No. 1:07-CV-492, 2007 WL 2814866, at *1 (W.D. Mich. Sept. 25, 2007); *Cross v. MHM Corr. Servs., Inc.*, No. 4:11-CV-1544 FRB, 2012 WL 4092415, at *1 (E.D. Mo. Sept. 17, 2012).

Clunk's Rule 12(c) motion is bereft of legal authority.  The Court could have denied it summarily.  The Court has nevertheless endeavored to review the pleadings, exhibits thereto, and relevant law for the purpose of evaluating Clunk's motion on the legal merits.

### C.  Clunk Asserts Matters Contrary to, or Not Supported by, the Pleadings

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party *must be taken as true*…."  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted; emphasis added).  Clunk's motion fails to follow this cardinal rule.

#### 1.  The Pleadings Show a Material Fact Dispute as to Whether Ruckman Timely Returned a Loan Modification Agreement

Ruckman alleges that she executed the loan modification agreement and mailed it to PHH in December 2020.  (Doc. No. 1 at ¶ 42.)  But PHH and Clunk allege that Ruckman did not return the loan modification agreement by December 30, 2020.  (Doc. No. 10 at ¶ 42; Doc. No.

9

12 at ¶ 42.)

That dispute turns out to be important because, *inter alia*, Defendants argue that the reason Ruckman's payment(s) in February 2021 were rejected was because the underlying loan modification papers had not timely been returned. PHH and Clunk apparently will contend that there was no unlawful 'double tracking' in violation of RESPA and Regulation X because they say Ruckman purportedly did not timely return the loan modification agreement.

But before Defendants aired their pleadings, defenses, and motions, Ruckman alleged from the outset that she *did* mail back the loan modification papers in December 2020. (Doc. No. 1 at ¶ 42; Doc. No. 1-2 at PageID# 48 ¶ 14.) The pleadings do not establish otherwise, and Clunk's Rule 12(c) motion must be denied in light of this material dispute. Put another way, the motion fights a key factual premise set forth in the complaint – in contravention of the rule that a Rule 12 motion assumes the truth of fact allegations in a complaint.

### 2. The Pleadings Do Not Show that Clunk was Directed by PHH

The motion's major point is that "Ruckman's own complaint and exhibits show that statements made by Clunk were at the direction of PHH." (Doc. No. 22 at PageID# 279.) To the contrary, the Complaint indicates that the Clunk law firm was representing HSBC:

> 8. Defendant Clunk, Hoose Co., L.P.A. ("Defendant" or "Clunk") is a law firm located in Stow, OH, *which was retained by HSBC* to initiate foreclosure proceedings against Ruckman to attempt to collect a debt allegedly owed on the Loan in the Court of Common Pleas for Richland County, Ohio, Case No. 2020 CV 0169 (the "Foreclosure").
>
> 9. *PHH is not a party* to the Foreclosure.

(Doc. No. 1 at ¶¶ 8-9 (emphases added).) PHH and Clunk admitted these facts. (Doc. No. 10 at ¶¶ 8-9; Doc. No. 12 at ¶¶ 8-9.) The Complaint alleges that HSBC (not PHH) filed a summary judgment motion through its counsel Clunk. (Doc. No. 1 at ¶¶ 61, 63)

10

The motion argues that Clunk employee "Bennett consistently refers to all information being sent to, and coming from, PHH." (Doc. No. 22 at PageID# 279.) But Bennett's emails are not so straightforward. Repeatedly Bennett refers to "our client," which the Complaint indicates may be a reference to HSBC (not PHH). (*See* Doc. No. 1 at ¶¶ 8-9.)

Even where the Complaint refers to loan modification, Clunk is paired with HSBC, not PHH. (*See, e.g.,* Doc. No. 1 at ¶ 44.) PHH and Clunk admitted that fact and did not affirmatively allege that Clunk was acting at PHH's behest. (*See* Doc. No. 10 at ¶ 44; Doc. No. 12 at ¶ 44.) The Complaint alleges that Ms. Bennett was acting on behalf of Clunk, and there is no additional or contrary allegation that she was acting on behalf of PHH. (*See* Doc. No. 1 at ¶¶ 46-47.)

