# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA L. RUCKMAN, | : | Case No.: 5:21-cv-00923-JRA |
| | : | |
| Plaintiff, | : | Judge John R. Adams |
| | : | |
| v. | : | **PLAINTIFF ANGELA RUCKMAN'S** |
| | : | **RESPONSES TO DISCOVERY** |
| PHH MORTGAGE CORPORATION d/b/a | : | **DIRECTED TO PLAINTIFF** |
| PHH MORTGAGE SERVICING, *et al.*, | : | **ANGELA RUCKMAN** |
| | : | |
| Defendants. | : | |

Plaintiff Angela L. Ruckman ("Plaintiff"), through counsel, pursuant to Fed. R. Civ. P. 26, 33, 34, and 36, hereby responds to the Discovery Requests (the "Requests") propounded by Defendant PHH Mortgage Corporation, d/b/a PHH Mortgage Servicing ("PHH").

### GENERAL OBJECTIONS

1.     Plaintiff objects to the Requests, including any and all definitions and instructions, to the extent they seek to impose obligations in addition to, or inconsistent with, the Federal Rules of Civil Procedure. Plaintiff will respond to the requests in accordance with the obligations imposed by the applicable rules and law.

2.     Plaintiff objects to the Requests to the extent they seek information protected from disclosure by the attorney client privilege, the work-product doctrine, or any other applicable privileges, protections, or immunities from discovery. If, and to the extent Plaintiff inadvertently discloses in the litigation protected information, such inadvertent disclosure is not intended and does not waive any privilege, protection, or immunity.

3.      Plaintiff objects to the Requests to the extent they are overly broad, vague, unduly burdensome, or seek a narrative response relating to a given subject. Plaintiff objects to providing responses of such breadth on the grounds of undue burden.

4.      Plaintiff objects to the interrogatories to the extent they seek information that is not relevant, not reasonably calculated to lead to relevant information, will not lead to the discovery of admissible evidence, or not proportional to the needs of the case.

5.      Plaintiff objects to the interrogatories to the extent they seek legal conclusions or would require Plaintiff to reach a legal conclusion in order to prepare a response.

6.      Pursuant to Fed. R. Civ. P. 26, the Requests are deemed to be continuous in nature until the date of the trial. Plaintiff's investigation of this matter is ongoing, and Plaintiff reserves the right to amend, supplement, or alter the response to any interrogatory at any time as allowed by applicable law.

### INSTRUCTIONS FOR ANSWERING

1. You should provide all information which is in your possession or control or within the possession and control of your attorneys, investigators, agents, employees or other representatives of you or your attorney.

2. Where an Interrogatory calls for an answer in more than one part, each part should be separated in the answer so that the answer is clearly understood.

3. You are reminded that all answers must be made separately and fully and that an incomplete or evasive answer is a failure to answer.

4. You are under a continuing duty to seasonably supplement your responses with respect to any question, pursuant to Federal Rule of Civil Procedure 26(E), if you learn that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

### DEFINITIONS

1. The word "Plaintiff" "you," and/or "your" shall mean Angela Ruckman.

2. The word "person(s)" shall mean all individuals and entities, including, without limiting the generality of the foregoing, all individuals, sole partnerships, associations, companies, partnerships, joint ventures, corporations, trusts and estates.

3. "Identify" with respect to a person shall mean to provide the name, last known address, and last known telephone number for such person.

4. "Real Property" means the real property and improvements located at 837 South Main Street, Mansfield, OH 44907.

## FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1

Identify the person(s) answering these Interrogatories and include the relationship, if any, to Plaintiff.

**ANSWER:**

Angela L. Ruckman, who can be contacted through counsel Dann Law, 15000 Madison Avenue, Lakewood, OH 44107. Ms. Ruckman is the Plaintiff in this matter and is a party to whom these interrogatories are directed. Her counsel at Dann Law assisted Ms. Ruckman in the preparation of her responses.

### INTERROGATORY NO. 2

Identify all communications (whether written or oral, and including but not limited to the phone calls, faxes and emails referenced in your Complaint) concerning any topic that is relevant to the subject matter of this case and/or the claims and defenses raised herein, which you have had with representatives of or persons affiliated with or employed by Defendant, and for each such communication, provide the name (or other identifying information if name unknown) for the person with whom the communication was had, the date and type of communication, and the substance of the communication, including but not limited to the communications referenced in your Complaint, including the claim for emotional distress.

**ANSWER:**

Plaintiff objects to this request because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, unduly burdensome, oppressive, and not proportional to the needs of the case.