In Count II against Clunk, there is no allegation that Clunk was speaking for or acting on behalf of PHH. (*See* Doc. No. 1 at ¶¶ 87-95.) In the Defendants' respective answers to Count II, they added no affirmative allegation that Clunk was acting on behalf of PHH. (*See* Doc. No. 10 at ¶¶ 87-95; Doc. No. 12 at ¶¶ 87-95.) Clunk also did not plead facts in the affirmative defenses to support the factual or legal contention that Clunk's liability would be precluded by virtue of having acted at PHH's behest. (*See* Doc. No. 10 at PageID# 177-78.)

While it may be reasonable to infer that PHH and Clunk were in communication with one another – or acted in concert – there is no factual basis to infer that PHH directed or controlled the activities or communications of Clunk or Clunk's employee Diane Bennett. The foundation of Clunk's motion, then, is not shown on the face of the pleadings.

### 3. The Complaint Alleges that Clunk Made Misrepresentations and Misstatements

The motion asserts that "Clunk did not make misstatements about the status of Ruckman's loan either through its submission of the motion for summary judgment or in

11

communications with state court." (Doc. No. 22 at PageID# 279.) "Nothing in Ruckman's complaint shows that Clunk knowingly misrepresented the status of her loan to the court or to Ruckman, herself," the motion contends. (*Id.* at PageID# 281.) The Complaint alleges that Clunk had actual knowledge and nonetheless *did* make misstatements and misrepresentations about the Home Loan:

> 90. Clunk's actions in moving for summary judgment in the Foreclosure despite having actual knowledge that such actions constitute violations of 12 C.F.R. § 1024.41(g) and in making misstatements regarding the status of Ruckman's payments under the Modification, constitute the use of false representations or deceptive means to collect or attempt to collect on the Loan. 15 U.S.C. § 1692e(10).
>
> 91. Clunk's actions in filing the motion for summary judgment in the Foreclosure despite having actual knowledge that such actions constitute violations of 12 C.F.R. § 1024.41(g), constitute the use of unfair or unconscionable means to collect or attempt to collect on the Loan. 15 U.S.C. § 1692f.
>
> 92. Clunk's actions in moving for summary judgment in the Foreclosure despite having actual knowledge that such actions constitute violations of 12 C.F.R. § 1024.41(g) and in making misstatements and misrepresentations regarding the status of Ruckman's payments under the Modification, constitute the use of conduct, the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt of unfair or unconscionable means to collect or attempt to collect on the Loan. 15 U.S.C. § 1692d.

(Doc. No. 1 at ¶¶ 90-92.) PHH and Clunk denied those allegations, but those answers do not include affirmative matter that would somehow disprove or rule out Ruckman's allegations. (*See* Doc. No. 10 at ¶¶ 90-92; Doc. No. 12 at ¶¶ 90-92.)

At this stage, there is plainly a dispute on a material question of fact, *i.e.*, whether Clunk made misrepresentations or misstatements.

### 4. The Receipts Attached to the Complaint Show Payments of Sufficient Amount to Cure the Default, Contrary to the Motion

Clunk's motion asserts that Ruckman's "payments were not enough to reinstate the loan and cure the default…." (Doc. No. 22 at PageID# 280.) The Court rejects this assertion for a few reasons. First, this assertion contains no citation to the pleadings or to the record. Clunk's

12

motion contains an array of fact assertions at PageID# 280 lacking citations to particular paragraphs in the pleadings or precise page numbers from exhibits. Second, this assertion is contrary to the Complaint at, *inter alia,* paragraphs 49, 53, 57, and 58.