Plaintiff objects to this request because it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH

already has possession, custody, control, and/or access to the requested information and/or documents.

Signing as to objection:

*/s/ Daniel M. Solar*
_____
Daniel M. Solar (0085632)

Without waiving such objections, see Plaintiff's document production.

## INTERROGATORY NO. 3

State any and all facts that support your allegations that you have suffered emotional distress, as a result of the conduct alleged in the Complaint.

**ANSWER:**

Plaintiff objects to this request because it seeks a narrative better suited for Plaintiff's testimony at deposition.

Signing as to objection:

*/s/ Daniel M. Solar*
_____
Daniel M. Solar (0085632)

Without waiving such objection, see Plaintiff's document production. Further, Plaintiff provides the following narrative:

181 steps or 452 feet is what separated my daughter and I for a period of time from September of 2012 to February 2013. Not by choice. 181 steps from my back door to the inside of her building to her apartment door.  At one point seemed so close.

 She was diagnosed 7/2/2012 unexpectedly, out of nowhere when she was 18 with one of the rarest forms of Leukemia. While in the hospital for a mandatory stay to begin induction treatment for a clinical trial, I had to find her a safe and sterile place to live, as it's "her" body producing the cancer. Together we had rescue birds. She could not return to our home, due to their dust and bathroom habits. I began for the first time having panic attacks. Untreated, officially undiagnosed, but I knew, and had to be strong for her and had to keep it hidden the best I could from her. Crying and screaming in parking garages were common for cancer

mom's. Security guards carried lots of Kleenex for us, and would give gestures to clean your face when needed before going back in. Knowing she would be released in a few weeks, I was scrambling, one morning while standing at my kitchen window it dawned on me, cause I was staring at the apartments behind my house. I called the owner and she said she would have an apartment in a week or 2. I rushed to the hospital, the doctors approved the idea, my daughter was thrilled to be close to home. I rushed home and called the landlord back, made arrangements and then signed the lease. I had to watch my daughter quit her job because of Leukemia. Then had to watch her call her college and put her classes on hold because of Leukemia. Basically watched her put her life on hold. Now I have to watch her shop for her first apartment from a hospital bed on a cancer floor with a prepaid visa card. Everything from spoons to a couch and everything in between. Nothing like I ever pictured for her. I always pictured great things for her, as she was a rainbow baby as they call it these days. She was a high risk pregnancy. A pregnancy that they didn't think that I would ever conceive. Yet here she was.

Prior to her getting sick she had been staying with my mom briefly as she was a typical teenager with the I know everything about life and learned she didn't when things didn't go well with the boyfriend. So instead of coming home to I told you so, she was at my mom's. When she got sick though, it was me she needed. Wanted. Asked for. It was I that was there. She fought hard. I watched her endure poisons after poisons. I watched her hair fall out. Come in. Change colors. Then repeat. I watched her gain weight. Lose weight and repeat. Be admitted. Blood transfusions. Platelet transfusions. Bone marrow testing. Spinal chemo procedures. PICC line placement every 4-6 weeks as her body rejected a port placement 2x. I watched her go through hell. Inside I'm going through hell. Panic attacks along with her, but I'm mom so I have to be stronger. Eventually she got discharged and got to come home. 181 steps from me. She came in, cried, loved her apartment. Was there 45min, then I had to rush her back to Columbus as her PICC line started leaking when I flushed it. Something I would have to do everyday for her. She had to be admitted to have it changed and cultured to ensure no infection. A few days later she returned home, 181 steps away. Every day I could stand at my kitchen window and see her living room window. At night if I was up, I could see if she was up, because I could see her living room or bedroom light on. I used to text or call and tell her to go to bed. In the evenings, it was nothing to just have my backdoor swing open and she would come bouncing in with her bald head or wearing one of her silly hats, a face mask on, a disposable gown, sometimes a Kroger bag and raid my fridge or cabinets. Sometimes just to see the birds for her daily limit of 15 mins if her ANC levels were high enough. If her levels were low, the birds would Skype with her and dance. She massively decorated for all holidays. That Christmas of 2012 she had snuck over while I was at work and took some of the Christmas decorations for her apartment to go with her first Christmas tree. As sick as she was she tried to put a few lights up here at the house even though I protested. I now wish I took pictures, or helped her put

them all up, even though this was her thing for years. Her rule was do not touch the decorations! But I didn't know this was the last Christmas. The doctors seemed confident rarest but easiest to treat. When it snowed, I made sure to snowblow and keep those 181steps clear for her to walk. She had ups and downs with treatment. Never knew what to expect. One day at a time. Then 2/6/2013 she was finally 3 months negative for Leukemia. The fight isn't over, but a huge battle won, faced another 2 1/2 yes of treatment. Knew Leukemia could return any day as it's her body that produces it. Her life can go back to some normal. She can go back to college part time. She will begin the next phase of chemo in a week. Planned a celebration party for the weekend. The next day when she didn't answer her phone most of the day, I went to her apartment and I found her deceased. Treatment killed her.