Finally, the receipts and amounts in the exhibits to the Complaint belie Clunk's argument that the payments made by Ruckman were insufficient in amount to reinstate the loan or cure the default. All parties agree that the December 2020 and January 2021 payments were timely made and accepted by PHH. (Doc. No. 1 at ¶ 44; Doc. No. 10 at ¶ 44; Doc. No. 12 at ¶ 44.) According to Clunk's representations to Ruckman, that left $873.93 as the total amount due for February and March 2021. (*See* Doc. No. 1-2 at Ex. G PageID# 81, Ex. K PageID# 94.) Ruckman's Complaint includes receipts showing two payments she made at Kroger supermarket in February 2021, each for $470, which together totaled $940. (Doc. No. 1-2 at Exs D, E, & F, PageID# 72-77.) Plainly, $940 exceeds the purported amount due of $873.93, which Bennett on behalf of Clunk repeatedly indicated was the amount needed to reinstate the loan and cure the default. (Doc. No. 1-2 at Ex. G PageID# 81, Ex. K PageID# 94.)

In sum, the motion fails to assert legal arguments predicated on the presumed truth of the allegations in the Complaint.

### 5. The Receipts Attached to the Complaint Show Timely Payments, Contrary to the Motion

Clunk's motion explicitly depends on denials in PHH's answer to the complaint, where PHH denies that Ruckman made timely payments. (*See* Doc. No. 22 at PageID# 280-281 (citing Doc. No. 12 at ¶¶ 43, 45, 52, & 58).) There are a few problems with this point.

First, neither PHH nor Clunk included in their pleadings anything that disproves, or even raises a question as to, the veracity of the payment receipts found in Document No. 1-2 at Exhibits C, D, E, and F (PageID# 70-77). Whatever Kroger or Defendants may have done *after*

payments were made by Ruckman is a matter yet to be sorted through. But from the face of the pleadings, there is no basis to infer that Ruckman failed to make payments in the amounts and on the dates reflected on the receipts attached to her Complaint.

Second, to the extent that Clunk is relying on PHH's denial of certain of Ruckman's allegations, then in those instances, the most that Clunk shows are *disputed* questions of fact. Such disputes militate *against* judgment under Rule 12(c) – not in favor of it.

Third, the content of PHH's answer does not quite match up with Clunk's description in its motion. Paragraph 45 of PHH's answer actually admits that Ruckman *did* make a payment, but PHH *chose to* reject that payment.[6] In paragraph 52 of its answer, "PHH further denies that the referenced receipts confirm receipt of payment by PHH." (Doc. No. 12 at ¶ 52.) This is not a denial that Ruckman timely paid; it is a denial that PHH actually received, or deigned to accept, her payment(s). In paragraph 43 of its answer, PHH repeats its assertion that Ruckman failed to return the loan modification agreement by a deadline. However, it is unclear whether PHH denies that Ruckman actually tendered the three payments listed in paragraph 43 on the dates and in the amounts indicated.

In any event, for present purposes the takeaway is straightforward: as to Ruckman's payments, proofs will be necessary because the pleadings do not yield undisputed facts.

### 6. The Pleadings Do Not Show Clunk's Purported 'Reasonable Reliance' on PHH

As discussed *supra*, the pleadings do not show that PHH controlled or directed Clunk. The pleadings also do not show that "Clunk reasonably and appropriately relied upon PHH to review receipts provided by Ruckman…." (Doc. No. 22 at PageID# 281.) There are not

---

[6] As alluded to *supra*, PHH and Clunk quickly changed that tune and several times in March 2021 pressed Ruckman to make payment(s).

allegations or pleading exhibits to reveal all that occurred behind the scenes among PHH, Clunk, and Bennett during the times and events at issue. Bennett's cursory references or allusions to communicating with PHH – a few of which are sprinkled in Bennett's communications to Ruckman – are not enough from which to infer 'reasonable reliance' as the motion describes. Even assuming *arguendo* that Clunk might have reasonably relied on PHH, the only route for the Court to discern that fact would lay outside the pleadings, *i.e.*, would have to be shown by evidence.