We may have had a few issues thanks to a boyfriend that quickly turned ex, and teenage growing pains. But the last 8 months of her life, we were closer than ever, inseparable, that was my best friend. I was eventually diagnosed with PTSD, Depression and Anxiety.

My house was our home. 181 steps briefly separated us. But she knew where home always was from 2005 on when we moved back from Michigan. This is where she recovered from her first surgery. This is where she had her first boyfriend. Parked her first car. Dressed up for every homecoming and prom. Planted every flowerbed. Buried every pet. Had yearly Halloween bashes. Fought with me every day on cleaning her room. Drove me crazy on insisting there needed to be 6 different kinds of shampoo and body washes in the shower at all times. Learned how to drive and almost hit the garage and house on several occasions. This is where she decorated the house for every holiday and one year got into a Christmas light war with a new neighbor and it resulted in her dragging out the Halloween lights to add more. The neighbor admitted defeat when she did that. So many more memories. This house is all I have left. It's all I have left of her, it contains our memories. When she passed, her belongings were moved and stored here.

During the process of the unknowing outcome with the modification. Being Jan 29th 2021 it was said everything was being finalized to magistrate Clark. Then come March a payment was rejected, then having to hire an attorney. Everyday I had to pass her flower gardens I have maintained, worried will this spring be the last time I see them bloom. Worried who will take the birds who have behaviors from being abused. Nobody wanted them. That's why we started taking them to begin with. Her little rhubarb patch planted so I would bake her pies. Where do I put her stuff I haven't touched since she passed. Plus my stuff. My grandsons stuff. This is where his room is now when he comes. How do I explain this to him? How will this affect work?  How do I afford to move? I've been making my payments so I have money to spare. How do we go from it's a done deal to now foreclosure status? Part of PTSD, Depression and Anxiety is you isolate and stay to yourself. So you keep symptoms low. I don't have anyone to help. All alone. I

have severe health issues going on. No extra money. Now might lose my house that was said in court in January that I've done everything I need to do, but now the mortgage company is changing their mind. Mixed with my diagnosis, combined with the last connection to my deceased daughter, I was extremely mentally, and emotionally overwhelmed from learning the first payment was rejected in March until August when my lawyer got the judgment dismissed. If it wasn't for the strong connect of the house to my daughter I may have just given up the house. But that's why I fought so hard to keep it. There is still an after effect of damage. It's not like an instant sigh of relief it's over. With my diagnosis it's something that stays and is a process that has to be worked through in my brain. As we process safety, relief, comfort and things of this stressful nature differently. It takes time, faith and patience. Someday we come to realize the damage is done and is now over, we are safe and we can finally heal. I hope my time is near.

Physically, mentally and emotionally overall, I became more isolated. My depression became worse. I stopped going to church. Lost my faith in God and humanity. I became less attentive with upkeep around my home. Repairs and upgrades I no longer had interest in. I didn't attend to the flower beds as normal due to the increased depression. My stress level and anxiety was and still is worse. The pets/rescues who already had behaviors picked up on it, which caused their behaviors to be worse. I no longer was the fake it til you make it provider for my clients. Had more of the " hurry up and get my hours in with each client and due the bare minimum". We're as before I went out of my way and would eat hours and mileage to make sure needs were met. I didn't spend much time with my grandson anymore for fear of breaking down in front of him and having to explain I was losing my home. My anxiety was now worse. I only would go to places on my own where I knew certain staff would be working. I no longer was working as much as I could because of my anxiety and depression. My ulcer became worse at times when my anxiety and stress levels were high. Then I didn't want to eat. I have low blood sugar, so I have to eat, so there were days it hurt to eat. Sleeping became almost impossible. I was only sleeping 2-3 hours a night. I started having severe headaches from stress and anxiety. I cried a lot. Got angry a lot. Which neither is good for anxiety and depression. My medications were changed several times with no success. Eventually it has now led to my overall health declining. It is true, stress can make you sick. Long term damage this has hurt me financially. Has damaged my credit. Which in turn affects my mental and emotional well being.

## INTERROGATORY NO. 4

State the name and address of each and every person you will or may call as an expert

witness at the trial of this case and for each such person, state:

(A)    Their area of purported expertise.