### 7. The Summary Judgment Motion from the State Court Foreclosure Was Not Made Part of the Federal Pleadings

Clunk's motion does not merely eschew record citations; it also slips in material not cognizable in the procedural posture that Clunk itself elected to pursue. Clunk's motion refers to the content of the summary judgment motion papers Clunk filed in the state court foreclosure action, including an affidavit purportedly signed by PHH. (*See* Doc. No. 22 at PageID# 280.)

Although a federal court may take judicial notice of state court records, that is not possible in this situation. Clunk did not provide a copy of its state court motion papers. Clunk did not ask the Court to take judicial notice of those. Clunk did not cite to an item on the state court docket. Clunk did not cite internally within any such document, *i.e.*, to point out where one might look to find the items described on PageID# 280 of Clunk's Rule 12(c) motion.

It was error, therefore, to refer to and rely on material that Clunk did not properly cite or proffer for judicial notice. *See generally Briggs v. Hogan*, No. 21-5581, 2022 WL 985825, at *3 (6th Cir. Apr. 1, 2022).

### D. The Complaint States a Claim Cognizable Under the FDCPA

The motion is not precise as to why Clunk is entitled to judgment as a matter of law on the FDCPA claim. Rather than summarily deny the motion, the Court examines the merits.

"The FDCPA is an extraordinarily broad statute, crafted in response to what Congress perceived to be a widespread problem in debt collection practices, and must be construed accordingly." *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020). "To that end, the Act imposes various procedural and substantive obligations on debt collectors." *Sheriff v. Gillie*, 578 U.S. 317, 319-20 (2016).

The basic elements of a FDCPA claim are as follows: (1) plaintiff is a 'consumer' as defined by the statute; (2) the debt arose out of transactions which are primarily for personal, family or household purposes; (3) defendant is a 'debt collector' as defined by the statute; and (4) defendant violated the prohibition(s) set forth in § 1692e. *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015); *Valhalla Inv. Properties, LLC v. 502, LLC,* 456 F.Supp.3d 939, 945-46 (M.D. Tenn.), *aff'd*, 832 F. App'x 413 (6th Cir. 2020).

The Complaint pleads these elements. (*See* Doc. No. 1 at ¶¶ 86-95.)

### 1. The First Two Elements of an FDCPA Claim are Plainly Satisfied

Ruckman is plainly a consumer, and the Home Loan explicitly was used to purchase her residence. (Doc. No. 1 at ¶¶ 2-4, 87-88; Doc. No. 10 at ¶¶ 2, 4; Doc. No. 12 at ¶¶ 2-4.) The first two elements of a FDCPA claim are adequately pled.

### 2. Clunk's Denial That It Is a "Debt Collector" as Defined in the FDCPA Precludes Judgment on the Pleadings

The Complaint alleges that Clunk is a debt collector as defined by the FDCPA. (Doc. No. 1 at ¶¶ 24, 89.) Clunk admits that it was retained by a nationwide bank (HSBC) "to initiate foreclosure proceedings" in Ohio and "to attempt to collect a debt allegedly owed on the [Home] Loan." (*Compare* Doc. No. 1 at ¶ 8 *with* Doc. No. 10 at ¶ 8.) Clunk does not dispute the attachments to the Complaint showing that Clunk's employee Bennett urged Ruckman to make payments on her residential mortgage debt. (*E.g.,* Doc. No. 1-2 at PageID# 79, 81, 84, 92, &

16

94.)

Yet Clunk twice denies that it is a debt collector. (Doc. No. 10 at ¶¶ 24, 89.) Indeed, Clunk pleads an affirmative defense that it was not debt collector under the FDCPA. (*Id.* at ¶ 121.)