(B)    All information or facts provided to each such expert, including identification of each photograph, video tape, drawing, specification, catalog, brochure, report, diagram or any other document used or expected to be used by each such expert witness to support their respective opinions, findings and/or conclusions.

(C)    All findings, opinions and/or conclusions reached by each such expert witness.

**ANSWER:**

Plaintiff has not identified any such expert to date. Plaintiff reserves the right to supplement this response.

## INTERROGATORY NO. 5

Identify each and every person known by you or your attorney who you believe does or may possess any discoverable information or knowledge whatsoever that is or may be relevant to the subject matter of this lawsuit and/or the claims and defenses raised herein, and for each such person, state their knowledge and/or discoverable information.

**ANSWER:**

Angela L. Ruckman, who can be contacted through counsel Dann Law, 15000 Madison Avenue, Lakewood, OH 44107. Ms. Ruckman is the Plaintiff in this matter and is a party to whom these interrogatories are directed. Ms. Ruckman has personal knowledge as to the facts of this matter including damages she has suffered.

Representative(s) of PHH, to be identified through discovery, who directly worked on the Loan in any capacity related to the allegations contained in the Complaint, or representative(s) who have adequate knowledge of such representatives' actions. The foregoing includes, but is not limited to individuals who performed work, or have knowledge as to such work, in regard to the

Loan, related to:
1. The servicing file and payment history on the Loan;
2. The receipt, drafting, application, crediting, or handling otherwise, of payments issued to PHH by Plaintiff;
3. The application or handling otherwise, of fees and charges made to the Loan;
4. PHH's standards, policies, and procedures relative to evaluating and responding to loss mitigation applications and appeals thereof from borrowers, including Plaintiff, pursuant to investor requirements and guidelines, including those for Plaintiff's loan or the evaluation of Plaintiff's loan for loss mitigation options;
5. PHH's communications with Plaintiff concerning the evaluation of Plaintiff's loan for loss mitigation options or the evaluation of Plaintiff's loan for loss mitigation options
6. PHH's communications with any third parties concerning the evaluation of Plaintiff's loan for loss mitigation options including, but not limited to non-party HSBC Bank USA, National Association, as Trustee for Ownit Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-5 ("HSBC"); and,
7. PHH's computer system, database, and software used in conjunction with the receipt, review, drafting, and mailing of responses to Plaintiff's loss mitigation submissions or the evaluation of Plaintiff's loan for loss mitigation options otherwise;
8. PHH's communications with any third parties concerning the fees and charges made to the Loan;
9. PHH's communications with Plaintiff concerning the fees and charges made to the Loan;
10. Making and/or approving decisions related to the initiation and prosecution of any foreclosure action related to the mortgage loan at issue; and,
11. PHH's communications with any third parties concerning the fees and charges made to the Loan including but not limited to any outside counsel or HSBC.

Representative(s) of Clunk, Hoose Co., LPA ("Clunk"), to be identified through discovery, who directly worked on Plaintiff's mortgage loan account in any capacity related to the allegations contained in the Complaint, or representatives who have adequate knowledge of such representatives' actions. The foregoing includes, but is not limited to individuals who performed work, or have knowledge as to such work, in regard to the Loan related to:
1. Any communications between PHH and HSBC or any other third-party concerning loss mitigation efforts for the Plaintiff's loan at issue in the Complaint;
2. The servicing file and payment history on the Loan;
3. Clunk's communications with Plaintiff or any third party concerning the receipt, drafting, application, crediting, or handling otherwise, of payments issued to PHH by Plaintiff;
4. Clunk's communications with any third parties concerning fees and charges made to the Loan;
5. Clunk's communications with Plaintiff concerning the fees and charges made to the Loan;
6. Clunk's communications with Plaintiff concerning the evaluation of Plaintiff's loan for loss mitigation options or the evaluation of Plaintiff's loan for loss mitigation options
7. Clunk's communications with any third parties concerning the evaluation of Plaintiff's loan for loss mitigation options including, but not limited to PHH and HSBC; and,

8. Clunk's policies and procedures to ensure and maintain compliance with the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA).

Taryn Allied, a personal friend of Ms. Ruckman with whom Ms. Ruckman has discussed the facts and damages of this matter on occasion.

Unknown employee of Park National Bank, formerly Richland Bank, who notarized permanent modification in December 2020.

Magistrate Andrea Clark of the Richland County Court of Common Pleas, who has knowledge of the foreclosure filings and representations at issue in this case.

## INTERROGATORY NO. 6

Identify each and every way you have been damaged by Defendant's alleged wrongful actions set forth in your Complaint, and state the amount of damages you are seeking for each and every item of alleged damages and causes of action, and the underlying bases for the damages amounts.

**ANSWER:**

Plaintiff objects to this request because it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objection, see Plaintiff's document production. See also, Plaintiff's response to Interrogatory No. 3. Furthermore, Plaintiff seeks statutory damages for each and every alleged statutory violation, as well as actual damages resulting from such, and attorneys' fees and costs in an amount yet to be specifically determined. Plaintiff is still in the process of itemizing actual damages and will supplement pursuant to Court Order. Damages to date include, but are not limited to:

1. Statutory damages from PHH for each violation of the applicable provisions of Regulation X of the Real Estate Settlement Procedures Act (RESPA), as claimed in the Complaint, in the amount of Two Thousand Dollars ($2,000.00) per alleged violation.

Plaintiff has alleged by and through the Complaint that PHH committed at least one (1) violation of Regulation X of RESPA, specifically, of 12 C.F.R. § 1024.41(g) and 12 U.S.C. §§ 2605(k) as alleged by and through Count One of the Complaint;

2. Punitive damages from PHH pursuant to R.C. 1322.52 for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq*. (RMLA) as alleged by and through Count Three of the Complaint.

3. Actual damages in an amount yet to be specifically determined, including, but not limited to:

   a. Due to the delay in the implementation of the modification at issue (the "Modification"), Plaintiff was caused to incur improper fees and charges imposed on the loan at issue (the "Loan") including late fees as well as other similar such fees including other default servicing related fees for which Plaintiff is personally obligated or which otherwise negatively impacts any equity in her home to which she is entitled;

   b. Loss of time and money for continued defense of the related foreclosure which would have been dismissed much sooner but for PHH's actions in mishandling the loss mitigation processes concerning the Loan in violation of RESPA and Regulation X and mortgage servicing guidelines and otherwise misrepresenting the status of the Loan and the amounts due thereunder;

   c. Legal fees, costs, and expenses incurred in defense of the foreclosure action field in the Richland County Court of Common Pleas, Case No. 2020 CV 0169 (the "Foreclosure") since PHH's wrongful conduct including the preparation of and filing of motions in defense of the motion for summary judgment and in attempts to have the Court enforce the Modification—such fees total $21,872.50 and expenses total $179.42; and,

   d. Severe emotional distress driven by PHH's actions and by the tangible fear that PHH's refusal to properly handle the loss mitigation process related to the Loan will result in the imminent loss of her home to foreclosure sale, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress above and beyond the emotional distress caused by the Foreclosure from which she was suffering prior to the conduct alleged in this complaint.

**INTERROGATORY NO. 7**

Identify all medical providers or providers of psychological/mental health services who you have seen or consulted with from 2015 to present and identify any of such providers from whom you received treatment for any of your claims for damage, including emotional distress.

**ANSWER**:

Plaintiff has sought such treatment from the following providers:

1. Providers affiliated with OhioHealth:
   a. Dr. N. Mangat
   b. Dr. C. Molina Arriola
   c. Dr. U. Pagedar

As of November 3, 2021, Plaintiff has also sought counseling from Holly Hutyera, LCSW, in Mansfield, Ohio.

Further, see Plaintiff's document production. Any medical records not provided therein have been requested and Plaintiff will supplement such production as applicable.

## INTERROGATORY NO. 8

Provide an itemized summary of all damages alleged in your Complaint.

**ANSWER:**

Plaintiff objects to this request as it is duplicative in nature and thereby unnecessary, unduly burdensome, and oppressive.

Signing as to objection:

*/s/ Daniel M. Solar*
_____

Daniel M. Solar (0085632)

Without waiving such objection, see Plaintiff's document production. See also, Plaintiff's responses to Interrogatory Nos. 3 and 6.

## INTERROGATORY NO. 9

When did you send your loan modification application to PHH as referenced in

Paragraph 33 of the Complaint?

**ANSWER:**

Plaintiff objects to this interrogatory as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objection, to the best of Plaintiff's recollection, Plaintiff states that she sent such loss mitigation application in July 2020 and knows that the application was complete on or about August 4, 2020.

## INTERROGATORY NO. 10

How many times have you applied for a loan modification with PHH and when did you submit complete applications?

**ANSWER:**

Plaintiff objects to this interrogatory as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objection, to the best of Plaintiff's recollection, Plaintiff sent one application—referenced in Interrogatory No. 9—in or around July 2020 and, to the best of Plaintiff's recollection, one other partial application, consisting of a request for mortgage assistance form in December 2020 after having submitted a signed and notarized copy of a permanent modification agreement to PHH.

## INTERROGATORY NO. 11

Please state all facts that serve as the basis for Count One of your Complaint in which you allege that PHH violated RESPA.

**ANSWER:**

Plaintiff objects to this interrogatory as it calls for a legal conclusion.

140383.06796/127004385v.6

Plaintiff objects to this interrogatory as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objections, see Plaintiff's Complaint.

## INTERROGATORY NO. 12

Please state all facts that serve as the basis for Count Three of your Complaint in which you allege that PHH violated the RMLA.

**ANSWER:**

Plaintiff objects to this interrogatory as it calls for a legal conclusion.

Plaintiff objects to this interrogatory as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objections, see Plaintiff's Complaint.

## INTERROGATORY NO. 13

Please provide the name(s) of the notary, contact information for the notary and location where the modification agreement was notarized for both the alleged December 2020

modification agreement (referenced in paragraph 14 of Ex. 2 to the Complaint) that you claim you sent to PHH and the modification agreement that you executed, had notarized on January 11, 2021 and then sent to PHH (the "Modification").

**ANSWER:**

Plaintiff objects to this interrogatory as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Plaintiff objects to this interrogatory as Plaintiff did not have any modification agreement notarized on January 11, 2021.

Without waiving such objections, the notary that notarized the modification agreement on January 12, 2021 was Jill Montgomery. At the time of such notarization, Ms. Montgomery was working for Park National Bank, previously Richland Bank, and to the best of Plaintiff's recollection, performed her notarial acts at the branch located at either 460 West Cook Road, Mansfield, OH 44907 or 50 Marion Avenue, Mansfield, OH 44903.

As to the modification notarized in December 2020, Plaintiff had her signature notarized atPark National Bank, previously Richland Bank, branch located at either 460 West Cook Road, Mansfield, OH 44907 or 50 Marion Avenue, Mansfield, OH 44903. Due to COVID-19 protocols, Plaintiff was not able to enter the interior of the bank branch to meet with the notary face-to-face and had the agreement notarized through the drive-thru.  Plaintiff is unable to identify the notary who notarized the modification. Plaintiff did not maintain a copy of the executed modification for her records and sent her only copy to PHH in December 2020 immediately upon having her signature notarized. Plaintiff made attempts to obtain the identity of the specific notary, but was informed that each notary working at the bank branches maintains their own individual notary journals and the bank has been experiencing higher than usual turnover.

## INTERROGATORY NO. 14

Please state the date that you sent the Modification that you executed on January 11, 2021 referenced in Interrogatory #13 above to PHH.

**ANSWER:**

Plaintiff objects to this interrogatory as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Plaintiff objects to this interrogatory as Plaintiff did not have any modification agreement notarized on January 12, 2021, but rather January 11, 2021.

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objections, after executing the Modification on or about January 12, 2021, to the best of Plaintiff's recollection, Plaintiff sent the Modification to PHH that same day via priority or overnight mail through the United States Postal Service.

## INTERROGATORY NO. 14

In your January 7, 2021, email to Diana Bennett attached as Exhibit A to the Affidavit of Diane Bennett filed June 4, 2021 in the foreclosure action in (Richland County, Ohio Court of Common Pleas Case Number 2020CV0169), you claim that you sent in "another request for a modification approximately 3 ½ weeks ago". What documents did you submit, when did you submit them, and to whom did you submit the documents. Please provide copies of all such documents.

**ANSWER:**

Plaintiff objects to this interrogatory as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Plaintiff objects to this interrogatory as there is no such email to "Diana Bennett".

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objection, see Plaintiff's response to Interrogatory No. 10.  To the best of

Plaintiff's recollection, Plaintiff states that after having sent a signed and notarized copy of a permanent modification agreement to PHH in December 2020, at the suggestion of Ms. Diane Bennett of Defendant Clunk, Hoose Co., L.P.A., Plaintiff submitted a new "Request for Mortgage Assistance" (RMA). Plaintiff sent in the RMA form, but not any of the supporting documentation necessary to constitute a complete loss mitigation application. Plaintiff does not have a copy of this document as she sent the only copy directly to PHH.

## **FIRST SET OF REQUESTS FOR ADMISSION**

1.      Admit that you did not make payments in 2021 to PHH using Western Union Quick Collect.

Admit.

2.      Admit that your payments from January 2021-April 2021 were made using MyCheckFree through Kroger.

Admit.

3.      Admit that the payment referenced in paragraph 16 of your Affidavit (Ex. 2 to Complaint) was not made via Western Union Quick Collect.

Admit.

4.      Admit that you did not sign the Modification and have it notarized until January 11, 2021.

Deny. See Plaintiff's response to Interrogatory Nos. 10, 13, and 14.

5.      Admit that you sent the executed and notarized Modification referenced in #4 above to PHH on or after January 11, 2021.

Admit to the extent that a copy of such Modification was sent to PHH on or about January 12, 2021, pursuant to the "Errors and Omissions" section of the agreement, upon written request from PHH's counsel. Plaintiff denies any allegation or implication that January 12, 2021 was the first time Plaintiff executed and sent in an executed copy of the Modification to PHH as she previously sent a copy of the same in December 2020. See

Plaintiff's response to Interrogatory Nos. 10, 13, and 14. See Plaintiff's response to Request for Admission No. 4.

6.    Admit that the Modification referenced in #4 above was denied by PHH in a letter to you dated January 14, 2021.

Plaintiff objects to this request as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Plaintiff objects to this request as it seeks or otherwise calls for a legal conclusion.

Signing as to objection:

/s/ Daniel M. Solar
_____
Daniel M. Solar (0085632)

Without waiving such objections, denied. Plaintiff does not dispute that such a letter exists, but denies ever having received a copy of this letter until a copy was produced in litigation in the Foreclosure and/or the instant matter. Moreover, to the extent that a "denial" letter was ever sent, it was subsequently repudiated in writing.

7.    Admit that the Modification referenced in #4 above was to be returned to PHH by December 31, 2020.

Plaintiff objects to this request as it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Plaintiff objects to this request as it seeks or otherwise calls for a legal conclusion.

Signing as to objection:

/s/ Daniel M. Solar
_____
Daniel M. Solar (0085632)

Without waiving such objections, Plaintiff admits that the Modification was to be returned to PHH by December 31, 2020, but denies any allegation or implication that Plaintiff did not comply with such deadline or that PHH did not agree to modify this term

through subsequent agreements and actions.  See Plaintiff's response to Interrogatory Nos. 10, 13, and 14. See Plaintiff's response to Request for Admission Nos. 4 and 5.

8.      Admit there is no permanent modification agreement executed by you and

notarized prior to January 11, 2021.

Denied. See Plaintiff's response to Interrogatory Nos. 10, 13, and 14. See Plaintiff's response to Request for Admission Nos. 4 and 5.

9.      Admit that Kroger and not PHH was holding the payments you made in February

and March 2021.

Plaintiff objects to this request as it seeks or otherwise calls for a legal conclusion.

Plaintiff objects to this request as it is unduly vague as to the meaning of "holding".

Signing as to objection:

/s/ Daniel M. Solar

Daniel M. Solar (0085632)

Without waiving such objections, Plaintiff admits that PHH received the funds and failed to properly apply the funds towards Plaintiff's mortgage loan per the terms of the loan Modification.  Defendant also failed to take reasonable steps to return the funds to Plaintiff.  After receiving the funds, Defendant PHH chose to deliver the funds to Kroger, who did not immediately return them to Plaintiff.

10. Admit that you received a refund in July 2021 from Kroger for payments that had been

rejected and returned from PHH.

Plaintiff objects to this request as it seeks or otherwise calls for a legal conclusion.

Plaintiff objects to this request as it is unduly vague as to the meaning of "rejected and returned".

Signing as to objection:

/s/ Daniel M. Solar

Daniel M. Solar (0085632)

Without waiving such objections, Plaintiff admits that in July 2021, upon request of Plaintiff's counsel, PHH for the first time took steps to trace and identify the funds it had received, but refused to apply the same to Plaintiff's mortgage loan per the terms of the Modification. PHH had delivered the funds to Kroger, but did not take steps to ensure that the funds were refunded to Plaintiff.  In July 2021, PHH finally provided Plaintiff the tracking information necessary for Plaintiff to obtain access to the funds.

11. Admit your January 7, 2021 email to Diane Bennett attached as Exhibit C to the Affidavit

of Diane Bennett filed in the foreclosure complaint regarding this matter, Richland

County, Ohio Court of Common Pleas Case Number 2020CV0169, referred to your

request for a new modification without a balloon payment and did not reference the

November 2020 modification originally sent to you by PHH.

Objection. No such Affidavit of Diane Bennet was filed with or was otherwise attached to the foreclosure complaint in such foreclosure action.

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objection, denied.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

Request is hereby made for the production by Plaintiffs of the following documents, all electronically stored documents or electronic data, or other materials presently in the custody, possession, or control of Plaintiff, her agents, attorneys and/or other representatives:

1.    Produce each and every document, all electronically stored documents or electronic data, photographs, videotape, materials, emails or other real or demonstrative evidence, including summaries and data compilations that you intend to introduce as an exhibit, *or rely upon in any way,* at the Trial of this matter or in any deposition or motion, for this case.

The request for all documents upon with Plaintiff intend to "*rely upon in any way*" is overbroad.

Signing as to objection:

*/s/ Daniel M. Solar*

_____

Daniel M. Solar (0085632)

Without waiving such objection, documents to be used at trial have not yet been selected as discovery is still ongoing. Further, see Plaintiff's document production. Plaintiff reserves the right to supplement this response.

2.      Produce each and every report, memorandum, correspondence, or other document that sets forth, in any way, the findings, opinions and/or conclusions of each expert identified in response to Interrogatory #4.

See Plaintiff's response to Interrogatory No. 4. No such experts have been identified. Plaintiff reserves the right to supplement this response.

3.      Produce any and all files, documents, all electronically stored documents or electronic data, or other materials utilized by or generated by each expert identified in response to Interrogatory #4.

See Plaintiff's response to Interrogatory No. 4. No such experts have been identified. Plaintiff reserves the right to supplement this response.

4.      Produce each and every document, all electronically stored documents or electronic data, or other materials to support or evidence your claims for alleged damages identified in response to the Interrogatories.

See Plaintiff's document production.

5.      Produce each and every discoverable document, all electronically stored

documents or electronic data, or other materials which support any of your claims and/or the defenses in this case and/or which in any way relate to the subject matter of this litigation, including but not limited to any evidence of payments made in connection with the Mortgage which is the subject of your Complaint.

> Plaintiff objects to this request because it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

> Signing as to objection:

> */s/ Daniel M. Solar*
> _____

> Daniel M. Solar (0085632)

Without waiving such objection, see Plaintiff's document production.

6.      Produce each and every discoverable document, notes, all electronically stored documents or electronic data and emails, or other materials which support, relate to, or evidence your responses to the foregoing Interrogatories, or which were utilized to prepare your responses thereto.

> The request for all documents upon which "relate to" Plaintiff's preparation of her Interrogatory responses is unduly vague and overbroad.

> Signing as to objection:

> */s/ Daniel M. Solar*
> _____

> Daniel M. Solar (0085632)

Without waiving such objection, see Plaintiff's document production.

7.      Produce each and every discoverable document, notes, all electronically stored

documents or electronic data and emails, or other materials which support, relate to, or evidence that you suffered emotional distress or duress due to the alleged actions of the Defendants, including but not limited to copies of any medical records pertaining to medical or psychological treatment received for emotional distress.

> See Plaintiff's document production. Any medical records not provided therein have been requested and Plaintiff will supplement such production as applicable. See Plaintiff's response to Interrogatory No. 3.

8.      Provide a copy of all payments or proof of payment you made PHH in 2020.

> Plaintiff objects to this request because it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Signing as to objection:

*/s/ Daniel M. Solar*
_____
Daniel M. Solar (0085632)

Without waiving such objection, see Plaintiff's document production.

9.      Produce all audio recordings you have of any conversations between you and PHH in 2020.

> Plaintiff objects to this request because it seeks information and/or documents that are obtainable from some other source that is more convenient, less burdensome, or expensive, since PHH already has possession, custody, control, and/or access to the requested information and/or documents.

Signing as to objection:

*/s/ Daniel M. Solar*
_____
Daniel M. Solar (0085632)

Without waiving such objection, Plaintiff is not in possession of any such audio

recordings.

Respectfully submitted,

*/s/ Daniel M. Solar*

Daniel M. Solar (0085632)
Marc E. Dann (0039425)
Michael A. Smith Jr. (0097147)
Dann Law
15000 Madison Avenue
Lakewood, Ohio 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Angela L. Ruckman*

## <u>CERTIFICATE OF SERVICE</u>

I certify that an exact copy of the foregoing document was sent via electronic mail on

November 22, 2021:

Sarah A. Wilson
Blank Rome, LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
SWilson@blankrome.com
Counsel for Defendant PHH Mortgage Corporation, d/b/a PHH Mortgage Servicing

Ashley E. Mueller
Laura C. Infante
Attorneys for Defendant
Clunk, Hoose Co., L.P.A
495 Wolf Ledges Pkwy
Akron, OH  44311
amueller@clunkhoose.com
linfante@clunkhoose.com
Counsel for Defendant Clunk, Hoose Co. LPA

*/s/ Daniel M. Solar*

Daniel M. Solar (0085632)