The denial and defense are surprising in a Rule 12(c) inquiry because documents the Court may consider include the following language, which appears below the Clunk logo in Bennett's email to Ruckman: "PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY AND ALL INFORMATION PROVIDED BY YOU WILL BE USED FOR THAT PURPOSE." (Doc. No. 1-2 at PageID# 80, 107.) Elsewhere in Ms. Bennett's emails on behalf of Clunk is a confidentiality notice that reads in pertinent part: "Federal and State Law requires that we inform you that this firm is a debt collector attempting to collect a debt and any information we obtain may be used for that purpose." (*Id.* at PageID# 80, 92, & 95.)[7]

The Court finds that there is a dispute of material fact, namely, whether Clunk was a debt collector within the definition of such under the FDCPA. In light of this fact dispute, judgment on the pleadings is not appropriate.

### 3. It is Plausible Clunk May Have Committed an Act Proscribed by the FDCPA

Ruckman asserts that fourth element is met because Clunk made a materially false, deceptive, or misleading representation as prohibited by § 1692e. For three reasons, the Court

---

[7] Although the Court does not consider summary judgment evidence for purposes of resolving this Rule 12(c) motion, the Court points out that Clunk employee Bennett executed an affidavit, which has been filed with this Court by PHH. That affidavit includes emails from Clunk containing the same debt collector self-identification language quoted, *supra.* (*See* Doc. No. 40 at PageID# 453, 457.)

cannot conclude that Ruckman has inadequately alleged this element. Clunk therefore is not entitled to judgment on Ruckman's FDCPA claim.

First: "Under the FDCPA, a plaintiff does not need to prove knowledge or intent to establish liability…." *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015). In *Jerman v. Carlisle, McNellie, Rini, Kramer, & Ulrich L.P.A.*, 559 U.S. 573 (2010), the Supreme Court held that mistakes of law regarding the FDCPA itself constitute violations of the Act for which a debt-collector attorney may not invoke a bona fide error defense. *Id*. at 604-05.

Clunk's motion argues that the Complaint fails to show that Clunk "knowingly misrepresented" the status of the Home Loan to the state court or to Ruckman. (Doc. No. 22 at PageID# 281.) The motion is predicated on an erroneous legal theory, *i.e.,* that only a *knowing* misrepresentation would result in a violation of the FDCPA. (*See id.*) Because the motion relies on a faulty legal premise, the motion will be denied.

Second: Clunk's motion fails to review in detail the email communications between Bennett and Ruckman, which are attached to the Complaint. (*See* Doc. No. 1-2.) More significantly, the motion fails to show the absence of false or misleading statements in those communications.

Instead, Clunk offers only a short, conclusory 'run through' of the facts – never specifically isolating and explaining the truth of its own communications. (*See* Doc. No. 22 at PageID# 277.) Clunk's only specific references to the content of Bennett's communications are offered for the premise that Clunk was just acting at the direction of or passing along information for PHH. (*See id.* at PageID# 279-280.) This latter point would not necessarily insulate Clunk from FDCPA liability. If Clunk made false or misleading statements to Ruckman or others in

the course of collection efforts on the Home Loan, then Clunk may not find legal shelter *even assuming* Clunk proves that it acted in coordination with or under the direction of PHH.

In any event, the motion does not point out with precision the absence of any disputed questions of material fact. "The trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact." *Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 153 (6th Cir. 2005).

Third: Clunk never argues or shows that its communications would not be actionable under the pertinent legal test. In order for a representation to be material under the FDCPA, it must be likely to influence the "least sophisticated" debtor's decision on whether or not to pay a debt. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012). The motion never discusses or applies this test to the communications alleged in the Complaint or those attached at Exhibit 2 thereto.

In the present posture, the Court cannot conclude that Clunk is entitled to judgment as a matter of law under 15 U.S.C. § 1692e. As a result, the Rule 12(c) motion is denied.

### III. Conclusion

For the reasons above, Clunk's motion for judgment on the pleadings, (Doc. No. 22), is DENIED.

**IT IS SO ORDERED.**

Date: October 19, 2022

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE